BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, . Case Number 22-cr-392

Plaintiff,

vs.

ABU AGILA MOHAMMED MAS'UD KHEIR AL-MARIMI, . Washington, D.C.
. December 17, 2024
. 12:34 p.m.

Defendant.

- - - - - - - - - - - - - - - -

PUBLIC TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the United States:

ERIK KENERSON, AUSA
BRITTANY KEIL, AUSA
CONOR MULROE, AUSA
United States Attorney's Office
601 D Street Northwest
Washington, D.C. 20579

JEROME TERESINSKI, AUSA
United States Attorney's Office
801 West Superior
Suite 400
Cleveland, OH 44113

JENNIFER BURKE, ESQ.
KATHLEEN CAMPBELL, ESQ.
United States Department of Justice
950 Pennsylvania Avenue Northwest
Washington, D.C. 20530

-- continued --

APPEARANCES (CONTINUED):

For the Defendant:

WHITNEY MINTER, AFPD
TODD RICHMAN, AFPD
Federal Public Defender's Office
1650 King Street
Suite 500
Alexandria, VA 22314

Official Court Reporter:

SARA A. WICK, RPR, CRR
333 Constitution Avenue Northwest
Room 4704-B
Washington, D.C. 20001
202-354-3284

Proceedings recorded by stenotype shorthand.
Transcript produced by computer-aided transcription.

P R O C E E D I N G S

(All participants present via video conference.)

(Defendant not present.)

COURTROOM DEPUTY: Your Honor, we are in Criminal Action 22-392, United States of America versus Abu Agila Mohammed Mas'ud Kheir Al-Marimi.

If I could have the parties identify themselves for the record, starting with the United States.

MR. KENERSON: Good afternoon, Your Honor. Erik Kenerson on behalf of the United States. Behind me on camera is Brittany Keil. Also present in the conference room with me, though off camera, are Conor Mulroe, Jennifer Burke, Kathleen Campbell, and a U.S. Attorney's Office supervisor. And Jerry Teresinski is on a different Zoom camera as well.

MR. TERESINSKI: Good afternoon, Your Honor.

THE COURT: Good afternoon to all of you.

MS. MINTER: Good afternoon, Your Honor. Whitney Minter and Todd Richman on behalf of Mr. Al-Marimi.

THE COURT: All right. Good afternoon to both of you.

I see we have the interpreter, Arabic interpreter, but we don't yet have Mr. Al-Marimi.

Mr. Hopkins, is that in the works, or are we having issues with the facilities?

[redacted]

[redacted]

THE COURT: All right. I don't want to cover things without Mr. Al-Marimi. We can repeat things. But are there any administrative issues we could discuss while we wait for him?

MS. MINTER: On behalf of the defense, Your Honor, I think on some level they are mostly administrative issues, but I do think they are issues that relate both to Mr. Al-Marimi's health and the pace of the case generally. So I do think it would be appropriate for him to join.

[redacted]

(Defendant joined Zoom hearing.)

THE COURT: Okay. Good afternoon, Mr. Al-Marimi.

THE DEFENDANT: (In English) Good afternoon.

THE COURT: Very sorry to hear about your medical issues. I hope you're doing well.

Okay. We were just waiting for you to connect, Mr. Al-Marimi.

Let me hear from either Mr. Kenerson or Mr. Minter, whoever wants to take the lead here.

This is a sealed hearing. And let me confirm up front that Mr. Al-Marimi has consented to appear by video conference for this hearing.

MS. MINTER: We did discuss that this morning, Your Honor. Thank you.

THE COURT: All right. Okay. Mr. Kenerson?

MR. KENERSON: [redacted]

[redacted] Obviously, we've asked the Court to hold all deadlines in abeyance, which the Court has granted.

At this point, based on what we know of the defendant's treatment, I think it's -- let me back up and say, it's been about a year since we appeared before the Court and asked to set a trial date in May of 2025. The government has been working diligently and tirelessly to try to make that happen. We very much want a trial in May of 2025.

[redacted]

We think we would be ready to propose a new schedule, which if we are going to seek to move the trial date we would include it in that request, in mid- to late January of 2025.

[redacted]

[redacted]

THE COURT: Understood. Ms. Minter, anything you would like to add [redacted]

MS. MINTER: [redacted] I just want to make sure that he is able to hear all of the interpretation that's being done.

COURTROOM DEPUTY: Thank you for saying that, Ms. Minter. I wanted to find out if there was a -- if someone was in there with Mr. Al-Marimi so we can change his connection to the interpretation.

Is there someone else in there with you, Mr. Al-Marimi?

THE COURT: All right. I just assumed, given his reaction to my initial statement, that he was hearing me, but it's clear that he is not hearing anything in this hearing.

MS. MINTER: I think he may be hearing the English, Your Honor. I'm not sure if the translation is coming through on his channel.

THE COURT: All right. Mr. Hopkins?

COURTROOM DEPUTY: We need to get someone -- actually, Ms. Minter, if you could possibly call them, because if Mr. Al-Marimi doesn't understand English, then me asking him to

get someone to help him seems to be futile.

MS. MINTER: If I could briefly have the Court's indulgence, Your Honor, I could reach out --

THE COURT: Yes. Let me have -- is the interpreter able to explain to him that we're going to work on trying to get this problem solved? Because he's likely sitting there thinking that the whole hearing is going to be in English, that he will not understand. Can you explain to him that we're trying to work on the situation to make sure that he can hear your translation?

COURTROOM DEPUTY: Ms. Attieh, can you switch over to the English side?

INTERPRETER: Yes. Can you hear me now? Can you hear me? I switched to the English. I can explain to him. And also, it says Chinese and not Arabic.

COURTROOM DEPUTY: That's because there's no Arabic, that's why.

Ms. Attieh, if you can just explain to --

THE COURT: If you can just repeat what I say to him now. First, ask Mr. Al-Marimi if he can hear.

THE DEFENDANT: Yes, I do hear what is said in the courtroom. However, it's in English, and I do not understand what is said.

THE COURT: All right. We understand, sir. We apologize. We are working on trying to fix the issue with the

interpreter being able to communicate with you, and this will likely take us a few minutes.

THE DEFENDANT: Thank you.

THE COURT: And we will repeat what's been stated before once we have this translation problem solved.

COURTROOM DEPUTY: Actually, Judge, if she can ask Mr. Al-Marimi to see if there's someone else there that he can bring in.

THE DEFENDANT: Yes, I don't have someone who is close to me, but I can call them.

COURTROOM DEPUTY: Yes.

THE COURT: Could you please do that, sir. If necessary, we can just do this hearing and give the interpreter time to translate for him.

Good afternoon. We are having issues with the interpreter being able to communicate with Mr. Al-Marimi, and I'm going to have the courtroom deputy explain to you what he thinks we need to do so that that translation can be communicated to him.

COURTROOM DEPUTY: Ma'am, there should be an option on the screen for "interpretation." Do you see that on the -- normally, it's on the bottom of the screen. It will say "interpretation." It might be at the top. If you see that -- usually it's at the bottom of the screen, it will say "interpretation."

MR. RICHMAN: On mine, it's under "more."

UNIDENTIFIED SPEAKER: I'm there. Click on "interpretation"?

COURTROOM DEPUTY: Yeah, click on it. It's probably on "English" right now. I think it's on "Chinese." So click on "Chinese." That way, he will be able to hear the interpretation.

THE COURT: Can he now hear in Arabic?

COURTROOM DEPUTY: Yes, she says he can hear.

THE COURT: Okay. All right. Very well, then.

Mr. Kenerson, could you please summarize what you stated earlier when Mr. Al Marimi was unable to hear this hearing in Arabic.

MR. KENERSON: Yes. Thank you, Your Honor.

[redacted]

[redacted]

We have -- it has been about a year since we stood before the Court and asked for a trial date in May of 2025. The government has been working very diligently to try to make that trial date happen between then and now. The government very

much wanted that date to go forward. [redacted]

And of course, Ms. Minter, please correct me if I got anything wrong from your perspective.

THE COURT: Ms. Minter?

[redacted]

[redacted]

But there is also simply the timing of the case thus far. There have been -- there has been a need, excuse me, for other deadlines to be pushed back or changed, and I think we have reached the point where compressing all of that into the remaining time until May would be very challenging.

So on some level, this is the straw that's breaking the camel's back, although it is a very significant straw, but it is not the only factor that is at issue here.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

All right. Ms. Minter, Mr. Richman, in light of that, what do you suggest? Do you agree with Mr. Kenerson that it makes sense to ask the Court -- ask the parties for an update mid-January, [redacted]

And to the extent you're able to propose a schedule at that point based on the health condition of Mr. Al-Marimi, that would be helpful at that time.

The Court also has under consideration the government's motion to make proceedings available to the public, and the Court does expect to issue an opinion on that shortly. So that will require us to deal with how to implement that order. But I don't want to get ahead of ourselves there.

Are the parties satisfied that [redacted], and thereafter, perhaps within a week, Mr. Kenerson, the parties could submit a status report? Does that give the parties adequate time?

MR. KENERSON: I think from the government's

perspective, that would work, but we would obviously be open to suggestion if Ms. Minter has different ideas.

THE COURT: Of course. Ms. Minter?

[redacted]

THE COURT: I'm happy to give you more time. I'm not trying to jam you all. [redacted] So we can push that date back if you need it. If not, we can -- I think that I've excluded time through February 15 of 2025. I really don't want to jam the defense here in being able to have a sense of how things could proceed.

And I appreciate it's quite possible at that time the parties just don't know. I appreciate that that could be the situation.

MS. MINTER: I appreciate that, Your Honor. Thank you. I do think that within a week of the 15th should be feasible. Obviously, we have an interest in making sure that things stay on track. So I think my instinct is to let the Court know we will do our absolute best to comply with that.

If early January that doesn't appear to be a feasible deadline, we could certainly let the Court know in writing and ask for an extension.

THE COURT: All right. And I know there was some back and forth about the existing orders and speedy trial. I just want to communicate to both of you all, to the extent it wasn't clear from the back and forth through court staff, I think it's completely appropriate to seal proceedings to discuss Mr. Al-Marimi's health condition. I think that that is seal-worthy.

What I have a problem with, though, is not having motions for extensions of deadlines and speedy trial extensions filed on the public docket. Does that mean I expect you to get into all the details of the why behind the motions to continue deadlines and exclude time under the Speedy Trial Act? No. But I do think the public has a right to know that I'm granting those.

And so as you navigate this uncertain period, just appreciate that the Court will want public filings, to the extent you can provide them. And there's always a basis to exclude time, as you all have discussed here, that extends beyond Mr. Al-Marimi's health, and that is, the complexity of the case and the volume of the discovery and the international nature of the case, which makes these issues more cumbersome than the typical case.

So I would just ask that, moving forward, when you are

asking for more time to extend deadlines, that you do so on the public docket [redacted]

Does that make sense to both sides? Mr. Kenerson?

MR. KENERSON: It does, Your Honor, to us, and thank you. We appreciate you clarifying your thinking on that front.

THE COURT: All right. Ms. Minter, same for you?

MS. MINTER: Certainly, Your Honor. Understood.

THE COURT: At some point, there may be a need to inform the public that there are health concerns that are delaying the trial. But at this point, based on what I'm hearing from you all in terms of travel abroad and the Court has a CIPA filing that it needs to resolve, I mean, there are many reasons that are legitimate to exclude time under the Speedy Trial Act and continue dates.

So if at some point those are exhausted and we really are dealing with medical condition alone, then we can talk about whether and how that's communicated on the public docket, but for now, I see no need.

MR. KENERSON: On that front, Your Honor, we've had discussions with Ms. Minter as recently as this morning, and I think it is going to be the government's request, and I don't

think the defense objects, that we do file at least something on the public docket noting that there is a health issue, without going into the specifics. We've worked out some language that I think the parties have agreed on, and we kind of expect to file that within the next day, but just to alert the Court as to that conversation.

THE COURT: Okay. Well, that's certainly preferable, from my perspective, that the fact of a health condition be noted, but the details certainly don't need to be shared with the public.

[redacted] The parties will file a joint status report stating their respective positions or agreement on how the case should proceed.

If there's a need for more time for the parties to do that, you will file a motion requesting more time on or before January 22nd.

Is the CIPA matter something -- I know I'm -- I know I need to resolve that. I have been inundated with other criminal matters and emergency motions on the civil docket. How urgent is it that the Court resolve that before January?

MR. KENERSON: It's not urgent. Thank you for checking, Your Honor. We did provide, I think as we noted in the order, some classified discovery to the defense in

connection with that order -- or in connection with filing the motion rather than waiting for the order.

So from our perspective, we're happy to wait, because I know the Court's busy.

THE COURT: All right. And if at any point -- and I don't expect there to be much further delay on that, but just speaking about future CIPA filings, if ever there is a need for expedited consideration, let me know through the filing of that. I do want to prioritize this case. It's just a bit of whack-a-mole here on time deadlines. So that's something I will be turning to early in the new year.

MR. KENERSON: Understood. Thank you, Your Honor.

THE COURT: Okay. Is there anything else that we need to address at this point, either from the government or the defense?

MR. KENERSON: Two other what should be hopefully very brief matters from the government.

One is, I think in -- with respect to the defense motion to suppress, there had been dates set aside in January for a potential hearing. Our assumption is that with both their deadlines having been vacated for that and all deadlines being held in abeyance, that we are no longer holding those dates. We just wanted to confirm that.

THE COURT: Yes, yes. And to the extent, Mr. Hopkins, they haven't been vacated on the calendar -- well, you all are

not asking to vacate the trial date at this point, although you're suggesting it's highly likely that you will in January?

MR. KENERSON: That's correct, with respect to the trial date, yes.

THE COURT: All right. But any hearings, at this point -- I just can't remember whether those have been vacated on the docket, or should we wait until the January update?

MR. KENERSON: We had -- the dates were actually tentatively scheduled for January, I think the week of January 20th, starting on January 21st, and they were in connection with a motion that the defense has not yet filed because the dates have been vacated.

So I think from our perspective, it is fine to vacate those dates. I'm not even sure they actually were on the docket. I know we had e-mail correspondence with your clerk about them. I don't know that they ever got docketed publicly.

But we just wanted to clarify that those are not going forward. From our perspective, it doesn't make sense to at this point.

THE COURT: Okay. Ms. Minter, I take it you don't disagree that that should be vacated, to the extent it appears on the court 's calendar?

MS. MINTER: We do not disagree, Your Honor. As the government said, we will need additional time to --

THE COURT: File the motion.

MS. MINTER: -- file those motions, and there may in fact have to be preliminary litigation prior to being able to file a robust motion. So we do not disagree.

THE COURT: Okay. And I think you all have been good about this in the past, in terms of providing adequate grounds to the extent you're asking for a speedy trial exclusion on paper rather than in the court.

I do want, Ms. Minter, Mr. Richman, you all consulting with Mr. Al-Marimi for each one of those.

[redacted]

THE COURT: Okay. Mr. Kenerson, did I cut you off before point 2, or had you said both?

MR. KENERSON: I don't think it was a cut-off. I had not gotten to point 2 yet, Your Honor.

THE COURT: All right.

MR. KENERSON: The second one is just a request that the Court permit limited unsealing of this transcript to allow the parties to obtain a copy from the court reporter if we order one.

THE COURT: Of course; of course.

And to the extent -- when you all review the transcript, to the extent you think the Court should unseal any portion of this, let me know. At this point, I think the conversation's been dominated by discussion about Mr. Al-Marimi's health, but, you know, when you disclose that he has a health issue, if there's information that can be put on the public docket, then let's consider that as well in your review of the transcript.

MR. KENERSON: Certainly. Thank you.

THE COURT: All right. Ms. Minter, Mr. Richman, anything more from your perspective?

MS. MINTER: Nothing further for the defense, Your Honor.

THE COURT: Okay. All right. Mr. Al-Marimi, [redacted] and for an update from your counsel and the government attorneys on the schedule moving forward. [redacted]

[redacted]

Do you have any questions that you would like to discuss with your attorney privately before we end this hearing?

THE DEFENDANT: If my attorney needs me, I am available.

THE COURT: Okay. All right. Ms. Minter, Mr. Richman, no need to talk to him now?

MS. MINTER: We actually had a call with him this morning. So we are well set for now. Thank you.

THE COURT: Okay. All right. I look forward to hearing from the parties January 22nd. And happy holidays, everyone.

(Proceedings adjourned at 1:15 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Sara A. Wick, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Sara A. Wick                                        January 28, 2025

SIGNATURE OF COURT REPORTER                    DATE