IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


United States of America,        ) Criminal Action
                                 ) No. 22-cr-392
                  Plaintiff,     )
                                 ) STATUS CONFERENCE
vs.                              )
                                 ) **PUBLIC**
Abu Agila Mohammad Mas'ud        )
Kheir Al-Marimi,                 ) Washington, DC
                                 ) May 14, 2025
                  Defendant.     ) Time:  10:14 a.m.
_____

TRANSCRIPT OF STATUS CONFERENCE
HELD BEFORE
THE HONORABLE JUDGE DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE
_____

A P P E A R A N C E S

For Plaintiff:      **Brittany Ann Keil**
                    **Eric Kenerson**
                    **Conor Mulroe**
                    United States Attorney's Office
                    601 D Street, NW
                    Washington, DC  20005
                    **Jerome J. Teresinski**
                    United States Attorney's Office
                    801 West Superior, Suite 400
                    Cleveland, OH  44113
                    **Kathleen Campbell**
                    DoJ-NSD
                    950 Pennsylvania Avenue, NW
                    Washington, DC  20530

For Defendant:      **Whitney Minter**
                    **Todd Richman**
                    Office of the Federal Public Defender
                    1650 King Street, Suite 500
                    Alexandria, VA  22314

Court Reporter:         Janice E. Dickman, RMR, CRR, CRC
                        Official Court Reporter
                        United States Courthouse, Room 6523
                        333 Constitution Avenue, NW
                        Washington, DC  20001

\* \* \* \* \* \* \* \*P R O C E E D I N G S\* \* \* \* \* \* \*

THE COURTROOM DEPUTY:  We are on the record in criminal case 22-3792, *United States of America versus Abu Agila Mohammad Mas'ud Kheir Al-Marimi.*

For the record, the interpreter was sworn in before the hearing.

Starting with the government, please approach the podium and state your appearance for the record.

MR. KEIL:  Good morning, Your Honor.  Brittany Keil for the United States, along with my co-counsel Eric Kenerson, Kathleen Campbell, Conor Mulroe, and Jerome Teresinski.

THE COURT:  All right.  Good morning to all of you.

MS. MINTER:  Good morning, Your Honor.  Whitney Minter and Todd Richman on behalf of Mr. Al-Marimi.

THE COURT:  Good morning.

Good morning, Mr. Al-Marimi.  Welcome back.

All right.  We have an update from the marshals, which I don't think we need to discuss.  Is there any need for this proceeding to be under seal?  Any portion of it? Ms. Minter?

MS. MINTER:  Your Honor, I do know that we had hoped to make a record of sorts.  I'm thinking through whether we could do that without placing anything under seal.

THE COURT:  I'm happy to do part of this under seal, if that's helpful.

MS. MINTER:  I think that might be helpful, just so that the record is not --

THE COURT:  Why don't we go ahead and start with that portion.

MS. MINTER:  Certainly, Your Honor.

THE COURT:  So we're now going to seal the courtroom briefly.  So for those of you who aren't connected with this case, you'll have to step out.  And by connected with the case, I mean part of the government or the defense teams -- not even victims -- should be out.

Okay.  Is everybody else part of one of your respective teams or a marshal?  Yes.

All right.  Ms. Minter?

(Closed session:)





(Open court:)

THE COURT:  All right.  We're back on the public record.  Let me hear, first, from Ms. Keil with regard to the remote access.

So I know the government has taken steps, continues to take steps to verify the victims.  That's still in the works, correct?

MR. KEIL:  Your Honor, I'm actually going to let Mr. Teresinski address the victim access issues.

THE COURT:  All right.  Mr. Teresinski, is the

government still working to verify the victims?

MR. TERESINSKI:  Good morning, Your Honor.  On behalf of the United States, it's an honor to be here in person. Usually you see me on TV.

THE COURT:  Of course, yes.

MR. TERESINSKI:  It's nice to be here.  To answer your question directly, let me put it in the context of, if I may, sort of two stages in the process.  Right?  We have -- we all want to get to how do we get the victims to be able to have audio access by June 5th.  Right?  I think we're all on that page.  Right?  I think the Court -- we asked, in our latest filing on, I believe it was May 7th, we seek your guidance, your wisdom about the appropriate path forward in order to do that.

We recommended, I believe in -- I think it was document 108 -- or, I'm sorry, 98, on pages 6 through 8, a way forward to do that and the most expedient way to do that, given the situation that we have sort of a two-stage process.  Right? We have audio, preliminary non-evidentiary proceedings.  The second part of this would be proceedings that would be evidentiary.  We can put that aside.  Right?  We're not talking about that.  That's a much more complicated situation, as the Court knows.  If I'm saying something the Court already knows, tell me to move on, obviously.

But the first part of this, I just really want to

address that part because it really kind of gets to Your Honor's answer.  We have a list that we've already put together of victims from our victim access questionnaire that we've already filed with the Court as part of an exhibit back in, I believe, when we filed, if I may, back in document 68, back in October, October 23rd, in 2024.  I think it was document 68-3.  Your Honor can look at that.  It has email addresses, it has phone numbers, which we didn't put in because it was PII at the time.  But we have that information regarding that victim group.

We have a very good belief of that group that this is a pretty good representation of a victim pool that we can certify to the Court that these are our victims at this point in time.  What we don't have for that victim group is something the Court needs, right? which is a security, which is that verification or that admonition form that we need for that group.

In order to get that quickly, we suggest to the Court in our recent filing, on pages 6 through 8 of that document, to follow -- the quickest way to do that would be to follow what they did up in Boston in U.S. District Court, which would be, on pages 6 through 8, laying out -- people can actually fill out the form directly with the court and sign up and provide their names, their addresses, their emails.  They can register two days before the hearing, they can get a confirmation of

their application, they can provide their name, their telephone number, they can get an access code back and be permitted with telephonic access and get an audio link to the court itself.

They also, when they do that, they get an admonition form that says they can't tape or they can't do anything.  And they have to sign that in order to be able to participate. That gets the Court that extra security that the Court needs.

THE COURT:  I know.  I was under the impression the government would be doing all this leg work up front, rather than court staff.

MR. TERESINSKI:  I understand.

THE COURT:  And is there a reason you all can't do that up front, with the same email addresses that we have?

MR. TERESINSKI:  We have emails, we have phone numbers that we can verify for the court and provide that to the court ahead of time, and if -- and that list can be provided to the court ahead of time and if that person who signs up and -- if that person's name is on the list and it checks out, then it would be fine, the court can say --

THE COURT:  That's how I assumed the process would work.  I'm not trying to be difficult here, but part of the problem is our IT staff and our court staff are really short-staffed right now.  So what I've suggested -- and I appreciate you all providing contact information for your IT folks -- but I would share that the request or the recommendation that you

all have given to me with regard to this form with IT -- and our IT staff can talk to yours and to Boston's and whomever else you recommend and you all can sort that out, but I just -- I mean, there are staffing issues here.

So all along, as you know, in terms of, you know, a lot of legwork for this, we're looking for the government to be doing, rather than the court.  And this is something you all have pushed from the outset.  And to the extent the resources are going to fall on the court or the government, it's going to be more on DoJ.

MR. TERESINSKI:  I understand.  And to assuage the Court's concerns about resources, I think it's sort of akin -- if you go back to COVID, it's sort of akin to the same thing.

THE COURT:  I don't think we had any sort of form.  We would simply say, at the time of the tape, the audio access was granted, that people shouldn't tape.  There was no formal form.  And here, we're not talking about a handful of parties, we're talking about hundreds of people.  So again, I'm not saying no, I'm just flagging for you.  It's hard for me to understand why it's any more efficient for us to do it than it is for DoJ to do this up front.

MR. TERESINSKI:  Understood.  And alternatively, one thing that we could consider, or possible we also will look into, Judge, is we have a list of people that we -- this victim pool, and if the Court is willing to give us the court's

call-in number and code, we possibly could send out to that victim pool certification forms ahead of June 5th, and send that out and when they send the form back, we could then respond with that code and with that -- with the court's code and with the court's form -- or, with the court saying it's okay, here's who you call, here's the number, then we would then turn over the signed certification to the court.  That would assuage the court's possible issues.

THE COURT:  Let me talk to the IT folks.  And like I said, they're talking to yours and they're talking to Boston. And maybe this isn't a significant manpower issue here, but it does seem potentially cumbersome to have hundreds that we're trying to clear at the same time we're trying to let people in.

MR. TERESINSKI:  Understood.

THE COURT:  That could delay the hearing itself, which I don't want to do.  So from my perspective, it would be ideal to have all that done up front and then have a set group who -- whose names need to line up with the folks we've been told have completed the certification, but that we're not reviewing each certification in real time and letting in one by one.  If you're talking about hundreds, that could significantly delay the hearing.

MR. TERESINSKI:  Understood.  And I'm trying to help the court to get the essence --

THE COURT:  All right.  Let's keep the conversation

going and we can talk offline, our IT people and your IT people.

MR. TERESINSKI:  And I'm here as the court's resource in that regard, I'm your point of contact.

THE COURT:  All right.  That's helpful to know.  And in terms of identifying victims, you're still trying to do that?

MR. TERESINSKI:  I think by -- as I said, with this pool of victims that we have, that we've identified from our first go-around with our first access questionnaire, we believe by end of business on May 20th -- we have to reach out to folks overseas, but we believe we could have a workable list.  This is, again, without the certification or the authorization forms filled out, but we believe that we have a confident list of people that we can then have in place, that we can get people access by -- you know, for June 5th.  So for the first part of the proceedings, the first stage, right? the audio proceedings.

THE COURT:  All right.  And are you the person who's also submitting the ex parte request on behalf of the government?

MR. TERESINSKI:  I am, yes, Your Honor.  Whatever you need.

THE COURT:  You're Mr. Victims.

MR. TERESINSKI:  I'm Mr. Victims.  Just so you know, the second part of this is the fixed-site proceedings, which we

won't get into today.  We're working on that as well.  We had to develop a whole new web page.  We also have folks from the FBI, Ben Shannon, who we've provided the name, he's present in court today.  But we had to develop a whole new web page for that, so the Court knows, and that should go live on May 28th, on or about.

We had to get new information to be able to establish who is going to go to which fixed site, both in the United States and then overseas as well.  It's sort of a Herculean effort to be able to gather that information so we can determine how we're going to staff those sites.

THE COURT:  I can imagine.  Mr. Teresinski, you can stay there.

I want ask Ms. Minter -- if you can just speak into the microphone there -- as I understand it and as stated in the footnote to the government's ex parte notice to me, which you don't have, but you have agreed to this ex parte process, that is, the government is submitting -- so far they've submitted the name of one individual who is not a relative of a victim but who very much -- the actual language of the statute is, "Who possesses a relationship of similar significance to."  In this case it would be -- he's like a brother, as I understand it.  You've not objected to the government providing these names and making their case to me ex parte, is that correct?

MS. MINTER:  Your Honor, I think, generally speaking,

we are close to a process of the Court reviewing the identity of these individuals ex parte.  I think there is a question of detail and a question of --

THE COURT:  And I intend to share some substance of the request with you, and to the extent you need more, then we'll talk about that.  All right.

MS. MINTER:  I appreciate that, Your Honor.  And then also, our understanding is that these requests, if any, will be a discrete number of individuals, that that's not going to be an equivalent pool of people.

THE COURT:  So far I've received one.

MS. MINTER:  That's our understanding.

THE COURT:  And, Mr. Teresinski, just to assure, I don't intend to reveal the individual's name.  I don't intend to read the whole letter, but I am going to highlight some of the key points of the letter, which I think will reassure Ms. Minter and her team that this person is akin to a relative. Do you have any objection to that?

MR. TERESINSKI:  Let me say, part of the reason we filed it ex parte -- and just for the record and just so Your Honor knows, this was the process that was filed -- followed, I apologize.

THE COURT:  In *Moussaoui*.

MR. TERESINSKI:  Yes.  And second of all, the Court, pursuant to the statute, has the discretion to be able to do

this, obviously.  And then, third of all, under the Victim -- Crime Victims' Rights Act as a ceiling -- as a floor, under 3771, Subsection 8, the victims are entitled to dignity and privacy.  And this is not an adversarial process and because it's not, we felt ex parte is the best way to handle this for various reasons because the victim may not want their information disclosed.

THE COURT:  No, and I don't intend to reveal the victim's name.

MR. TERESINSKI:  Understood.  But even their circumstances -- I know the Court will use its discretion in whatever it's going to put on the record publicly.  But if somebody wanted to publicly find out, they could come to court, they could address the Court to do whatever they need to do. The concern that we have is just making sure, in terms of the privacy rights of the person applying for the status is protected.  That's all.  And that's why we did what we did. And there was no objection, the only thing that was objected to was how we're going to report, in the future, about what happens on a daily basis.  And that's why we did what we did.

THE COURT:  All right.  Well, Ms. Minter, let me just give you generally a description of this person.  He has been very much like a brother, very much like a brother to the deceased and remains very much like a sibling to the deceased's extended family and was best man in his wedding and vice versa,

pallbearer at the funeral, and there are other things like that.  I take it you have no objection to me considering him as a victim?

MS. MINTER:  Not under those circumstances.

THE COURT:  Okay.  So this motion is granted.

MS. MINTER:  And given the unique circumstances, both in circumstance and in number of requests, we do not object.

THE COURT:  All right.

MR. TERESINSKI:  Thank you, Your Honor.  We'll pass that along, with the Court's permission, to that person.

THE COURT:  Yes.

MR. TERESINSKI:  The other issue I want to clarify for the Court, I don't know and I can't predict how many of those we will get.  I want to make that clear.

THE COURT:  We will address it as we get them.  I would be surprised -- at this point you have 400 or something?

MR. TERESINSKI:  It's possible we get 20 more, we might get 30 more, I don't know.

THE COURT:  I mean, total victims so far, you've identified roughly 400, so I don't expect there to be 400 of these kinds of requests, given the number.

MR. TERESINSKI:  There are other people who stand in status that might want to be recognized that --

THE COURT:  This individual is fairly unique, I think.  This is not just a friend someone went to college with.

This is someone who is very close to the family --

MR. TERESINSKI:  Yes.

THE COURT:  -- so I think the number of folks that would qualify like this individual has to be relatively few in number.  So if that ends up not being the case, we'll give Ms. Minter an opportunity to object, but I would be surprised.

MR. TERESINSKI:  Of course, with the Court's permission, we'll use the same process that we did --

THE COURT:  That's fine.  And I'll continue to put, just in very general terms -- I don't think that this individual can be identified based on what I've said so far.  But I just think it's important that the defense understands that these folks who are qualifying as having a -- who possess a relationship of similar significance really are close to the victim and their families.

MR. TERESINSKI:  Okay.  One question, if I may, of the Court.

THE COURT:  Yes.

MR. TERESINSKI:  How would the Court like me to proceed with the June 5th access issue?  Do you want me to contact your IT people?  Do you want them to contact me?

THE COURT:  So as it stands now, you have provided names of IT folks at the department, correct?

MR. TERESINSKI:  Correct.

THE COURT:  And my understanding is that our court IT

folks are talking to your court IT folks.  I will flag this certification issue -- which was not on my radar until I received this filing -- for our IT folks and get their feedback and let them discuss that with your IT folks.

MR. TERESINSKI:  Okay.

THE COURT:  I don't think there's a need for another status hearing before June 5th to address this, but there may be, you know, an email that both the defense and the government would be on, to the extent I need feedback from either of you on this.  All right?

MR. TERESINSKI:  Okay.

THE COURT:  So just sit tight and I may put out an order directing you to do the certification, or I may inform you that we'll do it.  I can't answer that right now.

MR. TERESINSKI:  Again, if you go the route of -- just in summarizing, if you go the route of Boston, we could provide you with all the list of the certified victims well in advance of June 5th.

THE COURT:  Understood.

MR. TERESINSKI:  And if you go the route of us doing that, we need to be able to have the court's access number and information to be able to set that up and then send that out to the victims once they respond with their forms signed.

THE COURT:  Understood.

MR. TERESINSKI:  Then we can give you the forms.

THE COURT:  All right.  Sounds good.

MR. TERESINSKI:  Thank you, Your Honor.

THE COURT:  Perfect.  Thank you.

MR. TERESINSKI:  Any further business of me?

THE COURT:  No, sir.  Thank you very much.

MR. TERESINSKI:  Thank you, Your Honor.

THE COURT:  All right.  Have the parties had sufficient time to talk about a schedule moving forward?  I would guess not.  Mr. Al-Marimi has just arrived back in the district, right?

MS. KEIL:  Yes, Your Honor.  We had planned today, whether this hearing was held or not, to meet with the defense and discuss.  And we have a plan to meet after this to look at what a pretrial schedule will look like and see what a reasonable trial date request would be.  For that reason, we -- and we have drafts prepared to discuss with the defense.  We are still looking at spring 2026.  Hopefully the Court will be free during those months.  We do anticipate a six- to eight-week trial schedule for the government's case in chief.

So that is our plan today, so that we can come back on June 5th, hopefully with a generally agreed-upon trial schedule and proposed trial date.

THE COURT:  Okay.  It would be helpful for me, since we don't have another status hearing between now and June 5th, for you all to file something in advance, just to give me a

sense as to what you're thinking about, rather than trying to digest that --

MR. KEIL:  Absolutely.

THE COURT:  -- in the hearing.

MR. KEIL:  Absolutely.  We'll get that to you several days before the hearing.

THE COURT:  If you could file something on or before May 29, that would be helpful.  And to the extent you all disagree, just lay out your respective positions.

And I think I've excluded speedy trial through June 5th.

MR. KEIL:  Yes, Your Honor.

THE COURT:  Is there anything else we need to address today?

MR. KEIL:  Not from the government, Your Honor.

THE COURT:  How about from the defense?

MS. MINTER:  Court's indulgence, Your Honor.

(Off-the-record discussion between defense counsel.)

MS. MINTER:  Nothing further from the defense, Your Honor.

THE COURT:  All right.  Ms. Minter, if you could give me an update at the next hearing about the status of the medical appointments, that would be helpful.

MS. MINTER:  Yes, Your Honor.

MR. KEIL:  I would note to request limited unsealing

of the transcript, Your Honor.

THE COURT:  Yes.  I will grant that motion.  So the parties can have access to the sealed transcript, but only for the parties.

Anything else.

MS. MINTER:  Just very briefly, Your Honor.  We will certainly endeavor to provide the Court whatever updates we can regarding the medical appointments, but it may be helpful to have an update from the marshals as well, since they are the direct communicators with the medical providers.

THE COURT:  Okay.  I see we have someone from the marshal service in here.

Can you provide something before the June 5th status hearing, sir?

THE MARSHAL:  Yes, Your Honor, we will.

THE COURT:  Just short update on the status of his appointments, whether it's occurred.  And can you identify, for the record, your name?

THE MARSHAL:  Leodus Brown.

THE COURT:  All right.  Thank you, Deputy Brown.

All right.  Anything else?

MS. MINTER:  Nothing further from the defense.

THE COURT:  All right.  I'm going to stay on the bench.  So we're adjourned.

MR. TERESINSKI:  Thank you, Your Honor.

*    *    *

CERTIFICATE OF OFFICIAL COURT REPORTER


     I, JANICE DICKMAN, do hereby certify that the above and

foregoing constitutes a true and accurate transcript of my

stenographic notes and is a full, true and complete transcript

of the proceedings to the best of my ability.

                    Dated this 27th day of May, 2025




                         /s/_____

                         Janice E. Dickman, CRR, CMR, CCR
                         Official Court Reporter
                         Room 6523
                         333 Constitution Avenue, N.W.
                         Washington, D.C.  20001