**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | )     **No. 1:22-cr-392 (DLF)** |
| | ) |
| **ABU AGILA MOHAMMAD** | ) |
| **MAS'UD KHEIR AL-MARIMI,** | ) |
| **Defendant.** | ) |

**MR. AL-MARIMI'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS
MOTION IN LIMINE REGARDING PORTIONS OF MR. AL-MARIMI'S
ALLEGED CONFESSION PURSUANT TO FEDERAL RULES OF
EVIDENCE 402, 403, 404, 602, AND 802**

Mr. Al-Marimi replies as follows to the government's response, *see* ECF No.

246, to his motion in limine, *see* ECF No. 231:

**I.      Evidence of other alleged terrorist attacks is not admissible
under Federal Rules of Evidence 404(b) and 403.**

The government argues that the Court should allow it to introduce evidence of

the La Belle bombing, an aborted assassination attempt of the U.S. Secretary of State

at a Pakistani state funeral, and an operation in Egypt targeting the Egyptian

President, as well as training for individuals from Ghana on the use and handling of

explosives under Federal Rules of Evidence 404(b) and 403. ECF No. 246 at 9-10. The

government alleges that this highly inflammatory evidence is admissible under Rule

404(b) because it is relevant to motive, knowledge, intent, and identity, *id.* at 10, but

it neglects the Rule 403 analysis required.

Courts conduct a multi-step analysis to determine whether Rule 404(b)

evidence is properly admitted. *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir.

2000); *United States v. Green*, 149 F.4th 733, 752–54 (D.C. Cir. 2025) (breaking analysis down into three steps: relevance, propensity, and risk of unfair prejudice). The first step focuses on relevance and "requires that the evidence be probative of some material issue other than character." *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994).

As part of the relevance inquiry, courts must consider whether "a reasonable jury could find by a preponderance of the evidence that the defendant, and not someone else, was responsible for the" uncharged conduct. *United States v. Burwell*, 642 F.3d 1062, 1066 (D.C. Cir. 2011), *reh'g en banc granted, judgment vacated* (Oct. 12, 2011), *opinion reinstated and aff'd*, 690 F.3d 500 (D.C. Cir. 2012) (citing *United Huddleston v. United States*, 485 U.S. 681, 690 (1988)). This is so because the relevance of other-act evidence is conditional on the other act connecting to the defendant and the charged crimes in a way that serves a non-propensity purpose. *Id.*; *see* Fed. R. Evid. 104(b).

If the evidence is probative of a non-propensity purpose, the next question is whether Rule 403 allows it. *Clarke*, 24 F.3d at 264. Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury, . . . ." Fed. R. Evid. 403; *see Bowie*, 232 F.3d at 930. "Unfair prejudice . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Fed. R. Evid. 403,

advisory committee's notes).

The "strength of the evidence establishing the similar act is one of the factors the court may consider when conducting the Rule 403 balancing." *Huddleston*, 485 U.S. at 690 n.6. Likewise, the availability and probative utility of "evidentiary alternatives" must inform the "probative value" of evidence under Rule 403. *Old Chief v. United States*, 519 U.S. 172, 184 (1997) (noting the advisory committee notes to Rule 403 state the "availability of other means of proof" is an appropriate consideration); *see also* Fed. R. Evid. 404, advisory committee's notes (referring to "the availability of other means of proof" as an important consideration under Rule 403); *United States v. Linares*, 367 F.3d 941, 946–48 (D.C. Cir. 2004) (holding prior-act evidence inadmissible when the asserted purposes—knowing possession and absence of mistake—were not at issue).

> a. *The D.C. Circuit has never approved of admitting evidence under Rule 404(b) to corroborate other propensity evidence as the government seeks here.*

The government has argued for permission to introduce evidence that corroborates the alleged confession because Mr. Al-Marimi contests its reliability. ECF No. 246 at 15. Such an argument plays no role, however, in justifying admission of Rule 404(b) evidence **within** Mr. Al-Marimi's alleged confession. Even if the government's argument is better understood as an effort to introduce Rule 404(b) evidence from Mr. Al-Marimi's alleged confession to corroborate other Rule 404(b) evidence it will notice later, such an effort is not permissible here.

The government is correct that the D.C. Circuit has held "evidence of other crimes or acts is admissible to corroborate evidence that itself has as legitimate non-propensity purpose." *Bowie*, 232 F.3d at 933. *Bowie*, of course, involved a "prior" bad act that preceded the charged incident by less than a month and concerned the same bundle of counterfeit currency the defendant was charged with possessing. *Id.* at 926. The D.C. Circuit subsequently clarified that corroboration "does not provide a separate basis for admitting evidence." *Linares*, 367 F.3d at 949. Instead, "prior-acts evidence must corroborate other evidence by proving a proper element, such as intent or identity." *Id.*; *see also United States v. Bailey*, 319 F.3d 514, 520 (D.C. Cir. 2003) ("The label 'corroboration' thus merely invites a closer look at exactly how the evidence may be probative.").

There are three problems with the government's corroboration argument. First, it assumes that the Rule 404(b) portions of Mr. Al-Marimi's alleged statement are themselves admissible for some other non-propensity purpose. *Linares* and *Bailey* make clear that corroboration for the sake of corroboration is not appropriate under Rule 404(b); rather, the statements must be independently relevant and admissible for some valid purpose. For the reasons explained below, they do not.

Second, and relatedly, the Rule 404(b) evidence in the alleged confession is focused on portions of Mr. Al-Marimi's alleged statement that do not concern the charged events. When the statement being corroborated is directly relevant to the charged crime, as in *Bowie*, the non-propensity purpose is clear—e.g., a defendant's

4

admission that he purchased the counterfeit currency he is charged with possessing helps establish possession, and corroborating evidence that he possessed similar counterfeit currency after the claimed purchase makes that admission more likely to be true. But here, the government seeks to corroborate portions of the alleged confession that have nothing to do with the charged crimes. Besides failing to support a valid non-propensity purpose, that approach greatly reduces the probative value of the corroborating evidence.

To be sure, the government has previously asserted in Rule 404(b) litigation that *any* portion of a statement that can be proven true makes the rest of the statement more likely to be true, but that does not logically follow. Contrast the current situation to *Navarette v. California*, 573 U.S. 393, 398 (2014), which the government has cited in past Rule 404(b) briefing for the proposition that a person "who is proved to tell the truth about some things is more likely to tell the truth about other things[.]" ECF 147, at 7–8. The Supreme Court's statement was not about people generally, but rather about informants who communicate information to law enforcement about future events. *Navarette*, 573 U.S. at 398 (discussing *Alabama v. White*, 496 U.S. 325 (1990)). In that context, the informant's ability to accurately predict the suspect's future behavior—such as driving a particular vehicle to a particular location—demonstrates "a special familiarity with [the suspect's] affairs" that makes it more likely the informant has "access to reliable information" about claimed criminal activity. *Id.* If the informant has access to reliable information, his

statements should be corroborated by investigation; if he does not, his statements should be false.

Here, conversely, Mr. Al-Marimi's alleged statement postdates the events it describes. Whether it was an authentic confession, a coerced regurgitation, or prepared independently from Mr. Al-Marimi and only later associated with him, one would expect the information in it to be accurate. Even assuming the government can establish that the events described in the statement took place, that is hardly proof that Mr. Al-Marimi was involved, considering such details would have been known to his Libyan captors (if not the general public) by the time the statement was made available to the United States. In other words, corroboration does not necessarily make the confession more plausible, since the statement's alignment to reality can be explained in other ways that do not implicate Mr. Al-Marimi.

Finally, as in ECF No. 147 at 7-9, the government's corroboration argument is circular. It intends outside, unnoticed Rule 404(b) evidence to bolster the reliability of Mr. Al-Marimi's confession, but it will need the Rule 404(b) evidence in the alleged confession admitted to justify the admissibility of the outside, unnoticed Rule 404(b) evidence. As Mr. Al-Marimi has argued in connection with the La Belle litigation, the Court should recognize that this closed loop is not linked to the Pan Am 103 allegations and should be excluded.

### b. Motive

To meet its burden under Rule 404(b), the government claims Mr. Al-Marimi's

motive was following orders from his superiors, and that his orders ultimately were motivated by "Libyan leader Muammar Qaddafi's quest for vengeance against the United States." ECF No. 246 at 11. It argues his involvement in an assassination attempts against an American diplomat and a former Egyptian president helps establish Mr. Al-Marimi's status as a Libyan security operative because the bombing was similarly ordered by his superiors (per the alleged statement) and is "crucial to the jury's understanding" as to why Mr. Al-Marimi would participate in the bombing of a civilian aircraft. *Id.*

First, motive is not an element of the charged offenses. As such, prior-act evidence "is allowed to show motive only when motive is in turn relevant to establish an element of the offense that is a material issue." *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir. 1989). For example, motive evidence might rebut a claim that an act was done for some contrary but legally permissible purpose—a motive of revenge rebuts a claim of self-defense—or it might help establish identity when the motive is unique to an individual. *See id.* at 1014–15. And, as the government notes, in conspiracy cases, motive evidence can help establish the relationship between the parties and the nature of the criminal agreement that is of central importance to conspiracy offenses. *See, e.g.*, *United States v. Escobar-de Jesus*, 187 F.3d 148, 169 (1st Cir. 1999).

Second, the government has not charged Mr. Al-Marimi with conspiracy, and it fails to identify a material issue related to motive. The government does not need

7

to establish that Mr. Al-Marimi acted on orders from a superior. The alleged motive is not in a way unique to Mr. Al-Marimi to establish his identity; any Libyan operative would have the same drive to obey orders. And the government's theory about the escalating hostilities between Libya and the United States does not require Mr. Al-Marimi to have been involved in an earlier incident along that chain of events; to the extent such evidence might be admissible as background to Pan Am 103, its relevance logic does not turn on the personal involvement of any one person.

Third, the government's citation to *United States v. Green*, 617 F.3d 233 (3d Cir. 2010), to argue that Rule 404(b) should be expanded to include evidence of the motives of others is a red herring. *See* ECF No. 246 at 12 n.7. In the Third Circuit's *Green* case, Mr. Green was arrested on state drug charges related to a particular undercover officer. 617 F.3d at 235. After his initial arrest, Mr. Green took steps to obtain dynamite to kill the undercover officer. *Id.* at 236-37. While attempting to get the dynamite, Mr. Green worked with an associate who turned informant once she learned about his plans. *Id.*

At trial, Mr. Green argued that the informant was motivated by money or personal benefits from the FBI. *Id.* at 250. In so doing, the defense opened the door to the introduction of Rule 404(b) evidence about Mr. Green's plan to kill the undercover officer as a motive for the informant. *Id.* Further, and critically, the *Green* court recognized how rare its holding was: "We recognize that in the ***ordinary case*** the requisite 'proper purpose' explains something about the defendant's motive, plan,

8

or knowledge. ***This case is unusual*** in that the proper purpose we have identified relates to a witness's motive, not the defendant's." *Id.* (emphasis added). There is nothing like *Green* at issue here, and the Court should deny the government's efforts to improperly introduce evidence of an alleged motive.

### c.  Knowledge and Identity

The government has argued that the Rule 404(b) evidence in Mr. Al-Marimi's alleged confession is probative of Mr. Al-Marimi's knowledge and skill in bombmaking as well as of his identity in the form of "modus operandi" evidence. ECF No. 246 at 12-14. But, the cases the government relies on it in its knowledge argument discuss only the "identity" purpose under Rule 404(b),[1] so the defense has collapsed its response accordingly.

The government reasons Mr. Al-Marimi's involvement in the other alleged bombings would prove "that he had the knowledge and skill to play the same role in the Pan Am Flight 103 bombing". ECF No. 246 at 13. But evidence of knowledge is relevant only to the extent that it shows the defendant, and not someone else,

---

[1] *See* ECF No. 246 at 13 (citing *United States v. Trenkler*, 61 F.3d 45, 52-56 (1st Cir. 1995) (discussing skill of bombmaking as evidence of identity where "the shared characteristics of the other act and the charged offense are sufficiently idiosyncratic that a reasonable jury could find it more likely than not that the same person performed them both"); *United States v. Barrett*, 539 F.2d 244, 248 (1st Cir. 1976) (discussing skill of burglar-alarm tampering as evidence of identity ***where no specific other bad act evidence was introduced***). The third case cited, *United States v. Garcia*, 880 F.2d 1277, 1278 (11th Cir. 1989) (discussing evidence of previous forged document without reference to any admissible purpose under Rule 404(b)), does not name any admissible purpose under Rule 404(b). Rather, the *Garcia* court found that on balance, the challenged testimony was not character evidence because the prior incident was meant as a joke.

9

committed the charged crimes. *Modus operandi* evidence "must be unique; 'the Government must establish not only that the extrinsic act bears some peculiar or striking similarity to the charged crimes, but also that it is the defendant's trademark, so unusual and distinctive as to be like a signature.'" *Burwell*, 642 F.3d at 1067 (quoting *United States v. Crowder*, 87 F.3d 1405, 1413 (D.C. Cir. 1996), *rev'd on other grounds*, 519 U.S. 1087 (1997)). Thus, for example, "the naked use of violence and weapons, without more, does not rise to the level of similarity necessary to make [] other crimes evidence relevant to identity." *Id.*

Here, however, a critical link is missing from the chain of inferences, and it can only be filled by propensity reasoning. Apart from Mr. Al-Marimi's alleged and highly contested confession, there is minimal or no evidence to connect Mr. Al-Marimi to the La Belle incident or the alleged attacks on an American diplomat and the former Egyptian president. The three incidents do not share the unique markers required for a factfinder to be allowed to "fill in the gaps" with the challenged Rule 404(b) evidence.

The bombings here were separated by periods of time and involved different alleged participants, some of whom have already been convicted or died. Moreover, they targeted different groups (nightclub attendees, including American soldiers, and foreign officials vs. cross-Atlantic airline travelers) in different ways (a nightclub in a foreign country and diplomatic missions vs. a United States-bound flight). It is only at a high level of generality that the events blur together—the bombing of others. But

10

that level of similarly falls short of what is required and diminishes any marginal probative value such evidence might have.

### d. Intent

The government argues a prior instance of a bomb being used against civilians is probative of the bombmaker's intent that a different bomb be used for the same purpose. ECF No. 246 at 13-14. It cites *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982), for the proposition that a "continuous course of dealing" can be probative of a person's intent on a given occasion.

"Evidence of a similar act must meet a threshold level of similarity in order to be admissible to prove intent," even if "exact congruence" is not required. *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003). "What matters is that the evidence be relevant 'to show a pattern of operation that would suggest intent' and that tends to undermine the defendant's innocent explanation." *Id.* (quoting treatise). Courts consider, among other factors, the temporal proximity between the events. *United States v. Slough*, 22 F. Supp. 3d 16, 21–22 (D.D.C. 2014) (citing *Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 441 (D.C. Cir. 1994)).

Far from a continuous course of conduct like the string of drug dealing at issue in *Harrison*, there is far less reason to think that evidence of Mr. Al-Marimi participating in prior land-based, smaller-scale incidents provides support that he intentionally participated in creating a bomb for use in a different country against a civilian aircraft. *See United States v. Trenkler*, 61 F.3d 45, 56 n.19 (1st Cir. 1995)

(rejecting intent as grounds for the admission of prior bombmaking evidence when the incidents were sufficiently distinct such that relevance "depend[ed] heavily on an inference of propensity") (citing *United States v. Lynn*, 856 F.2d 430 (1st Cir. 1988)). Pan Am 103 would represent a dramatic escalation from the other alleged incidents, in notoriety and the number of potential casualties and complexity of the operation needed to successfully accomplish the bombing. Moreover, the other alleged operations targeted government officials and a location frequented by U.S. military, not civilians.

    *e.   The challenged evidence is also inadmissible under Rule 403.*

Even if the Court finds that there is some probative value to the challenged evidence and that it meets a permissible purpose to be admitted under Rule 404(b), the evidence cannot be admitted if its probation value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury. The government argues that "there is no danger of unfair prejudice if the evidence is admitted . . . because there is little chance the jury would use these other incidents as improper propensity evidence". ECF No. 246 at 16. The government reasons that the jury is not likely to separate the supposed confessions, and even if it does, the jury is more likely to believe the Pan Am 103 confession because most of the government's trial presentation will focus on that event. *Id.* But, the government's abbreviated Rule 403 analysis does not approach the kind of robust scrutiny that Rule 403 requires.

 Rule 403 "requires a fact-intensive, context-specific inquiry" that considers

each type of contested evidence on an individual basis. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). Courts long have recognized the power of propensity evidence and its prejudicial effects, which are "far from theoretical." *Linares*, 367 F.3d at 945. There is an ever-present danger that such evidence "will weigh too much with the jury" and "overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Id.* (quoting *Michelson v. United States*, 335 U.S. 469, 475–76 (1948)). "It subtly permits the trier of fact to reward the good man [and] to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." Fed. R. Evid. 404, advisory committee notes.

It is hard to imagine what could be more prejudicial than evidence a defendant was involved in multiple planned terrorist attacks against the nation that is prosecuting him. If the jury credits the government's claims that Mr. Al-Marimi was involved in the La Belle bombing or the American diplomat operation, there is an almost certain risk that the jury will rely on that finding to conclude he also was involved in Pan Am 103. Moreover, it may seek to punish Mr. Al-Marimi for his participation in the other incidents regardless of the strength of the evidence of the Pan Am 103 bombing, believing it unjust that Mr. Al-Marimi should go free even if the government fails to prove the charged offenses.

Forbidden propensity inferences are only one of the evils that Rule 403 considers. Here, the Rule 404(b) evidence also risks misleading the jury and confusing

13

the issues. Prior-act evidence generally "tends to distract the trier of fact from the main question of what actually happened on the particular occasion." Fed. R. Evid. 404, advisory committee notes. But the risk is particularly acute when the prior acts are incidents of international intrigue and the subjects of rampant speculation. The jury is very likely to lose sight of the charges and their elements and get wrapped up in the mystery and drama of the other alleged bombings.

On the other side of the Rule 403 scales, the need for the challenged 404(b) evidence is slight, since each arguable non-propensity purpose can be better achieved with evidence that is directly related to the charged incident. Why must the jury hear about an East Berlin hotel stay in April 1986 to corroborate Mr. Al-Marimi's statement, for example, when it will also hear evidence about his alleged travels and the use of the suitcase bomb in December 1988 that serves the same end? Likewise, Mr. Al-Marimi's alleged confession to Pan Am 103, assuming it is admitted, provides a direct statement of his intent and motive with respect to the bombing, so circumstantial evidence related to a prior act of terrorism would have only marginal probative utility on those points.

For every non-propensity purpose the government claims, it has Pan Am 103 evidence that will dwarf the weak probative value of the challenged Rule 404(b) evidence. Both the strength of the evidence that the defendant committed the uncharged act and the degree to which it is probative of a material issue matter under Rule 403. *See Bowie*, 232 F.3d at 933 n.7 (stating concerns about directness and

14

significance of corroborating Rule 404(b) evidence "are properly addressed through Rule 403"). Whatever slight probative value such evidence might, its prejudicial effects are clear and unavoidable, regardless of any limiting instructions.

II.     **The government's responses to Mr. Al-Marimi's hearsay objections demonstrate why the Court should exclude the challenged hearsay**.

Mr. Al-Marimi raised a number of hearsay objections to his alleged confessions. First, Mr. Al-Marimi challenged the alleged confession itself as hearsay. ECF No. 231 at 5. The Libyan police officer must testify in this matter before the government can even seek admission of the purported confession. Otherwise, the entire statement constitutes inadmissible hearsay of the Libyan police officer. *See* Fed. R. Evid. 801(d)(2)(A) (excluding from hearsay definition only opposing party's statement).[2]

Second, Mr. Al-Marimi argued that the alleged statements of others within the purported confession are statements that "the declarant does not make while testifying at the current trial or hearing" under Federal Rule of Evidence 801(c)(1)[3]. ECF No. 231 at 5.

---

[2] Further, as Mr. Al-Marimi reported in his suppression reply, ECF No. 175 at 9-10, neither the United States government nor the Scottish authorities have the original of Mr. Al-Marimi's alleged confession. Given the highly suspicious circumstances in which the alleged confession was taken, preserved, and ultimately surfaced—*see id.* at 8-11—this is not a case where a copy of the alleged confession will suffice under the best evidence rule. *See* Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.").

[3] Each testimonial statement of another person within the confession offered for the truth of the matter asserted of course triggers a confrontation clause issue for Mr. Al-Marimi as well. *See generally Crawford v. Washington*, 541 U.S. 36, 51-52 (2004).

The government's responses to the hearsay objections generally fall into four categories: 1) the challenged statement is not a "statement" under Federal Rule of Evidence 801(a); 2) the government does not intend to offer the challenged statements for the truth of the matter asserted; 3) the challenged statements constitute co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E) or statements against penal interest under Federal Rule of Evidence 804(b)(3); or 4) the challenged statement is evidence of Mr. Al-Marimi's "then-existing state of mind" under Federal Rule of Evidence 803(3). Mr. Al-Marimi addresses each response in turn[4].

> a. *The portions of Mr. Al-Marimi's alleged confession that the government argues are not hearsay are "statements" under Rule 801(a) because they were intended as "assertions".*

Pursuant to Federal Rule of Evidence 801(a), a "'person's oral assertion' or 'written assertion' is a 'statement' for purposes of this definition, as is a 'person's . . . nonverbal conduct, if the person intended it as an assertion.'" *United States v. Fuller*, 761 F. Supp. 3d 125, 131 (D.D.C. 2025). Any communication made in words is assumed to be an "assertion" absent clear intent otherwise. *See United States v. Long*, 905 F.2d 1572, 1579 n.12 (D.C. Cir. 1990) (discussing advisory committee note to Rule 801(a)); *see also* Fed. R. Evid. 801(a), Advisory Committee Note ("It can scarcely be

---

[4] The defense raised hearsay objections in its motion in ECF No. 231 and replies here as it would as a matter of course at trial or in pretrial briefing. Thus, absent the Court's direction otherwise, the defense does not anticipate a need for the government to be allowed a surreply on the hearsay challenge. If, however, the government wants to file a surreply to explain why it cannot produce the original copy of the alleged confession at trial and the Court should accept a copy, Mr. Al-Marimi does not object to such a filing.

16

doubted that an assertion made in words is intended by the declarant to be an assertion. Hence verbal assertions readily fall into the category of 'statement.'").

In response to Mr. Al-Marimi's hearsay objections, the government has argued that a number of challenged statements do not constitute hearsay because they are not "assertions" under Rule 801(a). Specifically, the government identifies as non-statements:

1. The statement Said Rashid asked Mr. Al-Marimi "to travel to East Germany and meet the Security Officer at the Libyan Embassy, a man named Ali Ibrahim Kashlaf", *see* ECF No. 232-2 at 14 for original statement and ECF No. 246 at 18 for the government's argument;

2. The statement that Kashlaf informed Mr. Al-Marimi that he "was required to prepare an 'explosive package' to be used against an American target." *see* ECF No. 232-2 at 14 for original statement and ECF No. 246 at 18 for the government's argument;

3. The statement that "he ordered me to take one of these cases and travel with it to Malta," *see* ECF No. 232-2 at 16 for original statement and ECF No. 246 at 21-22 for the government's argument;

4. The statement that "I was asked to get up the following morning at seven o'clock in order to set the timer of the explosion inside the suitcase in such a way that the explosion would occur exactly eleven hours later," *see* ECF No. 232-2 at 16-17 for original statement and ECF No. 246 at 21-22 for the government's argument;

5. The statement that "I did know that Americans would be targeted with this explosive device[5]," *see* ECF No. 232-2 at 17 for original statement and ECF No. 246 at 21-22, 24 for the government's argument;

6. The statement that "that he personally had previously requested be

---

[5] The other statements surrounding this specific statement make clear that Mr. Al-Marimi's information about his alleged involvement in Pan Am 103 came from his superiors and therefore is founded on hearsay. *See, e.g., United States v. Meises*, 645 F.3d 5, 21 (1st Cir. 2011) (observing that conclusory statements may be deemed based on hearsay).

prepared by the Technical Operations Section", *see* ECF No. 232-2 at 16 for original statement and ECF No. 246 at 22 for the government's argument;

7. The statement that "Abdulbasit Al-Magrahi worked in the External Security Organisation and was responsible for the security of planes . . .", *see* ECF No. 232-2 at 18 for the original statement and ECF No. 246 at 21-22, 24 for the government's argument;

8. The statement that "And, according to what Abdullah Al-Sanusi told me, Abdulbas it Al-Magrahi and Al-Amin Fhima [xxx] would meet me in Malta", *see* ECF No. 232-2 at 16 for original statement and ECF No. 246 at 23 for the government's argument;

9. The statement about Mr. Al-Marimi being given $500 to purchase clothes for the suitcase, *see* ECF No. 232-2 at 17 for the original statement and ECF No. 246 at 23-24 for the government's argument;

10. The after-attack statements by senior Qaddafi-regime officials, *see* ECF No. 232-2 at 19 for original statements and ECF No. 246 at 25 for the government's argument;

11. The statements about Al-Sanussi banning Mr. Al-Marimi from traveling abroad, *see* ECF No. 232-2 at 19 for original statements and ECF No. 246 at 26 for the government's argument; and,

12. The statements about taking a booby-trapped overcoat to Pakistan and preparations for an operation in Pakistan, *see* ECF No. 232-2 at 20-21 for original statement and ECF No. 246 at 27-28 for the government's argument.

Each of the above statements asserts information about individual roles, actions, and details of the La Belle, Pan Am 103, and Pakistani operations alleged in Mr. Al-Marimi's confession. Without question, they are intended to be verbal assertions of that information. *See, e.g.*, *United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005) (finding that government's argument that defendant's question about how law enforcement officers arrived so quickly to the scene of the crime "begs credulity" to

find that question did not contain an inculpatory assertion).

The cases that the government cites arguing to the contrary deal with assertions not offered for the truth of the matter asserted—not whether the challenged words are assertions. *See* ECF No. 246 at 18 (relying on *United States v. Shepherd*, 739 F.2d 510, 514 (10th Cir. 1984) (making clear that holding is based on issue not being asserted for the truth), and *United States v. Keane*, 522 F.2d 534, 558 (7th Cir. 1975) (same)); ECF No. 246 at 23-24 (relying on *United States v. Bostick*, 791 F.3d 127, 147 (D.C. Cir. 2015) (making clear that holding is based on matters not offered for truth), and *United States v. Safavian*, 435 F. Supp. 2d 36, 44 (D.D.C. 2006) (making clear that holding is based on contents of emails at issue demonstrating state of mind or not offered for truth)). Thus, the proper question here is whether the government intends to offer the statements for the truth of the matter asserted.

As discussed below, it is clear from just this litigation that the government intends to offer these assertions for the truth of the matter asserted, rendering them classic hearsay statements.

> b. *The government's Rule 404(b) and 403 response itself makes clear that the government intends to offer the challenged statements for the truth of the matter asserted.*

In response to Mr. Al-Marimi's hearsay objections, the government further argues that it does not offer certain statements for the truth of the matter asserted. In addition to the portions cited above in relation to the Rule 801(a) discussion, the government has identified the following statements as not being offered for the truth

19

of the matter asserted:

1. The statement that "On the evening of the same day a short while after sunset, he informed me he had handed the matter of interest to the person who would carry out the task", *see* ECF No. 232-2 at 15 for original statement;

2. The statements about news reports, *see* ECF No. 232-2 at 15 for original statements and ECF No. 246 at 19 n.11 for the government's argument; and,

3. The statement that "I got to know of that after the explosion—that the plane was from Malta to Frankfurt to America", *see* ECF No. 232-2 at 18 and ECF No. 246 at 25 for the government's argument.

But, as Mr. Al-Marimi has argued before, *see* ECF No. 229 at 20, the Court cannot accept at face value the government's blanket and convenient assertions that the above-cited statements are not offered for the truth of the matter asserted. *See United States v. Graham*, 47 F.4th 561, 567 (7th Cir. 2022) ("A statement is offered to show an effect on the listener only if the listener heard and reacted to the statement, and if the 'actual use' of the statement at trial was to demonstrate the listener's response.") (citations omitted); *Am. President Lines, LLC v. Matson, Inc.*, 775 F. Supp. 3d 379, 404 (D.D.C. 2025) (rejecting effect-on-listener argument when the statements' relevance turned on their truth). As the government has made clear in its Rule 404(b) response, it offers the details of the La Belle, Pan Am 103, and Pakistani incidents—including the instructions from Mr. Al-Marimi's superiors, his interactions with alleged co-conspirators, and Mr. Al-Marimi's knowledge and awareness of the outcomes of these incidents—for the truth of the matter asserted. *See* ECF No. 246 at 9-17. The Court should reject the government's deflection on this point.

20

  *c. The government must prove at trial that the identified statements qualify as co-conspirator statements and statements against penal interest.*

The government has argued that following statements constitute co-conspirator statements under Rule 801(d)(2)(E) or as statements against interest under Rule 804(b)(3):

1. The statement Said Rashid asked Mr. Al-Marimi "to travel to East Germany and meet the Security Officer at the Libyan Embassy, a man named Ali Ibrahim Kashlaf", *see* ECF No. 232-2 at 14 for original statement and ECF No. 246 at 18 for the government's argument;

2. The statement that Kashlaf informed Mr. Al-Marimi that he "was required to prepare an 'explosive package' to be used against an American target." *see* ECF No. 232-2 at 14 for original statement and ECF No. 246 at 18 for the government's argument;

3. The statement that Mr. Al-Marimi "knew since Said Rashid had informed [him] that [he] was to go to East Germany on a work assignment," *see* ECF No. 232-2 at 14 for original statement and ECF No. 246 at 19-20 for the government's argument;

4. The statement that when asked what was the result of the La Belle explosion, Mr. Al-Marimi responded: "What I recall is that four American officers were killed and a number were wounded", *see* ECF No. 232-2 at 15 for original statement and ECF No. 246 at 20 for the government's argument;

5. The statement that "And, according to what Abdullah Al-Sanusi told me, Abdulbas it Al-Magrahi and Al-Amin Fhima [xxx] would meet me in Malta", *see* ECF No. 232-2 at 16 for original statement and ECF No. 246 at 23 for the government's argument;

6. The statement about Mr. Al-Marimi being given $500 to purchase clothes for the suitcase, *see* ECF No. 232-2 at 17 for the original statement and ECF No. 246 at 23-24 for the government's argument; and,

7. All statements generally made by Al-Sanussi, Meghrahi, and Fhimah and everyone associated with the alleged Pakistani operation, *see* ECF No. 246

at 26-27 for the government's argument.

To sustain a finding that a statement was made "by the party's coconspirator during and in furtherance of the conspiracy", Fed. R. Evid. 801(d)(2)(e), the government must prove by a "preponderance of the evidence that a conspiracy existed and that the defendant and declarant were members of that conspiracy" using evidence independent of the challenged statements. *United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006). To sustain a finding that a statement was made against interest under Rule 804(b)(3), the government must show that the challenged statements are "supported by corroborating circumstances that clearly indicate its trustworthiness after considering the totality of circumstances under which it was made and any evidence that supports or undermines it". Here, the government has not and cannot make the necessary showings.

        d.  "Then-existing state of mind"

Lastly, the government argues that the following statements are admissible under Rule 803(3) as describing a "then-existing state of mind":

1.  The statement that Mr. Al-Marimi "knew since Said Rashid had informed [him] that [he] was to go to East Germany on a work assignment," *see* ECF No. 232-2 at 14 for original statement and ECF No. 246 at 19-20 for the government's argument;

2.  The statement that when asked what was the result of the La Belle explosion, Mr. Al-Marimi responded: "What I recall is that four American officers were killed and a number were wounded", *see* ECF No. 232-2 at 15 for original statement and ECF No. 246 at 20 for the government's argument;

3.  The statement that "I did know that Americans would be targeted with this

22

explosive device," *see* ECF No. 232-2 at 17 for original statement and ECF No. 246 at 21-22, 24 for the government's argument;

4. The statement that "I got to know of that after the explosion—that the plane was from Malta to Frankfurt to America", *see* ECF No. 232-2 at 18 and ECF No. 246 at 25 for the government's argument;

5. The statement that "There were about 260 passengers on board as well as the crew", *see* ECF No. 232-2 at 18 for the original statement and ECF No. 246 at 25 for the government's argument; and,

6. The statements about taking a booby-trapped overcoat to Pakistan and preparations for an operation in Pakistan, *see* ECF No. 232-2 at 20-21 for original statement and ECF No. 246 at 27-28 for the government's argument.

The government's arguments fail to recognize that the Rule 803(3) is akin to a present-sense impression. *See* Fed. R. Evid. 803(3), Advisory Committee Note (providing that Rule 803(3) is a specialized application of present sense impression and specifically excludes memories of past states of mind). As such, Mr. Al-Marimi's alleged recollections in 2012 of events that happened decades earlier clearly do not qualify for Rule 803(3)'s exception.[6]

---

[6] The government has pointed to a specific statement in ECF No. 232-2 at 21 ("It was at this point that I realized that this person was not aware he was going to carry out a suicide mission") in its hearsay response, but the defense did not object to that particular portion as hearsay. *See* ECF No. 232-2 at 21 (statement marked in yellow reflecting Rule 403/404(b) challenge). To the extent that the government is arguing that the hearsay statements preceding this particular statement are admissible as "context" for the non-hearsay statement that follows, there is no exemption from hearsay for "context". The cases that the government cites about context at ECF No. 246 at 23 address statements not offered for the truth of the matter asserted. *See Bostick*, 791 F.3d at 147 (making clear that holding is based on matters not offered for truth); *Safavian*, 435 F. Supp. 2d at 44 (making clear that holding is based on contents of emails at issue demonstrating state of mind or were not offered for truth).

**III.    A circuit split appears to exist regarding the challenged speculative statements.**

In responding to Mr. Al-Marimi's challenge to speculative portions of his alleged confession, the government argues that party admissions are exempt from Rule 602's personal knowledge requirements and cites a Seventh Circuit case for support. *See* ECF No. 246 at 4. The Tenth Circuit has held the opposite. *See Gross v. Burggraff Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995) (finding that Rule 801(d)(2)(A) does not eliminate Rule 602's requirement of personal knowledge). While the D.C. Circuit does not seem to have weighed in on this question, the Tenth Circuit's approach is more persuasive. Moreover, the Advisory Committee Notes to Rules 602 and 801(d)(1)(A) stress the importance of trustworthiness. As Mr. Al-Marimi has indicated before, *see* ECF No. 175 at 8-11, the Court should have grave concerns over the trustworthiness of the alleged confession and should exclude the challenged speculative statements.

**IV.    The government's relevance argument of inclusion for sake of inclusion does not comport with Rule 401.**

The thrust of the government's argument about the challenged relevance of portions of Mr. Al-Marimi's alleged confession is that the "jury is entitled to the benefit of considering the defendant's statement in its entirety". ECF No. 246 at 5. But such an argument belies the existence of the Rules of Evidence and specifically Rule 401, which limits relevant evidence to evidence with a tendency to make a fact of consequence more or less probable. *See* Fed. R. Evid. 401, Advisory Committee Note

("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case."). The personal, private details about his family, Mr. Al-Marimi's property, and activities allegedly carried out after February 2011 remain irrelevant because they do not render any fact of consequence any more or less probable. They do not bear on any element the government must prove, and their accuracy or inaccuracy does not render other portions of the statement any more of less reliable because none of those details would have been known exclusively by Mr. Al-Marimi.

## CONCLUSION

For the foregoing reasons and those discussed in ECF No. 231, the Court should exclude the challenged portions of the alleged confession. Admitting this evidence would deny Mr. Al-Marimi his right to a fair trial based on proof of the charged offenses rather than inflammatory allegations of other acts.

Respectfully submitted
By Counsel,
Geremy C. Kamens,
Federal Public Defender

By: _____/s/_____
Whitney E.C. Minter
Va. Bar # 47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorneys for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia    22314
(703) 600-0855 (telephone)

25

(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
laura_koenig@fd.org (email)