**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD** | : | ██████████ |
| **MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S PLEADING REGARDING
RULE 15 AND VIDEO TESTIMONY**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this pleading as directed in the Court's scheduling order, ECF 254 at 3 ¶ 10, to (1) identify potential witnesses for whom the government anticipates introducing either live video testimony or transcripts/recordings of Rule 15 depositions at trial; and (2) set forth the government's legal position as to why such testimony would not violate the defendant's rights under the Confrontation Clause.

**ANTICIPATED WITNESSES**

The table below identifies the witnesses for whom the government presently foresees a possibility of seeking to introducing recorded Rule 15 testimony or live video testimony at trial. For each witness, a brief description of the reason for the witness's anticipated unavailability at trial and of the means by which the defendant participated or will participate in the taking of testimony. A more detailed discussion of each witness follows the table.

This list is based on the facts presently known to the government about the availability of witnesses. As the Court knows, many of the witnesses in this case are in foreign countries and/or of advanced age. Accordingly, it is possible that additional Rule 15 or remote testimony may become necessary if there is a change in the status of any currently available witnesses.

| Witness | Reason for unavailability | Defendant's participation |
|---|---|---|
| Allen Feraday | | Remote video |



*Allen Feraday* is the forensic scientist whose deposition was taken in the United Kingdom in November of 2025. As the Court knows, ███████████████████████ ████████████████████████████████████ ████████████████ the Court authorized Feraday's deposition to take place overseas without the defendant being physically present. ███████████████████. The defendant participated in the deposition by watching it in real-time from the courtroom in the United States, accompanied in person by one of his attorneys who was in real-time communication with his other attorneys conducting the deposition in the United Kingdom.



4



4

5





## LEGAL ARGUMENT

Under the Sixth Amendment's Confrontation Clause, a criminal defendant has the right "to be confronted with the witnesses against him." U.S. Const. amd. VI. The "main and essential purpose" of this right is to provide "the opportunity of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). The components of the right are "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact," which collectively "ensur[e] that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings." *Maryland v. Craig*, 497 U.S. 836, 846 (1990)

6

For the reasons below, the Confrontation Clause will not preclude the admission of any Rule 15 deposition testimony at trial. The procedures that the Court has approved for the depositions will ensure that the deposition testimony is "reliable and subject to the rigorous adversarial testing" that is constitutionally required, because most or all of the components of the defendant's confrontation right will have been present. For those depositions where it is impossible to arrange the defendant's physical presence, the remaining components – oath, cross-examination, and observation of demeanor by the trier of fact – will be in full force. Omission of the defendant's physical presence in those circumstances is justified under Supreme Court precedent and according to the Rules of Criminal Procedure that the Supreme Court itself promulgated.

Accordingly, all of the government's requested depositions will be admissible at trial.

**A. The government will only offer Rule 15 testimony from witnesses who are "unavailable" at trial.**

As a threshold issue, the procedural mechanism for admitting Rule 15 testimony at trial is Federal Rule of Evidence 804(b)(1), which provides that the rule against hearsay does not exclude "former testimony" of a declarant who is "unavailable as a witness." The Rule lists criteria for deeming a witness unavailable, including when the declarant:

> (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure… the declarant's attendance.

Fed. R. Evid. 804(a). Along with these requirements from the Rules of Evidence, the Confrontation Clause likewise requires that the declarant be "actually unavailable" at trial before the prior testimony is admissible. *Barber v. Page*, 390 U.S. 719, 726 (1968).

The government submits that the Court should wait until a time closer to trial to receive arguments and make rulings on any witnesses' unavailability to testify at trial. For some witnesses

(like Jamal and Majid), their potential unavailability depends on contingencies that may never occur. For other witnesses whose age and health presents a barrier to traveling from foreign countries (like Feraday), any finding should be based on infirmities that exist at or near the time of trial, not six months before. And for those foreign witnesses who have expressed a refusal to travel to the United States for testimony, the government intends to make further efforts to persuade them before considering its options to be exhausted.

The arguments below therefore assume the unavailability of the witnesses at the time of trial.

### B. Depositions with the defendant's remote participation will be admissible.

1. <u>The Confrontation Clause does not require the defendant's physical presence.</u>

As noted above, the Confrontation Clause's "main and essential purpose" is to ensure witnesses against the defendant are subjected to cross-examination. *Van Arsdall*, 475 U.S. at 678 (quoting *Davis*, 415 U.S. at 316). The Supreme Court has long recognized that this purpose can be achieved without the defendant being physically present, because physical presence "is not the *sine qua non* of the confrontation right." *Maryland v. Craig*, 497 U.S. 836, 847 (1990); *see also id.* (collecting cases dating to 1965). Indeed, the Court has favorably quoted a treatise's explanation that the defendant's confrontation right is "not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination," that is, "the direct and personal putting of questions and obtaining immediate answers." *Davis*, 415 U.S. at 316 (quoting 5 J. Wigmore, Evidence s 1395, p. 123 (3d ed. 1940)).

The principal case on this issue, *Maryland v. Craig*, establishes when it is permissible to dispense with the requirement of physical presence: "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial

of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." 497 U.S. at 850.

*Craig*'s first requirement, that "denial of [face-to-face] confrontation is necessary to further an important public policy," can be subdivided into two factors: (1) the importance of the public policy, and (2) the necessity of physical absence to advance that public policy. In *Craig* the Court addressed these factors in turn. It first noted that "a significant majority of States have enacted statutes to protect child witnesses from the trauma of giving testimony in child abuse cases," which fact "attests to the widespread belief in the importance of such a public policy." *Id.* at 853 (1990) (citing *Coy v. Iowa*, 487 U.S. 1012, 1022 (1988) (O'Connor, J., concurring)). The Court then stressed that this important public policy did not confer a blanket justification for remote testimony in child-victim cases: instead, there must be a "case-specific" finding that the procedure is "is *necessary* to protect the welfare of the particular child witness who seeks to testify." *Id.* at 855 (emphasis added). For example, it must be the case that "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant," because otherwise arrangements could be made for the child to "testify in less intimidating surroundings, albeit with the defendant present." *Id.* at 856.

On *Craig*'s second prong, that "the reliability of the testimony is otherwise assured," the Court ruled that procedures "ensure[] the reliability of the evidence" when they "subject[] it to rigorous adversarial testing and thereby preserve[] the essence of effective confrontation." *Craig*, 497 U.S. at 857. Specifically, the one-way video testimony used at trial in that case satisfied the reliability requirement because the child witnesses "testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified." *Id.*

9

   2.   Rule 15(c)(3) incorporates the *Craig* standard.

In this case, all depositions taken outside the defendant's physical presence will be authorized by Rule 15(c)(3), which became law as part of the 2012 amendments to the Rules of Criminal Procedure. That subsection provides that a deposition outside the United States can be taken without the defendant being present "if the court makes case-specific findings" of each of the following:

> (A) the witness's testimony could provide substantial proof of a material fact in a felony prosecution;
>
> (B) there is a substantial likelihood that the witness's attendance at trial cannot be obtained;
>
> (C) the witness's presence for a deposition in the United States cannot be obtained;
>
> (D) the defendant cannot be present because:
>
>> (i) the country where the witness is located will not permit the defendant to attend the deposition;
>>
>> (ii) for an in-custody defendant, secure transportation and continuing custody cannot be assured at the witness's location; or
>>
>> (iii) for an out-of-custody defendant, no reasonable conditions will assure an appearance at the deposition or at trial or sentencing; and
>
> (E) the defendant can meaningfully participate in the deposition through reasonable means.

Fed. R. Crim. Pro. 15(c)(3).

By requiring these "case-specific" findings, Rule 15(c)(3) incorporates each of the elements of the *Craig* standard and thereby ensures that, should the witness ultimately be unavailable for trial, the deposition will be admissible without violating the Confrontation Clause. *See* Fed. R. Crim. Pro. 15, Committee Notes to 2011 Amendment (explaining that amendment "authorizes a deposition outside a defendant's physical presence only in very limited circumstances after the trial court makes case-specific findings" and "recognizes the important witness confrontation principles… that are involved"). *See also United States v.*

*Mostafa*, 14 F. Supp. 3d 515, 519 (S.D.N.Y. 2014) ("The 2012 Amendment to Rule 15 is simply a codification of case law[.]").

In particular:

Subsection (A), requiring that the testimony could "provide *substantial* proof of a material fact *in a felony prosecution*" (emphasis added), imposes a higher standard than Rule 15's baseline requirement that the anticipated testimony be "material" to a criminal case of any type. *See generally* ECF 124-1 (under seal) at 8-9 (government's previous Rule 15 motion, discussing materiality requirement). By adding the additional requirements of "substantial proof" and "felony prosecution," the Rule carves out a special class of depositions that are important enough to proceed outside the defendant's presence: those that involve significant testimony in serious cases. In doing so, it ensures that the "public policy" interest being served is an "important" one, as *Craig* requires. *See* Fed. R. Crim. Pro. 15, Committee Notes to 2011 Amendment ("In order to restrict foreign depositions outside of the defendant's presence to situations where the deposition serves an important public interest, the limiting phrase "in a felony prosecution" was added to subdivision (c)(3)(A).").

Subsections (C) and (D), requiring respectively that the witness cannot be brought to the defendant and that the defendant cannot be brought to the witness, together ensure that testimony outside the defendant's physical presence is used only as a last resort, and that the procedure is "necessary" to further the important public policy at issue, as *Craig* requires. In other words, taking the deposition without the defendant's cannot be merely a matter of litigation convenience. *Cf. United States v. Yates*, 438 F.3d 1307, 1318 (11th Cir. 2006) (finding live remote testimony to have violated *Craig* standard because '[t]he Government has never maintained that any special circumstance created an inability… to allow Defendants to attend [a Rule 15] deposition").

And Subsection (E), requiring that the defendant be able to meaningfully participate, ensures that witness can be rigorously cross-examined — not just by the defendant's counsel,[2] but with the defendant's own input.

The Supreme Court has expressly approved Rule 15(c)(3). Under the Rules Enabling Act, 28 U.S.C. §§ 2071 *et seq.*, the Supreme Court has "the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts." *Id.* § 2072(a). It was through the exercise of that power that Rule 15(c)(3) came into effect: on April 23, 2012, the Chief Justice submitted the provision to Congress as part of "the amendments to the Federal Rules of Criminal Procedure that have been adopted by the Supreme Court of the United States pursuant to Section 2072 of Title 28, United States Code." *See Order of April 23, 2012*, *available at* https://www.supremecourt.gov/orders/courtorders/frcr12.pdf. When Congress enacted no legislation to reject, modify, or defer the amendment, it became law later that year.

The Supreme Court has shown that, when it promulgates Rules of Criminal Procedure, it considers their possible effect on defendants' constitutional rights. For example, in 2002 the Court rejected a proposed amendment to Federal Rule of Criminal Procedure 26 that would have authorized district courts to take real-time video testimony when: "(1) the requesting party establishes exceptional circumstances for such transmission; (2) appropriate safeguards for the transmission are used; and (3) the witness is unavailable within the meaning of Federal Rule of Evidence 804(a)(4)-(5)." *Order of April 29, 2002*, 207 F.R.D. 89, 99 (2002). As Justice Scalia noted in a statement accompanying the order, a majority of Justices held the view that the proposed amendment was "of dubious validity under the Confrontation Clause of the Sixth Amendment to

---

[2] Rule 15 separately provides for the court to order that defense counsel's expenses be paid by the government, ensuring that cost will not be a barrier to cross-examination. *See* Fed. R. Crim. Pro. 15(d).

the United States Constitution." *Id.* at 93. Justice Scalia specifically faulted the proposed rule for inviting violations of the *Craig* standard by allowing video testimony in cases where there has been no "'case-specific finding' that it is 'necessary to further an important public policy.'" *Id.* (citing *Craig*, 497 U.S. at 850).

The 2012 amendment to Rule 15, by contrast, was promulgated by the Supreme Court without noted dissent. The difference between the rejected 2002 amendment and the successful 2012 amendment is clear: the latter requires "case-specific" findings that, as discussed above, satisfy the requirements laid out in *Craig*. The Court's endorsement of the procedures in Rule 15(c)(3) is strong evidence that it believed the resulting testimony would be admissible under *Craig*, since permitting depositions under these circumstances would otherwise be an exercise in futility.

       3.   <u>Admission of the depositions in this case will satisfy the *Craig* standard.</u>

In this case, taking testimony outside the defendant's physical presence is more than justified under the Rule 15(c)(3) factors and under the *Craig* standard.

       a.   <u>The testimony furthers an "important public policy."</u>

Assuming the deponents' unavailability, *Craig*'s requirement that the remote procedure be "necessary to further an important public policy" will be met. As discussed above, Rule 15(c)(3) reflects a policy judgment that testimony providing "substantial proof of a material fact in a felony prosecution" is sufficiently important to overcome the usual preference for in-person confrontation. That policy judgment was endorsed by both the Supreme Court, which promulgated the amendment, and by Congress, which declined to reject, modify, or defer it. Accordingly, by virtue of satisfying Rule 15(c)(3)(A), the government's depositions will necessarily satisfy the "important public policy" prong of the *Craig* rule.

The existence of an "important public policy" interest is especially strong here because of the nature of the case. Although Rule 15(c)(3)(A) does not distinguish between types of "felony prosecution[s]," courts have rightly explained that international terrorism cases present a uniquely strong need for testimony in which the defendant participates remotely. "'[N]o governmental interest is more compelling than the security of the Nation,'" and therefore "[t]he prosecution of those bent on inflicting mass civilian casualties or assassinating high public officials" is "just the kind of important public interest contemplated by the *Craig* decision." *United States v. Abu Ali*, 528 F.3d 210, 241 (4th Cir. 2008) (quoting *Haig v. Agee*, 453 U.S. 280, 307 (1981)). That is especially true because "the struggle against terrorism is one of global dimension," and "[i]f the government is flatly prohibited from deposing foreign officials anywhere but in the United States, this would jeopardize the government's ability to prosecute terrorists using the domestic criminal justice system." *Id.*[3]

Granted, the importance of the case does not automatically mean that every witness would automatically be eligible to give testimony outside the defendant's presence. *See* 11/12/25 Tr. at 69 (Court explaining that, otherwise, "the government's asserted public policy interest would apply to every witness in this case"). Instead, as is already required Rule 15(c)(3)(A), the Court should allow such testimony only upon a finding that the witness's testimony would provide "*substantial* proof of a *material* fact." For all of the Rule 15 depositions that have already been ordered, this standard is easily met. █████████████████████████████

████████████████████████████████████████████████

---

[3] Terrorism charges are sufficient but not necessary to establish an important public policy. "Courts have found exceptions under *Craig* on grounds less compelling than engaging in direct acts of terrorism," and have sometimes found *Craig* satisfied without identifying the specific public policy at issue. *United States v. West*, 08-cr-669, 2010 WL 3324886, at *2 (N.D. Ill. Aug. 18, 2010) (citing *United States v. McKeeve*, 131 F.3d 1, 9–10 (1st Cir. 1997); *United States v. Medjuck*, 156 F.3d 916, 920–21 (9th Cir. 1998)).

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████    For any and all Rule 15 depositions that have not yet been ordered, the government will proffer sufficient facts to establish that the testimony will constitute substantial proof of a material fact, thereby satisfying Rule 15(c)(3)(A) and the *Craig* standard.

Accordingly, the "important public policy" required by *Craig* will be present for each deposition the government ultimately seeks to introduce.

> b.  The testimony is "necessary" to advance the public policy interest.

The admission of the planned Rule 15 testimony would likewise satisfy *Craig*'s closely related requirement that the defendant's absence be "necessary" to advance the public policy interest. By virtue of having satisfied Rule 15(c)(3)(C), the government will have established that it was not possible to bring the witness to a location in the United States where the defendant could be present. And by satisfying Rule 15(c)(3)(D), the government will have established that it was not possible to bring the defendant to the witness's location abroad. Remote participation by the defendant is therefore "necessary" if the testimony was to be taken at all.

As discussed in the government's original Rule 15 motions, *e.g.*, ECF 124-1 at 10-11, the government lacks subpoena power over foreign witnesses located abroad. When a witness refuses to travel to the United States, we are stuck with that refusal no matter what the witness's reasons. The government in good faith will exercise all reasonable efforts to persuade any reluctant witnesses, and will document those efforts to serve as the basis of a finding by the Court that "the witness's presence for a deposition in the United States cannot be obtained." Fed. R. Crim. Pro. 15(c)(3)(C). But if a witness still declines to come, there is nothing more that can be done. This will therefore not be a case where the record is insufficient to establish the necessity of the requested procedures. *Cf. United States v. Yates*, 438 F.3d 1307, 1317 (11th Cir. 2006) (finding

*Craig* violated when there was "no evidentiary support for a case-specific finding that the witnesses and Defendants could not be placed in the same room for the taking of pre-trial deposition testimony pursuant to Rule 15"). Nor would any adjustment to the trial schedule change matters. *Cf. United States v. Carter*, 907 F.3d 1199, 1208 (9th Cir. 2018) (finding *Craig* violated when remote video testimony was taken from seven-months-pregnant witness, because district court failed to consider the "obvious alternative" of continuing trial until after the birth).

Likewise, the Court's findings of the impossibility of bringing the defendant to foreign countries have been, and will continue to be, amply supported. The government has provided a declaration from the U.S. Marshals Service explaining why the secure transport of the defendant overseas cannot be accomplished, especially given the existence of Special Administrative Measures (SAMs). *See* ECF 193 (under seal) at 2-3 (Court's order finding Rule 15(c)(3)(D)(ii) satisfied). The government has also established, through the statements of foreign officials, that the host countries of the depositions would not accept the defendant's presence. *See id.* at 3-4 (finding Rule 15(c)(3)(D)(i) satisfied).

On the same reasoning, Judge Moss in *United States v. Trabelsi* found that " serious accusations against Trabelsi and the nature of the charges against him" created "a compelling national-security interest in ensuring that Trabelsi remain in the custody of the U.S. government and remain subject to the SAMs, neither of which would be possible if he were brought to Europe for a deposition or for remote trial testimony." 06-cr-89 (RDM), 2023 WL 4344526, at *18 (D.D.C. June 5, 2023). Consequently, "denying Trabelsi a face-to-face confrontation with [the witness] at the Rule 15 deposition (or trial) was, indeed, 'necessary to further an important public policy' that is 'more substantial than [the interest in] convicting someone of a criminal offense.'" *Id.* at *19 (quoting *Craig*, 497 U.S. at 850; *Abu Ali*, 528 F.3d at 241).

The necessity of the proposed procedures is therefore well established.

      c. <u>The reliability of the testimony is assured through meaningful cross examination.</u>

Finally, because defense counsel retained the ability to conduct full cross-examination, and because the defendant was able to observe the proceedings in real-time and confer with the attorney conducting the examination, the last requirement of *Craig* – that "the reliability of the testimony [be] otherwise assured," is satisfied.

As the Fourth Circuit explained in *Abu Ali*, the Supreme Court in *Craig* provided "a blueprint on how to satisfy this requirement when it noted that 'the presence of [the] other elements of confrontation—oath, cross-examination, and observation of the witness' demeanor—adequately ensure[ ] that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony.'" *Abu Ali*, 528 F.3d at 241 (quoting *Craig*, 497 U.S. at 851).

Courts have found the admission of remote-participation Rule 15 depositions to be constitutionally permissible even when there is not perfect achievement of all the remaining components of the Confrontation Clause. For example, in *Abu Ali*, the defendant lacked the ability to confer with his counsel in real time, but the court found that the remote-observation procedures "plainly meet the reliability prong of *Craig*. And in *Trabelsi*, the deposition was strictly time-limited and ended up being "slightly shorter than initially anticipated"'; still, over the defendant's objection that he had insufficient time for a meaningful cross-examination, the court found that "even with… delays, Trabelsi had sufficient time to conduct a reasonable cross-examination." 2023 WL 4344526 at *25.

Here, all the elements of confrontation other than physical presence will be present at each deposition. The witnesses will all be under oath and subject to full cross-examination by defense counsel, who will be physically present at the deposition sites just like government counsel. The

defendant, accompanied by defense co-counsel, will be watching the proceedings remotely with the ability to confer directly with counsel in the United States and via real-time communication with counsel abroad conducting the deposition. This is more than sufficient. *See, e.g.*, *United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) (affirming admission of Rule 15 testimony where government set up "elaborate system to allow [the defendant] to witness the depositions live by video feed and to participate with his attorneys by private telephone connection during the depositions taken in Canada"); *United States v. Carter*, 907 F.3d 1199, 1207 (9th Cir. 2018) (noting that Confrontation Clause is served when "the defendant has multiple attorneys, such that one c[an] travel to the witness's remote location while the other remains in the courtroom," to ensure "the witness is not being coached or influenced during testimony, and that the witness is not improperly referring to documents" (cleaned up)). Moreover, as the Court has already seen and heard during the Feraday deposition, the testimony is being recorded in high-quality audio and video, which will allow the jury to view the witnesses' demeanor.

For all these reasons, the Confrontation Clause will not bar the admission of any of the Rule 15 depositions videorecorded in foreign countries outside the defendant's physical presence.

### C. Where Rule 15(c)(3) is satisfied, the Court should allow live video testimony as an alternative.

In the case of a witness whose testimony, although constituting "substantial proof of a material fact," is nonetheless limited in anticipated scope and length, it would serve judicial economy for the witness to testify by live remote video rather than in a recorded Rule 15 deposition before trial. Such witnesses could include, for example, those whose testimony is only to authenticate documents. Proceeding in this fashion would save considerable time and expense, since it would be accomplished midtrial and would not require the parties to travel overseas.

"With the exception of the Second Circuit, which applied a more lenient standard,… courts have applied the *Craig* standard in determining whether a witness may testify by two-way video." *United States v. Pangelinan*, no. 19-10077, 2020 WL 5118550, at *2 (D. Kan. Aug. 31, 2020) (citing *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999); *United States v. Carter*, 907 F.3d 1199, 1206 (9th Cir. 2018); *United States v. Yates*, 438 F.3d 1307, 1315 (11th Cir. 2006); *United States v. Casher*, no. 19-cr-65-BLG-SPW, 2020 WL 3270541 (D. Mont. June 17, 2020)).

As discussed above, the requirements of Rule 15(c)(3) ensure that, whenever a deposition outside the defendant's physical presence is ordered under that subsection, the resulting testimony will be admissible at trial under the *Craig* standard if the witness is unavailable. Because the rule incorporates the *Craig* standard, once the Court finds that Rule 15(c)(3) is satisfied for a particular witness, it could validly exercise its discretion to allow the witness to testify by live video during trial rather than in a prerecorded deposition.

If anything, live video testimony is superior to prerecorded Rule 15 testimony from the standpoint of the Confrontation Clause, as courts have consistently explained. *See, e.g.*, *United States v. Sapse*, No. 2:10-cr-00370, 2012 WL 5334630, at *2 (D. Nev. Oct. 26, 2012) ("[T]he live video conference testimony during trial is superior to video taped deposition Rule 15 deposition testimony, because the jury can view live the witnesses reactions to questions and answers while simultaneously viewing Defendants' demeanor during the live exchange."); *United States v. Cole*, No. 1:20-cr-424, 2022 WL 278960, at *5 (N.D. Ohio Jan. 31, 2022) ("The Court agrees that live cross-examination provides stronger protection for [the defendant's] right to cross-examine the witness than a Rule 15 deposition."); *Mostafa*, 14 F. Supp. 3d at 520 ("In some regards, CCTV provides more of the characteristics that the Supreme Court has deemed significant to the Confrontation Clause. For instance, the demeanor of a witness is apparent for the trier of fact to see live.").

19

Accordingly, it would be both pragmatically sound and legally permissible, in appropriate instances, to take remote testimony during trial from certain foreign witnesses who would otherwise be deposed under Rule 15(c)(3).

### D.  Depositions taken in the defendant's physical presence will be admissible.

Finally, a simpler analysis applies to those depositions taken in the United States, because the defendant will be physically present for those. Thus, all of the components of the defendant's Confrontation Clause right will be present. *See United States v. Smith*, 213 Fed. Appx. 774, 777 n.4 (11th Cir. 2006) (finding Confrontation Clause argument "misplaced" because "defendant was physically present during" the Rule 15 testimony). So long as the government establishes that the witnesses are unavailable for trial, these depositions will be admissible.

## CONCLUSION

For the above reasons, at a time closer to the start of trial and upon a showing that each of the relevant witnesses is unavailable, the Court should admit recorded Rule 15 deposition testimony and allow live video testimony.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Conor Mulroe*_____
CONOR MULROE (NY Bar No. 5289640)
ERIK M. KENERSON (OH Bar No. 82960)
BRITTANY KEIL (D.C. Bar No. 500054)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
601 D Street NW, Washington, D.C. 20530
(202) 740-4595 // Conor.Mulroe@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys, Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW, Washington, D.C. 20530