**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD** | : | |
| **MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION TO PRECLUDE
THE TESTIMONY OF DEFENSE EXPERT DR. BRIAN CUTLER**

The United States of America, moving by and through its undersigned counsel, respectfully submits this motion seeking to preclude the proposed expert testimony of Dr. Brian Cutler. The defense has noticed its intention to call Dr. Cutler as an "expert on false confessions to assist the jury in understanding the facts and the law as applied to statements of an accused." The Court should preclude Dr. Cutler's testimony because his expert notice is inadequate, his research fails to satisfy *Daubert*, and the danger of unfair prejudice substantially outweighs the testimony's probative value.

Dr. Cutler's false confession testimony fails to satisfy *Daubert*. Indeed, Dr. Cutler's false confession testimony is "nothing more than guesswork." *United States v. Deuman*, 892 F. Supp. 2d 881, 888 (W.D. Mich. 2012) (precluding the testimony of false confessions expert). Dr. Cutler's work "provides neither a useful nor appropriate basis to assist a jury in assessing whether a particular confession, or even incriminating statement, was false." *Id.* at 886. Dr. Cutler's testimony would "introduce the jury . . . to a kind of faux science." *United States v. Phillipos*, 849 F.3d 464, 472 (1st Cir.), *as clarified on denial of reh'g,* 869 F.3d 15 (1st Cir. 2017) (quoting the district court decision, and affirming the decision to preclude expert's testimony). Accordingly, this Court should preclude Dr. Cutler's testimony.

**Background**

On November 25, 2025, the defense sent the government a letter purporting to be expert notice for Dr. Brian Cutler. See Exhibit 1. The letter is a mere list of testimony topics. The letter fails to describe Dr. Cutler's opinions or the bases and reasons for his opinions. Indeed, the portion of the letter describing Dr. Cutler's testimony consists of a single sentence. That single sentence indicates that, "Dr. Cutler will inform the factfinder about the psychology of coercion, true confessions, and false confessions, even though the term true confessions is used sparingly." *Id*. at 3. The letter goes on for 25 pages describing all the factors that can lead to false confessions, such as the defendant's state of mind and coercive techniques. It also discusses the different types of false confessions. There is no mention of what the defendant's state of mind was in 2012, or how his state of mind made him more susceptible to giving a false confession. Additionally, the letter fails to identify what coercive tactics were present in the defendant's interview. Moreover, the letter provides no indication that Dr. Cutler has the requisite training or experience to diagnose a person's personality traits and characteristics, let alone that Dr. Cutler has ever met the defendant such that he could begin to make such a diagnosis.

Also, while the notice incorporates by reference Dr. Cutler's curriculum vitae, it is unclear whether the curriculum vitae includes all his publications from the past ten years. The notice does not indicate *any* trials and depositions in which he has testified as an expert. Because the notice is inadequate, the witness should be precluded from testifying.

**ARGUMENT**

Dr. Cutler's testimony should be precluded. The defense's expert notice is insufficient, the research underlying the witness's testimony fails to satisfy *Daubert*, and his testimony carries a danger of unfair prejudice that substantially outweighs any probative value.

## I.    Defendant's Notice for Dr. Cutler Is Inadequate.

Defendant's expert notice is insufficient.  The notice contains only a single sentence describing Dr. Cutler's testimony.  That single sentence is a mere list of topics.  It fails to describe Dr. Cutler's opinions or the bases and reasons for his opinions.  Accordingly, the notice is deficient, and preclusion is warranted.

"Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure requires the defendant to provide, at the government's request, 'a written summary of any testimony the defendant intends to use' as evidence at trial under Rules 702, 703 or 705 of the Federal Rules of Evidence.'"  *United States v. Naegele*, 468 F. Supp. 2d 175, 176 (D.D.C. 2007) (quoting Fed. R. Crim. P. 16(b)(1)(C)); *see also United States v. Rogers*, 2006 WL 5249745, at *2 (D.D.C. July 17, 2006).

A mere "list of testimony topics" is insufficient notice under Rule 16.  *Rogers*, 2006 WL 5249745 at *3 (string citations omitted); *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001) ("The Rule requires a summary of the expected testimony, not a list of topics"); *see also United States v. Beavers*, 756 F.3d 1044, 1054 (7th Cir. 2014) (noting that expert notice was "insufficient[ ]" as it provided only a "general list of examination topics" and one sentence, conclusory in nature, about one opinion the witness would offer at trial); *United States v. Concessi*, 38 F. App'x 866, 868 (4th Cir. 2002) (upholding district court decision to exclude expert testimony where notice was provided late and "failed to describe the witnesses['] opinions or provide the bases and reasons for the witnesses' opinions"); *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (affirming that expert notices were "plainly inadequate" because they "merely listed general and in some cases extremely broad topics on which the experts might opine"), *abrogated on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018).

Proper expert notice must "describe the witness's opinions" and describe "the bases and reasons for these opinions." *Naegele*, 468 F. Supp. 2d at 176 (quoting Fed. R. Crim. P. 16(b)(1)(C)). The primary purpose of Rules 16(b)(1)(B) and (C) is to prevent unfair surprise at trial and to permit each party "to prepare rebuttal reports and to prepare for cross-examination at trial." *Id.* "Rule 16(b)(1)(C) is 'intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" *Id.* (quoting Fed. R. Crim. P. 16 advisory committee's note). A defendant is "not entitled to surprise the government with ill-defined expert testimony." *Beavers*, 756 F.3d at 1054.

"A failure to comply with these Rules may result in the exclusion of the proffered evidence." *Naegele,* 468 F. Supp. 2d at 176 (citing Fed. R. Crim. P. 16(d); *United States v. Barile*, 286 F.3d 749, 758–59 (4th Cir. 2002); *United States v. Day*, 433 F. Supp. 2d 54, 57 (D.D.C. 2006)).

Here, the defense has provided a mere list of topics. The defense has failed to describe the witness's opinions. The defense has also failed to provide any of the bases and reasons for the witness's opinions. "[E]xperts' opinions are worthless without data and reasons." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) (quoting *Kenosha v. Heublein,* 895 F.2d 418, 420 (7th Cir. 1990)). Accordingly, the defense's expert notice is deficient. Because the defense has failed to provide sufficient expert notice, Dr. Cutler should be precluded from testifying.

## II.    Dr. Cutler's Testimony on False Confessions Fails to Satisfy *Daubert*.

Even assuming, arguendo, that the defense had provided sufficient expert notice, Dr. Cutler's testimony must still be precluded because it fails to satisfy *Daubert*.

Dr. Cutler's testimony is appropriately analyzed pursuant to *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule 702.  Federal Rule of Evidence 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert*, the Supreme Court of the United States established the trial judge as the gatekeeper of expert testimony under Federal Rule of Evidence 702.  509 U.S. at 589-90.  The *Daubert* Court directed the trial judge to employ a two-prong analysis when assessing the admissibility of expert opinion.  Under that analysis, courts are to examine (1) whether the expert is offering scientifically reliable and valid opinions and (2) whether such opinions are relevant and will assist the trier of fact in understanding or determining a fact in issue.  *Id*. at 590-91.  The Court recognized that the application of these standards "on occasion will prevent the jury from learning of authentic insights and innovations. . . .  That, nevertheless, is the balance struck by the Rules of Evidence, designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes."  *Id*. at 597.  The proponent of the testimony must establish its admissibility by a "preponderance of proof."  *Id*. at 592 n.10.

A.    ***Daubert* Prong #1: Dr. Cutler's False Confession Testimony Does Not Consist of Scientifically Reliable and Valid Opinions.**

"Most circuit courts to directly consider the admission of expert testimony on false confessions have determined such testimony is inadmissible."  *United States v. Rodriguez-Soriano*, 2017 WL 6375970, at *2 (E.D. Va. Dec. 11, 2017) (citing *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014); *United States v. Dixon*, 261 F. App'x 800, 810 (5th Cir. 2008); *Mamah*,

332 F.3d at 478); *see also United States v. Phillipos,* 849 F.3d 464, 471 (1st Cir.), *as clarified on denial of reh'g*, 869 F.3d 15 (1st Cir. 2017), *and cert. denied,* 138 S. Ct. 683 (2018) (affirming district court's order excluding expert from testifying as an expert on false confessions); *United States v. Redlightning*, 624 F.3d 1090, 1112 (9th Cir. 2010) (affirming district court's order excluding expert from testifying as an expert on false confessions); *Dixon*, 261 F. App'x at 804 (affirming district court's order excluding proffered expert testimony on false confessions); *Mamah*, 332 F.3d at 478 (same); *United States v. Benally*, 541 F.3d 990, 994 (10th Cir. 2008) (same); *United States v. Mazzeo*, 205 F.3d 1326, 1326 (2d Cir. 2000) (same).

Dr. Cutler cannot opine that any specific technique or tactic is likely to elicit a false confession, nor can he opine what the likelihood is of eliciting a false confession using any particular technique. Likewise, a federal district court judge opined that the "false confession testimony of the kind [the expert] can offer is nothing more than guesswork." *United States v. Deuman*, 892 F. Supp. 2d 881, 888 (W.D. Mich. 2012). That court found that "research on false confessions and theories based on that research are not sufficiently reliable to be of assistance to the jury in understanding the evidence or determining a fact in issue in a particular case." *Id.* at 886. The work "provides neither a useful nor appropriate basis to assist a jury in assessing whether a particular confession, or even incriminating statement, was false." *Id.*

Yet another district court judge found that expert opinions on false confessions failed to satisfy *Daubert. See United States v. Phillipos*, 849 F.3d 464, 471 (1st Cir.), *as clarified on denial of reh'g,* 869 F.3d 15 (1st Cir. 2017) (discussing district court case). The district court found that there was "no indication that there is a body of reliable material that constitutes understanding in this area," and that the testimony would "introduce the jury . . . to a kind of faux science." *Id.* at 471-72 (quoting the district court decision, and affirming that decision); *see also Washington v.*

*Rafay*, 285 P.3d 83, 112 (2012) (no abuse of discretion where "Leo was unable to testify about any meaningful correlation between specific interrogation methods and false confessions or provide any method for the trier of fact to analyze the effect of the general concepts on the reliability of the defendants' confessions").

Because Dr. Cutler's false confession testimony amounts to "faux science" and "nothing more than guesswork" that is "unreliable at every stage," his testimony fails to satisfy *Daubert* and must be precluded.

**B.    *Daubert* Prong #2: Dr. Cutler's False Confession Testimony Is Not Relevant to the Instant Case and Would Not Assist the Trier of Fact in Understanding or Determining a Fact in Issue**.

Dr. Cutler's testimony should also be precluded because it is not relevant to the instant case and would not assist the trier of fact.  Dr. Cutler's testimony is not relevant, as the defense has failed to proffer any connection between Dr. Cutler's research and the facts of this case.  Dr. Cutler's testimony would not assist the trier of fact because his research fails to support "any meaningful correlation between specific interrogation methods and false confessions." *Rafay*, 285 P.3d at 112.

**1.    *Dr. Cutler's Research Cannot Be Reasonably Applied the Instant Case with any Assurance of Scientific Validity.***

Dr. Cutler's research is not relevant to the instant case.  "Most circuit courts to directly consider the admission of expert testimony on false confessions have determined such testimony is inadmissible." *United States v. Rodriguez-Soriano*, 2017 WL 6375970, at *2 (E.D. Va. Dec. 11, 2017) (string cite omitted).  Testimony of this sort would "introduce the jury . . . to a kind of faux science" and is inappropriate for trial. *United States v. Phillipos*, 849 F.3d 464, 472 (1st Cir.), *as clarified on denial of reh'g,* 869 F.3d 15 (1st Cir. 2017) (quoting the district court decision and affirming the decision to preclude the testimony of a purported false-confessions expert).

Furthermore, at least one case cited deals with Dr. Cutler specifically. *United States v. Rodriguez-Soriano*, 2017 WL 6375970, at \*2 (E.D. Va. Dec. 11, 2017). The court in *Rodriguez-Soriano* precluded Dr. Cutler from testifying on multiple grounds. One basis for excluding his testimony was that "the science of false confessions is unreliable." *Id.* at \*2. (citing Mem. Op., *United States v. Yazzie*, No. 1:11-cr-01876-WJ, Doc. 145 at 4-5 (D.N.M. Sept. 17, 2012)). The court noted that the there is no "known or potential error rate" that can be attributed to false confession studies. *Id.* The court also noted that, during a colloquy, Dr. Cutler acknowledged that he would be unable offer an opinion as to whether any particular statement by that defendant "or any other person" was in fact false. *Id.*

In addition to questioning the reliability of false-confession science in general, the court in *Rodriguez-Soriano* expressed serious doubts about the reliability of Dr. Cutler's testimony in particular. The court noted that "Dr. Cutler's understanding of this subject matter appears to be substantially derivative of Dr. Richard. A. Leo's research in this field" and that "numerous courts have excluded as unreliable testimony from Dr. Leo that is similar to the proffered testimony here." *Id.*

### 2. The Testimony Is Not Relevant. No Connection Has Been Alleged Between Dr. Cutler's Proposed Testimony and the Facts of this Case.

Dr. Cutler's testimony should also be excluded because the defense has provided no indication that the techniques or conditions referenced in the expert notice were ever used in this case. *See United States v. Redlightning*, 624 F.3d 1090, 1110 (9th Cir. 2010) (affirming the district court decision to exclude expert's testimony and quoting with approval the district court's statement that "the court, as gatekeeper, cannot permit Dr. Leo to testify regarding the possibility of a false confession due to police interrogation techniques when he can point to no evidence in the record that any of these techniques are present in this case"). In its letter, the defense proffers

that Dr. Cutler's testimony "will inform the factfinder about the psychology of coercion, true confessions, and false confessions, even though the term true confessions is used sparingly." However, the letter does not identify how the psychology of coercion is related to this case. Moreover, the notice fails to allege that such techniques were used during the interviews of the defendant. In short, the defense has proffered no connection between Dr. Cutler's testimony and the facts of this case. Accordingly, his testimony should be excluded.

Dr. Cutler's testimony is also not relevant or helpful for the jury because the defense has provided no indication how any coercion referenced in the letter is relevant to this case. The defense does not identify any such coercive tactic that was present here. The defense also does not allege that the defendant was at risk for giving a false confession. Moreover, there is no indication that Dr. Cutler has ever met the defendant or that he has the necessary training and expertise to diagnose the defendant's psychology. Again, because the defense has proffered no connection between Dr. Cutler's testimony and the specific facts of this case, his testimony should be excluded.

### 3.     The Testimony Would Not Assist the Trier of Fact.

Dr. Cutler's testimony should also be excluded because it would not assist the trier of fact. Dr. Cutler's research has no scientifically-validated predictive power in showing that specific techniques are more likely to lead to false confessions than true ones. *See, e.g., Washington v. Rafay*, 285 P.3d 83, 112 (2012). His research fails to support "any meaningful correlation between specific interrogation methods and false confessions." *Id.* In addressing the relevance of his testimony in a previous case, another expert conceded that "[t]he police interrogation techniques [he] identified as being associated with *false confessions*" were also "associated with *true confessions.*" *People v. Kowalski*, 492 Mich. 106, 147 (Mich. 2012) (Markman, J. concurring in

part and dissenting in part) (emphasis in original).  Accordingly, Dr. Cutler's proposed testimony is not relevant "in any way to the jury in deciding whether [a particular] *defendant* was a false confessor or nonfalse confessor."  *Id*. (emphasis in original).  Because his testimony would not assist the trier of fact in understanding or determining a fact in issue, Dr. Cutler's testimony should be precluded.

**III.    Dr. Cutler's Testimony Creates a Risk of Unfair Prejudice that Substantially Outweighs its Probative Value.  His Testimony Should Be Precluded Accordingly.**

Dr. Cutler's testimony should also be precluded because its probative value is substantially outweighed by a danger of unfair prejudice and misleading the jury. *See* Fed. R. Evid. 403.  Even if testimony complies with *Daubert*, it can still be precluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  *Daubert*, 509 U.S. at 594.  "[B]ecause '[e]xpert evidence can be both powerful and quite misleading,' a court has greater leeway in excluding expert testimony under Rule 403 than it does lay witness testimony."  *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 86 (D.D.C. 2012) (quoting *Daubert*, 509 U.S. at 595 (second alteration in original)); *United States v. Bikundi*, No. 14-CR-030 (BAH), 2015 WL 5915481, at *3 (D.D.C. Oct. 7, 2015); *Daniels v. District of Columbia*, 15 F. Supp. 3d 62, 67 (D.D.C. 2014).

As described above, Dr. Cutler's testimony has little if any probative value.  His testimony is *not* based on reliable sources and methods.  *See, e.g., Kowalski*, 492 Mich. at 133.  The research underlying his testimony is *not* applicable to the facts of this case.  *Cf. United States v. Redlightning*, 624 F.3d 1090, 1110 (9th Cir. 2010) (affirming preclusion of expert testimony where, as here, the defense had failed to show a factual connection between his testimony and the case at hand).  And his research *lacks* any predictive power to assist a jury in deciding whether a

particular defendant was a false confessor or nonfalse confessor. *Rafay*, 285 P.3d at 112; *Kowalski*, 492 Mich. at 147.  Besides, a jury is fully capable of assessing the truthfulness of the defendant's statements without expert testimony.  *See Rodriguez-Soriano,* 2017 WL 6375970 at *3 (holding that a jury is fully capable of assessing the truthfulness of the defendant's confession without expert testimony on false confessions).  In sum, the probative value is nil.

By contrast, the danger of unfair prejudice is substantial.  This prejudice stems, in part, from the fact Dr. Cutler will be testifying as an "expert," thereby carrying a label of authority unavailable to most other witnesses at the trial.  Accordingly, jurors may give his testimony more weight than it merits.

The danger of unfair prejudice also stems from the emotional salience of the subject matter. Testimony of false confessions and coerced confessions will stoke jurors' passions and sympathies, especially given the recent popularity of podcasts and Netflix programs on false confessions and wrongful convictions.

The danger of unfair prejudice also stems from the risk of confusing the jury.  Testimony about false confessions and coerced confessions will necessarily suggest to the jury that the defendant in this case may have been coerced and/or provided a false confession.  Even if Dr. Cutler were to identify a specific interview technique or techniques used with the defendant— and he has yet to identify any such technique — Dr. Cutler is unable to provide any meaningful correlation between specific interrogation methods and false confessions.  The jury is very likely to be confused if his speculative and unreliable testimony is presented to them.

The danger of prejudice and confusion also stems from the fact that jurors may be willing to give Dr. Cutler's testimony more credit than it merits based on other false markers of authority. For example, Dr. Cutler has a PhD. and has published numerous articles and other works.  Yet,

quantity is not evidence of quality.  If Dr. Cutler is permitted to testify, it would be a time-consuming but necessary task for the government to demonstrate to the jury, article by article, the strength of the unavoidable conclusion that numerous courts have already reached — that Dr. Cutler's research is not worth crediting.

In sum, the danger of unfair prejudice and confusing the issues substantially outweighs the probative value of such testimony.

## CONCLUSION

For the foregoing reasons, the defense should be precluded from presenting Dr. Cutler's proposed testimony at trial.

Respectfully submitted,
JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Brittany Keil*_____
BRITTANY KEIL (D.C. Bar No. 500054)
CONOR MULROE (NY Bar No. 5289640)
ERIK M. KENERSON (OH Bar No. 82960)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
National Security Section
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
(202) 252-7763
Brittany.Keil@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys
Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530