**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD** | : | ███████████████ |
| **MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT DOCUMENTS**
██████████████

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves *in limine* for the admission of certain foreign records. For the reasons below, each of the government's proposed exhibits is authentic and admissible under one or more exceptions to the rule against hearsay, or is otherwise not hearsay.

**FACTS**

This is a prosecution arising from the bombing of Pan American World Airways Flight 103 ("Pan Am Flight 103") in 1988. The plane exploded over Lockerbie, Scotland, shortly after takeoff from London Heathrow Airport en route to John F. Kennedy International Airport in New York City, killing 270 people. The government anticipates proving that the defendant engineered a bomb that was packed inside a suitcase and placed into checked baggage at Luqa Airport in Malta for a flight to Frankfurt, Germany. The suitcase traveled from Malta to Frankfurt, then from Frankfurt to London, where it was loaded onto Pan Am Flight 103, bound for New York.

The government will show that the defendant's role was as the person who brought the suitcase containing the bomb to Luqa Airport, and handed that suitcase to two individuals, Abdel Basset Ali Al-Megrahi, also known as Abdelbaset Ali Mohmed, also known as Abdelbaset Ali Al

Megrahi, also known as Ahmed Khalifa Abdusamad (hereinafter Al-Megrahi) and Lamen Khalifa Fhimah, also known as Al Amin Khaalifa Fhimah (hereinafter Fhimah).  The evidence will also show that this plan had been put in motion months prior to the bombing on December 21, 1988, and the government will show that the defendant conspired with others, both named and unnamed, to perpetrate the bombing of Pan Am Flight 103.

The government learned recently of the existence of documents that had been recovered

██████████████████████████████████████████████████. ██████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████  ███████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████  █████████████████████████████████████████████

██████████████████████████  █████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████

**ARGUMENT**

These documents are admissible as their authenticity can be established.  As explained below, these items should be admitted as non-hearsay statements of co-conspirators, or under exceptions to the hearsay rule.

## I.    The Documents are Authentic

Federal Rule of Evidence 901 addresses the requirements of authentication:

**(a) In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

**(b) Examples.** The following are examples only — not a complete list — of evidence that satisfies the requirement:

>**(1) *Testimony of a Witness with Knowledge.*** Testimony that an item is what it is claimed to be.

>**(2) *Nonexpert Opinion About Handwriting.*** A nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation.

>**(3) *Comparison by an Expert Witness or the Trier of Fact.*** A comparison with an authenticated specimen by an expert witness or the trier of fact.

>**(4) *Distinctive Characteristics and the Like.*** The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

>**(5) *Opinion About a Voice.*** An opinion identifying a person's voice — whether heard firsthand or through mechanical or electronic transmission or recording — based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

>**(6) *Evidence About a Telephone Conversation.*** For a telephone conversation, evidence that a call was made to the number assigned at the time to:

>>**(A)** a particular person, if circumstances, including self-identification, show that the person answering was the one called; or

>>**(B)** a particular business, if the call was made to a business and the call related to business reasonably transacted over the telephone.

**(7) *Evidence About Public Records*.** Evidence that:

> **(A)** a document was recorded or filed in a public office as authorized by law; or

> **(B)** a purported public record or statement is from the office where items of this kind are kept.

**(8) *Evidence About Ancient Documents or Data Compilations*.** For a document or data compilation, evidence that it:

> **(A)** is in a condition that creates no suspicion about its authenticity;

> **(B)** was in a place where, if authentic, it would likely be; and

> **(C)** is at least 20 years old when offered.

**(9) *Evidence About a Process or System*.** Evidence describing a process or system and showing that it produces an accurate result.

**(10) *Methods Provided by a Statute or Rule*.** Any method of authentication or identification allowed by a federal statute or a rule prescribed by the Supreme Court.

As noted in the Rule, this is a non-exhaustive list the Court may consider. "In the first instance, it is a low bar to clear to authenticate evidence." *United States v. Lamm*, 5 F.4th 942, 947 (8th Cir 2021). "Conclusive proof of authenticity is not required, and once the threshold requirement is met, any question as to whether the evidence is authentic is for the jury." *United States v. Perez*, 61 F.4th 623, 626 (8th Cir. 2023) (citation modified, quoting *United States v. Browne*, 65 V.I. 425, 438, 834 F.3d 403, 413 (3d Cir. 2016); *Lamm*, 5 F.4th at 947). This low bar can be cleared with circumstantial evidence. *Lamm*, 5 F.4th at 946-47. "The party authenticating the exhibit need only prove a rational basis for that party's claim that the document is what it is asserted to be." *Id.* at 946.

The rule is clear that "testimony that an item is what it is claimed to be … satisfies the requirement." Fed. R. Evid. 901(b)(1). "[E]vidence that satisfies the requirement" also includes "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the

4

item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4).  The government's evidence will establish that the documents are admissible under various bases of authentication.

The requirement of authentication does not require the proponent "to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (internal quotation marks and citation  omitted). The ultimate resolution of the evidence's authenticity is reserved for the jury. *United States v. Hassanshahi*, 195 F. Supp 3d 35 (D.D.C. 2016); *See United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006). The court "must admit the evidence if sufficient proof has been introduced to support a finding that the fact does exist," and "in spite of any issues the opponent has raised about flaws in the authentication" (which only "go to the weight of the evidence instead of its admissibility"). *See Jack B. Weinstein, et al.,  5 Weinstein's Federal Evidence*, § 901.02[3] (2d ed. 2025).

### A.  Bases of Authentication

In this case, the documents will be authenticated in various ways, which are outlined below.

1.  Testimony of a Witness with Knowledge

Testimony from ▉ will outline how ▉ obtained these documents and how ▉ is able to assess their authenticity. The anticipated testimony of ▉ is as follows:

After 2011, when Libya was in a state of chaos, ▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇    ▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Documents 1, 2, 3, 4, 5, 7, 8 and 10 were obtained ████████████████████. ███

████████████████████████████████████ ███

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████

Documents 11, 12, 13 and 14 were found ████████████████

████████████████████████████████████

████████████████████████████████████. 

Documents 6 and 9 were given to ████████████████████

████████████████████████████████████

████████████████████

Additionally, ███ will testify that ███ is firmly of the opinion that the documents are all authentic. *See* Fed. R. Evid. 701 (permitting opinion testimony by lay witnesses). ███

████████████████████████████████ ███

████████████████████████████████████

███ ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████.

2. Handwriting and signature comparison.

Rule 901 provides that an item can be shown authentic by "[a] comparison with an authenticated specimen by an expert witness." Fed. R. Evid. 901(b)(3). Here, the authenticity of certain documents will be further established by handwriting and signature comparisons.

The government has engaged handwriting and signature analysts as expert witnesses, and they are currently in the process of preparing reports on their findings. Based on preliminary results, the government expects that signatures on the documents ostensibly belonging to the defendant, Megrahi, and Fhimah, will be consistent with known exemplars of those individuals' signatures. Even apart from this expert analysis, the Court and jury will be able to see for themselves that the signatures are similar. For example, on █████████, below left, the signature appears similar to the signature on Al-Megrahi's IRO card for December 9, 1988, below right:



Additionally, the signature on ███████, below left, looks similar to the known signature of the defendant on the statement he gave in 2012, below right.



3.  Distinctive characteristics.

Third, the appearance, contents, substance, internal patterns, and other distinctive characteristics of the items, taken together with all the circumstances, indicate these items are authentic. *See* Fed. R. Evid. 901(b)(4). Although the documents in the government's possession are scanned copies, not originals, they nonetheless show clearly that the originals are in a condition consistent what would be expected of documents from the late 1980s.  Indeed, witnesses who have observed the originals will testify that they believed them to be authentic based on the apparent age of the paper, the kind of staple that had been used, which was showing signs of rust, and the kind of ink that had been used on the documents, which were handwritten. Moreover, the substance of the documents is also indicative of their authenticity.

4.  The documents qualify as ancient documents

The evidence will show that the documents qualify as ancient documents authenticated pursuant to Fed. R. Evid. 901(b)(8).  All of the documents are dated in 1988 or 1989, which is over the 20-year requirement.  The testimony discussed above will establish that these items were found in places that they would likely be, s███████████████████████████████████████ ███████████████████████████. Finally, these items are in a condition that is consistent with their being ancient documents recovered under the circumstances ███ will testify to.

**B.  Description of Documents**

Below is a summary of the contents of each document and the bases upon which a jury could reasonably find it to be authentic.  All of the documents, with their English translations, are attached as ███████████

9

1. Document 1

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████ ████ █████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████

2. Document 2

███████████████████████████████████████████████████

█████████████████████████████ ███████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

██ ████████████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████

██ ████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
███████████████████████████████



3. Document 3

4. Document 4



5. Document 5

12

6. Document 6

12

7. Document 8

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

8. Document 11

████████████████████████████████████████████████

████████████    ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

9. Document 12

███████ ██ █ █ ██████ ███████ ████ ███ ████ █ ███ ███

█████████████████████████████████    ███████████████

████████████    █████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

10. Document 14

11.

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████.

## II.    The Documents are Not Excludable as Hearsay.

The rule against hearsay generally forbids the admission of out-of-court statements that are offered to provide the truth of the matter being asserted. *See* Fed. R. Evid. 801, 802. That rule outlines statements that are specifically not hearsay and specifically, a statement that is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy is not hearsay.  Fed. R. Evid. 801(d)(2).

To fall under the umbrella of 801(d)(2)(E), the foundation for admission of the statement is that:

1.    There was a conspiracy;

2.    Its members included the declarant and the party against whom the statement is offered; and

3.    The statement was made during the course of and in furtherance of the conspiracy.

*United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990) In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself. See Fed. R. Evid. 801(d)(2); see also *Bourjaily v. United States*, 483 U.S. 171, 176-81, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987).

In this case, evidence shows that the defendant, along with Megrahi, Fhimah, and others, were involved in a conspiracy to commit terrorist acts against the United States of America and its citizens, including by placing and causing to be placed a destructive device and explosive substance upon Pan Am Flight 103 and by maliciously damaging and destroying by means of an

explosive device Pan Am Flight 103.  This conspiracy is proven by the various travel documents and witness testimony that will presented at trial, as well as the defendant's own statements.

The documents were made in the course and furtherance of the conspiracy.  Therefore, in this case, these documents are squarely admissible under 801(d)(2)(E).

### III.    Other applicable exceptions.

### A.  The Ancient Documents Rule.

All of the above documents are admissible under the Ancient Documents exception, Rule 803(16), which applies to any "statement in a document that was prepared before January 1, 1998, and whose authenticity is established." In turn, Rule 901(b)(8) provides that a document can be proven authentic by "evidence that it: (A) is in a condition that creates no suspicion about its authenticity; (B) was in a place where, if authentic, it would likely be; and (C) is at least 20 years old when offered."  The records at issue in this motion were collected in a place where they would be expected to be, show no signs of inauthenticity, and are more than 20 years old at this point.

### B.  The Residual Exception.

The residual exception provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804," as long as:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

While the ███████████ do not have certifications, the Court should admit the records under the residual clause.  Comparing them to the existing documents that were collected in the original

investigation provides more circumstantial guarantees of trustworthiness than the cases cited above that allowed admission of documents under the residual exception.

Courts have often admitted uncertified business records under the residual exception. For example, in *United States v. Turner*, the Third Circuit affirmed the admission of foreign bank records that were found in a co-conspirator's resident and office, where the district court had found the records trustworthy based on "(1) the appearance of the records, including their internal consistency; (2) the contents of the records; and (3) the circumstances surrounding the discovery of the records." 718 F.3d 226, 234-35 (3d Cir. 2013). In *United States v. Nivica*, the First Circuit affirmed the admission of foreign bank records where, despite the absence of any custodian or other qualified witness to lay foundation, the district court had found that the documents were authentic, reliable, and trustworthy. 887 F.2d 1110, 1126 (1st Cir. 1989). In *Karme v. Comm'r*, the Ninth Circuit affirmed the tax court's admission of uncertified foreign bank records in the absence of a custodian where the records, which were provided by a foreign government pursuant to a treaty, had "circumstantial guarantees of trustworthiness." 673 F.2d 1062, 1065 (9th Cir. 1982). And in *United States v. Wilson*, the Fifth Circuit affirmed the admission of uncertified foreign bank records — despite apparent gaps, clerical errors, and a convoluted chain of custody — because the government offered some corroboration of their authenticity and because bank documents are inherently reliable. 249 F.3d 366, 375 (5th Cir. 2001) (abrogated on other grounds by *Whitfield v. United States*, 543 U.S. 209 (2005)).

IV.    **The Confrontation Clause does not bar admission of the records.**

The records that the government seeks to introduce here are not testimonial—indeed, because they are co-conspirator statements, the Confrontation Clause poses no impediment to their use as evidence at trial. *See Crawford v. Washington*, 541 U.S. 36, 56 (2004) (co-conspirator

17

statements, by their nature, are not testimonial); *see also United States v. Shyne*, 617 F.3d 103, 108

(2nd Cir 2010).  Because the records are not testimonial, there are no *Crawford* concerns.


## CONCLUSION

For the foregoing reasons, the Court should admit the documents and records ██████████

████████ if the government lays the proper foundations.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Brittany Keil*_____
        BRITTANY KEIL (D.C. Bar No. 500054)
        CONOR MULROE (NY Bar No. 5289640)
        ERIK M. KENERSON (OH Bar No. 82960)
        Assistant United States Attorneys
        JEROME J. TERESINSKI (PA Bar No. 66235)
        Special Assistant United States Attorney
        National Security Section
        United States Attorney's Office
        601 D Street NW
        Washington, D.C. 20530
        (202) 252-7763
        Brittany.Keil@usdoj.gov

        KATHLEEN CAMPBELL (MD Bar No. 9812170031)
        JENNIFER BURKE (MD Bar No. 9706250061)
        Trial Attorneys
        Counter Terrorism Section
        National Security Division
        950 Pennsylvania Avenue NW
        Washington, D.C. 20530