**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD** | : | |
| **MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

## MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PROFFERED METALLURGY EXPERT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to limit the proposed expert testimony of Elizabeth Buc at trial. The Court should preclude Dr. Buc's testimony because her expert notice is inadequate as to multiple of the topics on which the defense has provided notice. Additionally, Dr. Buc's testimony is irrelevant unless the government calls a metallurgy expert in its case-in-chief, which it does not presently expect to do.

## BACKGROUND

As the Court knows, part of the government's evidence for the Libyan government's involvement in the bombing of Pan Am Flight 103 consists of an apparent match between (a) a fragment of printed circuit board (PCB) recovered from the crash site, known as PT/35(b), and (b) control samples provided by the Swiss company "MEBO" of PCBs used in a timer that the Libyan government commissioned and purchased from MEBO prior to the bombing.

During post-trial litigation following the Scottish conviction of alleged co-conspirator Abdelbasset Ali Al-Megrahi, Megrahi's defense team raised arguments related to the metallic composition of PT-35. Broadly speaking, Megrahi contended that the "tracking" on PT-35(b) was coated in pure tin, while the tracking on at least one control sample was coated in a tin/lead alloy.

Megrahi also relied upon a statement from an employee the manufacturer of the circuit boards, stating that the company never used pure tin in its products. These facts, if credited, could cast doubt on the conclusion that PT-35 originated from the same batch of PCBs as the control samples.

In the government's original assessment, any metallurgy-based argument by the defense in the instant case would most properly be raised during the defense case through affirmative expert testimony, to which the government would have an opportunity to respond with a rebuttal expert. ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████. At that point, it would be too late to notice a metallurgy expert to respond, so the government deemed it prudent to provide notice of its metallurgy expert, Dr. Yu-Lung Chiu, ███████████████████████ ████████████████████████████ Chiu's testimony would establish that two control-sample PCBs supplied by MEBO contained a layer of pure tin on their tracking, which would support the conclusion that PT/35(b) did in fact come from the same batch of PCBs at the control samples.

███████████████████████████████████████████████████ ████████████████████ The government does not foresee that metallurgy could otherwise be put at issue during cross-examination of any other government witnesses, nor has the defense noticed any affirmative expert opinions about the metallic composition of any of the evidence. The government accordingly does not presently perceive any need to call Dr. Chiu in its case-in-chief. In an effort to promote the efficiency of the parties' and the Court's preparations for trial, the government has explained the above to the defense and asked whether the parties could agree that

metallurgy would not be at issue during the trial, which would obviate the need for any further litigation on these experts.

On May 6, 2026, the defense provided supplemental expert notice regarding a proffered expert in metallurgy. *See* Ex. 1, 2 (defense expert notice and supplemental notice, respectively). The proffered expert is Dr. Elizabeth Buc, who runs a forensic engineering and consulting firm. Dr. Buc's notice is styled as a response to Dr. Chiu. *See* Ex. 2 at 2 ("Dr. Buc may offer opinions responding to the testimony and analyses of the government's metallurgical expert." . . . "With regard to the methodology employed by the government's expert, Dr. Buc is specifically expected to testify to the following"). Three of the six opinions noticed by the defense do not in fact state what Dr. Buc's opinion will be. A fourth is based in part on a faulty premise, and a fifth is neither well defined nor supported by adequate bases. The notice is thus deficient on five of the six opinions listed. For the reasons above and below, responsive expert testimony on metallurgy is irrelevant at this juncture. Moreover, even if it were relevant, it should be severely limited due to insufficient notice.

## ARGUMENT

### I.      Dr. Buc's Testimony is Not Relevant Unless Metallurgy is Raised in the Government's Case-in-Chief.

The proposed testimony noticed in Dr. Buc's expert disclosure will only become relevant if Dr. Chiu or some other metallurgist testifies for the government in its case-in-chief. As noted above, the government has no plans to put metallurgy at issue in its case-in-chief, ████████ ████████████████████████████████████████████████████ Federal Rule of Evidence 401 defines evidence as relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *See* Fed. R. Evid. 401. Relevant evidence is admissible unless otherwise provided by

the U.S. Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the U.S. Supreme Court. *See* Fed. R. Evid. 402. "Irrelevant evidence is not admissible." *Id*. Any piece of evidence that fails this test under Rule 401 is not relevant under Federal Rule of Evidence 402. *See*, e.g., *United States v. Doe*, 903 F.2d 16, 20 (D.C. Cir. 1990) (citing 22 C. Wright & K. Graham, Federal Practice & Procedure § 5202 at 237 (1978)).  And expert testimony must have more than bare relevance; it must be "more likely than not" to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid 703(a).

Dr. Buc's expert notice specifically states that it is in response to the government's metallurgical expert. Ex. 2. at 2.  Her opinions, as proffered by the defense, only relate to the work performed by Drs. Wright and Chiu.  They do not reflect any analysis conducted by Dr. Buc, nor do they include any proffered interpretation of the raw data generated during any metallurgical testing generated by the Scottish authorities or experts working with the Scottish authorities.  Dr. Buc's notice, then, is only relevant to the extent it purports to call into question to the work of Drs. Wright and Chiu.  If the government calls neither Dr. Wright nor Dr. Chiu, Dr. Buc's notice provides no relevant information to aid the factfinder about what did or did not happen as it relates to the investigation in this case, nor does it contain any relevant information that is admissible in the absence of Dr. Wright's or Dr. Chiu's testimony.  Because the government does not expect to call either Dr. Wright or Dr. Chiu in its case-in-chief, Dr. Buc's proposed testimony is irrelevant.[1]

---

[1] The government understands that the Court cannot make a final determination as to whether a defense expert's testimony would be relevant until after the close of the government's case in chief.  We submit that the Court should treat Dr. Buc's testimony similarly to Rebecca Murray's – it should ask for a proffer at the close of the government's case.  If, as the government expects, the testing of Drs. Wright and Chiu were not fairly raised in the government's case, the Court should at that point not permit Dr. Buc's testimony.

**II.    The Defendant's Notice is Insufficient**

Even if responsive metallurgy testimony does become relevant during the defense case, Federal Rule of Criminal Procedure 16(b)(1)(C) mandates that an expert disclosure by the defense include, among other things, "a *complete statement* of *all* opinions that the defendant will elicit from the witness in the defendant's case-in-chief" (emphasis added). This requirement was added as part of the 2022 amendment to the Rule, imposing a higher standard than the previous version that required only "a written summary of any [expert] testimony that the defendant intends to use." Fed. R. Crim. P. 16(b)(1)(C) (2021 ver.). The express purpose of the amendment was to "ensure that parties receive adequate information about the content of the witness's testimony and potential impeachment." Fed. R. Crim. Pro. 16, Notes to 2022 Amendments. Although this statement need not be "verbatim," it must be "complete."

Even under the old, less-rigorous standard, a mere "list of testimony topics" was insufficient notice under Rule 16. *United States v. Rogers*, 2006 WL 5249745,  at *3 (D.D.C. 2006) (string citations omitted).  "Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure requires the defendant to provide, at the government's request, 'a written summary of any testimony the defendant intends to use' as evidence at trial under Rules 702, 703 or 705 of the Federal Rules of Evidence.'" *United States v. Naegele*, 468 F. Supp. 2d 175, 176 (D.D.C. 2007) (quoting Fed. R. Crim. P. 16(b)(1)(C)); *see also United States v. Rogers*, 2006 WL 5249745, at *2 (D.D.C. July 17, 2006).

A mere "list of testimony topics" is insufficient notice under Rule 16.  *Rogers*, 2006 WL 5249745 at *3 (string citations omitted); *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001) ("The Rule requires a summary of the expected testimony, not a list of topics"); *see also United States v. Beavers*, 756 F.3d 1044, 1054 (7th Cir. 2014) (noting that expert notice was "insufficient[ ]" as it provided only a "general list of examination topics" and one sentence, conclusory in nature,

about one opinion the witness would offer at trial); *United States v. Concessi*, 38 F. App'x 866, 868 (4th Cir. 2002) (upholding district court decision to exclude expert testimony where notice was provided late and "failed to describe the witnesses['] opinions or provide the bases and reasons for the witnesses' opinions"); *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (affirming that expert notices were "plainly inadequate" because they "merely listed general and in some cases extremely broad topics on which the experts might opine"), *abrogated on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018).

Proper expert notice must "describe the witness's opinions" and describe "the bases and reasons for these opinions." *Naegele*, 468 F. Supp. 2d at 176 (quoting Fed. R. Crim. P. 16(b)(1)(C)). The primary purpose of Rules 16(b)(1)(B) and (C) is to prevent unfair surprise at trial and to permit each party "to prepare rebuttal reports and to prepare for cross-examination at trial." *Id.* "Rule 16(b)(1)(C) is 'intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" *Id.* (quoting Fed. R. Crim. P. 16 advisory committee's note). A defendant is "not entitled to surprise the government with ill-defined expert testimony." *Beavers*, 756 F.3d at 1054.

"A failure to comply with these Rules may result in the exclusion of the proffered evidence." *Naegele,* 468 F. Supp. 2d at 176 (citing Fed. R. Crim. P. 16(d); *United States v. Barile*, 286 F.3d 749, 758–59 (4th Cir. 2002); *United States v. Day*, 433 F. Supp. 2d 54, 57 (D.D.C. 2006)).

Even if responsive metallurgy testimony becomes relevant, the defense notice is deficient on five of the six opinions provided, as they do not sufficiently describe Dr. Buc's opinions or the bases therefor. For example, in Opinion 1, "Independence of Analysis and Confirmation Bias," the notice states that "Dr. Buc may offer opinions regarding whether the analyses performed by

the government's expert was conducted in a manner consistent with" expectations regarding independence and confirmation bias. Ex. 2 at 2. The notice does not state what that opinion is, however.

In the second opinion noticed, the defense notes that Dr. Buc may "further testify that additional analytical options exist that were not employed" in testing done by Scottish authorities, but it does not state whether she would expect those methods to produce different or even clearer results. *See id.*

In the third listed opinion, the defense states, "Dr. Buc may offer opinions regarding the extent to which the government's exclusive reliance on non-destructive techniques limited the quality and completeness of the resulting data and the reliability of the conclusions drawn therefrom." *Id.* at 2-3. The notice does not state what those opinions are. How specifically does she believe the data were limited? To what extent does she believe they were limited? For example, if her opinion is that other techniques could have improved data collection by .01 percent, that would be a markedly different opinion than if she believes that other techniques could have improved data collection by 75 percent.

Dr. Buc's fourth listed opinion rests at least in part on a faulty premise: It states, "focused ion beam removal of surface material was performed on the subject board but not on the comparison boards." *Id.* at 3. However, as a report of the testing Dr. Chiu participated in makes clear, ion beam milling was carried out on both PT/35(b) and control samples. *See* HS-USAO-139077 at 14-20 (describing ion beam milling conducted on DP/347(a) and DP/344 (control samples), as well as PT/35(b)).

Dr. Buc's fifth opinion does not adequately describe what that opinion is or the bases for it. Although it alleges that the government's analysis did not contain a sufficient number of data

points, the notice does not identify, for example, whether there is a scientifically accepted benchmark for the number of data points necessary to render an opinion. *See* Ex. 2 at 3. It does not state whether the number of data points used by Drs. Chiu and Wright deprived their conclusions of any scientific weight. Instead, the notice states that a "more robust and reliable analysis" would have included a greater number of data points, but without a statement of how any additional data points would have made the results more reliable or how the data points used fell short of some bench mark, the opinion does not provide adequate notice of Dr. Buc's opinion or the bases therefor.

In sum, as to listed opinions one through three, the defense has failed to describe the witness's opinions. The defense has also failed to provide any of the bases and reasons for the witness's opinions. "[E]xperts' opinions are worthless without data and reasons." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) (quoting *Kenosha v. Heublein,* 895 F.2d 418, 420 (7th Cir. 1990)). There is no indication what, if anything, Dr. Buc would say about the processes and procedures followed by the forensic scientists in this case as it pertains to topics one through three, other than the fact that she would offer opinions. Accordingly, the defense's expert notice is deficient as to topics one through three.

As noted above, the opinion in topic four of Dr. Buc's notice is premised on the notion that focused ion beam milling was not carried out on control samples, but focused ion beam milling was in fact carried out on control samples. The defense bears the burden of demonstrating to the Court that Dr. Buc's opinions are based on sufficient facts or data, and that the opinion reflects a reliable application of the expert's principles and methods to the facts of the case. *See* Fed. R. Evid. 702(b) & (d). It cannot do so with respect to an opinion based on an unsupported premise.

The opinion expressed in topic five of Dr. Buc's notice is unsupported by any stated bases. It relates the commonsense notion that more data can supply a more reliable picture in general, but it does not list or cite to any scientific benchmark for number of data points that the government's expert failed to meet.  It does not even allege that their conclusions are unreliable for any alleged insufficiency in the number of data points.  The most it alleges is that their work may have been *more* robust and reliable if they had used additional data points, but it falls short of alleging that the work they did carry out was scientifically deficient or unreliable.  To the extent it does so allege, the notice does not state on what basis Dr. Buc came to that conclusion.

## CONCLUSION

For the foregoing reasons, the Court should GRANT the government's motion to exclude or limit the testimony of Elizabeth Buc.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   */s/ Erik M. Kenerson*
ERIK M. KENERSON (OH Bar No. 82960)
BRITTANY KEIL (D.C. Bar No. 500054)
CONOR MULROE (NY Bar No. 5289640)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
National Security Section
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
(202) 252-7763
Brittany.Keil@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys
Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530