**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD** | : | |
| **MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S PRE-HEARING BRIEF**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully notices this filing of a brief in advance of the hearings scheduled for May 27 and 28, 2026. The purpose of this pleading is to identify certain issues that are ripe for argument at the hearings and clarify aspects of the government's position on those issues (including by identifying apparent misstatements of law in the defense's last-filed briefs).

**A. Expert Testimony of Bruce Cutler.**

The government maintains that Dr. Cutler's opinions are irrelevant to the extent they relate to interview conditions or techniques that are not present in the factual record of this case. *See generally* ECF 397 at 8-10. Although the defense recently supplemented their expert notice, the Court has correctly noted that "Dr. Cutler's supplemental notice again fails to explain why [the identified] factors and techniques are relevant to the facts of this case." Minute Order of 5/25/26. Should the defense fail at the hearing to articulate "how the anticipated evidence at trial will support these proposed areas of Dr. Cutler's expert testimony," *id.*, the Court should conclude that those areas of the testimony are irrelevant and should decline to conduct a *Daubert* hearing on those areas. If the defense believes that making the necessary showing would require revealing defense strategy, the government would not object to the Court receiving an *ex parte* proffer.

**B. Rule 403.**

Since the last hearing, the parties have briefed the application of Fed. R. Evid. 403 to the evidence of other conduct by the defendant including his participation in the bombing of the La Belle Discotheque. *See* ECF 445 (government's brief); ECF 457 (defense response). In preparation for argument on these issues, the government wishes to identify a point of disagreement with the defense's statement of the law.

The defense cites *Old Chief v. United States* as establishing that, "if there is no or minimal competing evidence on a particular point—such as when the defense does not contest a particular point, then an item's probative value is discounted." ECF 457 at 7 (citing 519 U.S. 172, 183 (1997)). *Old Chief* does not appear to support this proposition.

*Old Chief* held that a court weighing probative value may consider whether alternative, equally-probative but less-prejudicial evidence is available to the offering party. *Id.* at 182-83. There, the defendant's offer to stipulate to his prior felony conviction was available as a substitute for the "full record of a prior judgment" that the government sought to introduce. *Id.* at 174. *Old Chief* therefore contemplates a comparison between different forms of proof available to prove the proponent's point,[1] not a comparison between the proponent's evidence and the "competing evidence" (or lack thereof) offered by the opponent to refute it.

---

[1] The defense accuses the government of "invert[ing]" and "omit[ting]" this part of *Old Chief.* ECF 457 at 5, 6. But the comparative analysis discussed in *Old Chief* is exactly what the government provided in its Rule 403 brief, proffering what evidence (if any) was available for each of the seven non-propensity purposes and explaining why each available alternative had substantially less probative value than what the government is seeking to offer. *See* ECF 445 at 8-13 (citing *Old Chief*, 519 U.S. at 182-83). The defense has not meaningfully responded to these arguments, instead treating them as a concession that, for some purposes, some alternative evidence exists. But the question is not whether *any* alternative evidence exists, but whether the alternative evidence has "substantially the same or greater probative value." *Old Chief*, 519 U.S. at 183. We have explained why the alternative evidence is of far less probative value, and the defense has argued nothing in response.

In an effort to understand the defense's position, the government contacted the defense to inquire what part of *Old Chief* was the basis of the proposition above. In response, the defense stated that the phrases "if there is no or minimal competing evidence on a particular point. . . then an item's probative value is discounted" come "directly from the language in Old Chief." However, these phrases do not appear anywhere in the opinion, nor do any permutations of them, nor does anything that could reasonably be interpreted as making the same substantive point. *Old Chief* is not about counter-evidence; it is about affirmative concessions (of which the defense has made none here).

The defense's characterization of *Old Chief* is therefore unsupported by the case and inconsistent with the law of the D.C. Circuit: that a defendant's "choice not to put at issue an element of the charged offense is irrelevant to the admissibility of evidence offered to prove that element." *United States v. McCarson*, 527 F.3d 170, 173 (D.C. Cir. 2008) (citing *United States v. Crowder*, 141 F.3d 1202, 1205–09 (D.C. Cir. 1998) (*en banc*); *Old Chief*, 519 U.S. at 186–89). *See also, generally*, ECF 445 at 13-16 (collecting cases).

### C. Motion to Exclude Parts of the Defendant's Statement.

Also ripe for argument is the defendant's pending motion to exclude parts of his statement under the Federal Rules of Evidence, ECF 231. Among other things, the parties disagree about whether, when a statement of a party opponent is offered under Fed. R. Evid. 801(d)(2)(A), the party-opponent must have personal knowledge of the matters in the statement. *See* ECF 231 at 3 (defense's original motion, arguing for exclusion of parts of defendant's statement as "speculative in nature and not based on personal knowledge"); ECF 245-1 at 4, 28-29 (government's original response brief, citing cases holding that Rule 602's personal-knowledge requirement does not apply to statements of party opponents).

3

The defense's latest filing on this issue discusses details of *Gross v. Burggraff Const. Co.* and *Jordan v. Binns* but still fails to acknowledge that the cases address completely different questions, with *Gross* being irrelevant to the issues before the Court. *See* ECF 458 (discussing *Gross*, 53 F.3d 1531 (10th Cir. 1995); and *Jordan*, 712 F.3d 1123 (7th Cir. 2013)).

The cases under discussion involve the basic scenario where a **witness** testifies in court that a **party-opponent** made an out-of-court statement about a **matter**. The shading indicates whose personal knowledge is at issue in each case:

|  | *Witness* | *Party-opponent* | *Matter* |
|---|---|---|---|
| This case | Jamal | Defendant | Portions of statement that defense alleges are "speculative" |
| *Jordan* | Various witnesses | Ted Jordan | Betty Jordan's fault for accident |
| *Gross* | Gross | Anderson | Disparaging comment |

According to *Jordan* and the cases cited therein, the ***party-opponent*** whose statement is offered does not need to have personal knowledge of the matter. *Gross* addressed a different question not at issue here: whether the testifying ***witness*** must have personal knowledge that the party-opponent actually made the statement in question. So when the defense asserts that *Gross* "held the opposite" of *Jordan*, they are mistaken.[2] And their characterization of *Gross* as holding that "Rule 801(d)(2)(A) does not eliminate Rule 602's requirement of personal knowledge" is accurate only if one adds the qualifier "…on the part of the testifying witness." That holding is irrelevant to the disputed issues here.

---

[2] The defense's confusion may be explained by their description of the Seventh Circuit as discussing the personal-knowledge requirement "in the context of analyzing the admissibility of… statements from… other witnesses about Ms. [Betty] Jordan's claim of responsibility." ECF 458 at 3. That description elides a critical fact: the witnesses' testimony was about *Mr. Ted Jordan*'s statements as party-opponent, which statements themselves involved Ms. Betty Jordan's claim of responsibility. The "personal knowledge" at issue was Ted's, not the testifying witnesses'.

### D. Foreign Records and Related Hearsay Issues.

The defense has filed a brief (ECF 459) responding to the government's latest submissions regarding foreign records (ECF 326, ECF 450). The government is prepared to argue the relevant issues at this week's hearings. One of those issues is the distinction between a statement being offered for the truth of a matter asserted therein, versus being offered to prove the operative effect of the statement. This legal question bears on multiple motions pending before the Court. *See* ECF 245-1 at 17-29 (government arguing that commands from superiors, described in defendant's statement, are not offered for truth of matters asserted); ECF 419-1 at 8-10 (government arguing that contractual agreement, offer letters, and check, all offered during foreign deposition, are not for truth of matters asserted); ECF 445 at 32-34 (government arguing that visa applications from Libya to Germany are not offered for truth of matters asserted).

On this issue, the defense's latest pleading contains citations to three cases that require correction or clarification:

First, the defense describes the court in *United States v. Biaou* as "agreeing" that "loan applications contained hearsay: 'the information provided by the applicant' and the 'assertion that the applicant did in fact provide that information.'" ECF 459 at 2 (quoting *United States v. Biaou*, 24-CR-323 (CRC), 2026 WL 221768, at *12 (D.D.C. Jan. 28, 2026)).  But the quoted phrases from *Biaou* are just the court's description of the defense's argument. The opinion then immediately continues: "This argument falls short," followed by an explanation why neither layer of purported hearsay was excludable.[3]

---

[3] Judge Cooper in *Biaou* did not rely on a not-for-truth argument, but neither did he reject it. The government there alleged that the defendant's statements in the loan applications were lies, so they clearly were not being offered for the truth of what they asserted.

Second, the defense cites *United States v. McIntyre* for the proposition that an application for cellular service in a person's name is hearsay if offered to establish that someone with that name used the cellular service. ECF 459 at 2 (citing *United States v. McIntyre*, 997 F.2d 687, 704–05 (10th Cir. 1993)). But as the Tenth Circuit noted in *McIntyre*, its approach to that question is not universally shared. *See McIntyre*, 997 F.2d at 699 n.9 (citing, with *contra* signal, *United States v. Lieberman*, 637 F.2d 95, 101 (2d Cir. 1980)).[4] Other Circuits hold that, when documents with operative effect are offered to prove their own existence rather than to prove the truth of any factual assertions therein, the documents are not hearsay. *See, e.g.*, *Lieberman*, 637 F.2d at 101 (holding that hotel registration card was "admissible as non-hearsay, simply to show that someone calling himself [the name on the card] registered in the hotel").

The D.C. Circuit is in the latter category, having squarely held that "legally operative documents with a meaning independent of the truth of the words they display" are "not hearsay." *United States v. Davis*, 596 F.3d 852, 856 (D.C. Cir. 2010). Statements with operative effect are "verbal acts" whose significance "lies solely in the fact that [they were] made." *Id.* at 857 (quoting Fed. R. Evid. 801(c), advisory committee note). Because their purpose is to prompt some action, not assert some objective fact, "[i]t would make no sense to ask whether [they are] true." *Id.* In articulating this straightforward application of the definition of hearsay, the D.C. Circuit cited to the Supreme Court's holding in *Williams v. United States* that checks are not factual assertions that

---

[4] Indeed, even a prior decision of the Tenth Circuit appears to conflict with *McIntyre*. That court in *United States v. Shepherd* held that "[a]n order or instruction is, by its nature, neither true nor false and thus cannot be offered for its truth." 739 F.2d 510, 514 (10th Cir. 1984). A cell phone application like the one in *McIntyre* is, in essence, an "instruction" to open an account. It bears noting that *McIntyre* considered the hearsay status of the cellular *application* along with cellular *call records* without distinguishing between them. It is true that the call records, if offered to prove the calls happened, would be hearsay because that is an assertion of fact. But the application is different, a difference for which the *McIntyre* court did not account.

can be proven true or false.[5] *Id.* (citing 458 U.S. 279, 284-85 (1982)). *McIntyre*'s treatment of the cellular service application – which was a verbal act with the operative effect of causing a cellular account to be opened – is therefore inconsistent with the D.C. Circuit's approach to the "verbal acts" doctrine.

Against that background, the defense's remaining citation, to *Ali v. Rubio*, is inapposite. *See* ECF 459 at 2 (citing No. 1:22-CV-02786, 2025 WL 901287, at *3 (D.D.C. Jan. 24, 2025)). The question in *Ali* was not whether a passport application itself is hearsay, but whether a factual assertion embedded in a passport application (the applicant's description of time periods spent in the United States) was admissible to prove the truth of the matter being asserted (the length of time the applicant had actually spent in the United States, which was the ultimate fact at issue in the citizenship-status litigation). Offered for that purpose, the statement in the passport application is straightforwardly hearsay.[6] But here, the relevance of the visa applications is not in any embedded factual assertions (of which there are none), but "solely in the fact that [they were] made." *Davis*, 596 F.3d at 857.

---

[5] The defense has previously, and without elaboration, called it "a stretch" to "import[]" *Williams*'s reasoning to the hearsay context. ECF 417-2 at 13. Plainly the D.C. Circuit thinks differently.

[6] It bears noting that in *Ali* Judge Nichols found the statements in the passport application to nonetheless be admissible both under the ancient documents exception and under the residual exception, applying analysis that is similarly applicable here. *See* 2025 WL 901287 at *3.

**CONCLUSION**

The government looks forward to discussing the issues above during the hearings on May 27 and 28, 2026.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Conor Mulroe*
      CONOR MULROE (NY Bar No. 5289640)
      ERIK M. KENERSON (OH Bar No. 82960)
      BRITTANY KEIL (D.C. Bar No. 500054)
      Assistant United States Attorneys
      JEROME J. TERESINSKI (PA Bar No. 66235)
      Special Assistant United States Attorney
      601 D Street NW, Washington, D.C. 20530
      (202) 740-4595 // Conor.Mulroe@usdoj.gov

      KATHLEEN CAMPBELL (MD Bar No. 9812170031)
      JENNIFER BURKE (MD Bar No. 9706250061)
      Trial Attorneys, Counter Terrorism Section
      National Security Division
      950 Pennsylvania Avenue NW, Washington, D.C. 20530