UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:22-cr-392 (DLF) |
| | ) | |
| ABU AGILA MOHAMMAD | ) | |
| MAS'UD KHEIR AL-MARIMI, | ) | |
| Defendant. | ) | |

### MR. AL-MARIMI'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL PLEADING REGARDING CHALLENGE TO MR. AL-MARIMI'S ALLEGED CONFESSION UNDER THE FEDERAL RULES OF EVIDENCE

The Court has determined that even if the Court construed the challenged statements as commands, because "the third-party declarants conveyed a significant amount of factual information that is intertwined with the commands", the Court cannot "conclude that the 'messages' in the third-party statements that the government seeks to introduce here were 'merely incidental and not intentional.'" 6/15/26 Minute Order. Yet, in its responsive supplement, the government argues that the statements identified in its table as numbers 1-3, 7-11, 14, 17-19, and 21-22 were not intended as assertions and thus are not hearsay "statements" under Fed. R. Evid. 801(a). Mr. Al-Marimi herein responds[1].

---

[1] The government's supplement in ECF No. 491 argues that most of the challenged hearsay statements are admissible as co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E). *See* ECF No. 491 at 6-13 (indicating government's position that all but the statements identified in the table as numbers 14-15 are admissible pursuant to Rule 801(d)(2)(E)). Pursuant to the Court's June 15, 2026, Minute Order, the defense will clarify its position and provide supporting authority by noon on June 22, 2026, for its argument that the government cannot use these statements to prove the existence of a conspiracy in order to admit the statements themselves as co-conspirator statements under Rule 801(d)(2)(E).

## I.    The government is incorrect that the challenged statements do not contain assertive intent.

The test for whether a statement counts as an assertion—whether written, oral, or nonverbal—is whether "the person intended it as an assertion". Fed. R. Evid. 801(a); *United States v. Long*, 905 F.2d 1572, 1579 n.12 (D.C. Cir. 1990); *United States v. Fuller*, 761 F. Supp. 3d 125, 131 (D.D.C. 2025). The message of an assertion can be explicit or implied. *Long*, 905 F.2d at 1579 n.12 ("We are persuaded that the note's intent analysis applies with equal force to messages implied from words and to messages implied from conduct."). The context of the challenged statement can make clear whether the speaker "intended it as an assertion" under Rule 801(a). *Fuller*, 761 F. Supp. 3d at 133.

The government has cited three cases to support a general statement "that questions or directives generally do not assert any fact". ECF No. 491 at 2. First, in *Lexington Ins. Co v. W. Pa. Hosp.*, 423 F.3d 318, 320, 328 (3d Cir. 2005), the court examined the admissibility of a "notation" that read "Date of RPT 12-31-01". There was no evidence in the record that clarified what that notation meant. *Id.* at 328. Finding the document in which the notation was found "(barely) admissible", the court observed "that questions and inquiries are ***generally*** not hearsay because the declarant does not have the requisite assertive intent". *Id.* at 330 (emphasis added). Because the purpose of the notation was an inquiry about "whether the data processing department can find information on a claim based on certain criteria", the court inferred that the declarant of the notation was not intending to make an

2

assertion. *Id.* at 330-31. Further, the court found that even if the notation was an assertion, it was made by a party opponent and therefore admissible under Fed. R. Evid. 801(d)(2)(D). *Id.* at 330 n.7.

Second, in *United States v. Murphy*, 193 F.3d 1, 3 (1st Cir. 1999), the court evaluated a series of challenged statements in a police extortion scheme. Two police detectives had run a scheme to get warrants based on false information, executed the warrants, and kept drug money seized as a result. *Id.* A third detective drafted warrant applications at the direction of one of the other two detectives. *Id.* The defense argued on appeal that the third detective's testimony about the instructions he received from the other detective was only admissible as co-conspirator statements under Rule 801(d)(2)(E), thus triggering a need for a procedural hearing under Third Circuit precedent. *Id.* at 5. The court, citing no cases or other form of law, observed "For the most part, the out-of-court statements in question were simply directions (e.g., to make false statements in the warrant applications) and not statements of fact at all." *Id.*

Third, in *United States v. Thomas*, 451 F.3d 543, 547 (8th Cir. 2006), Mr. Thomas was convicted, in part, of bank fraud by selling his house to his girlfriend at an inflated value. At trial, the government admitted notes from a bank log indicating that the girlfriend had called several times asking about getting copies of documents relating to her loan, asking whether anyone else had contacted the bank about her loan, and asking the bank to notify her if they did get outside inquiries about her

3

loan. *Id.* In finding these questions admissible, the Eighth Circuit noted that questions and commands "***generally*** are not intended as assertions, and therefore cannot constitute hearsay". *Id.* at 548 (emphasis added).

These cases indicate that simple questions or commands may not qualify as intended assertions, but, save for *Murphy*—which lacks authoritative support for its holding on this point, they leave room for a different outcome in more complex statements. *See, e.g.*, George E. Dix et al., *McCormick on Evidence*, § 246 (Kenneth S. Broun et al. eds., 9th ed. Feb. 2025 Update) (noting that courts sometimes categorically exclude from the hearsay definition questions and commands but that "[m]ore appropriately nuanced opinions find such statements hearsay despite their form if the circumstances and/or wording demonstrate an intent to assert") (citing, in addition to state authorities holding the same, *United States v. Pulliam*, 973 F.3d 775, 783-84 (7th Cir. 2020) (finding question "what gun" hearsay and observing, "the intent behind a remark dictates whether it is a statement or a question for hearsay purposes. And the context surrounding the remark may help us ascertain the declarant's intent") (internal citation omitted); *United States v. Torres*, 794 F.3d 1053, 1059 (9th Cir. 2015) ("We hold that while some questions may constitute non-hearsay, where the declarant intends the question to communicate an implied assertion and the proponent offers it for this intended message, the question falls within the definition of hearsay."); and *United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005)).

Here, likewise, the Court has determined that even if the Court construes the challenged statements as commands, because of the significant detail enmeshed with any commands, a broad, general rule that commands are not intended as assertions is not warranted given the facts in this case. 6/15/26 Minute Order. Thus, the defense understands the Court's direction to the parties to focus on the proffered non-truth arguments for each alleged statement.

As a general comment regarding the interaction between Rules 801(a) and 801(c), the defense agrees it is important to identify what is being asserted in a particular statement to discern whether the statement is being offered for the truth of the matter asserted. *See* ECF No. 491 at 3-6. But, again, the context matters. For example, in the statement Abdullah Sanussi allegedly makes at ECF No. 232-2 at 6, Sanussi allegedly asks Mr. Al-Marimi "if the booby-trapped suitcases that he personally had previously requested be prepared by the Technical Operations Section were finished and ready". The assertion at issue is that Sanussi personally requested the Technical Operations Section—where Mr. Al-Marimi is alleged to have worked— to prepare booby-trapped suitcases. The government cannot credibly argue that they seek admission of this statement for any other reason than that Sanussi personally asked the Technical Operations Section to prepare booby-trapped suitcases. Thus, the statement constitutes hearsay. *See Torres*, 794 F.3d at 1059.

Likewise, regarding the alleged meeting with Qaddafi, the assertions at issue are 1) that Qaddafi allegedly expressed gratitude for a "successful operation"

5

referring to the Pan Am explosion and 2) that Qaddafi allegedly praised and thanked Mr. Al-Marimi, Mr. Sanussi, and Mr. Megrahi for "performing a great patriotic act against the Americans and said that the operation had been carried out with precision". ECF No. 232-2 at 9. The government has clearly indicated that it intends to portray Qaddafi as the hub of an alleged conspiracy to commit terrorist acts against Americans in this case. *See, e.g.*, ECF No. 387 at 6 ("Here, the government alleges that the defendant was led to act by orders from his ESO superiors as part of Qaddafi's quest for vengeance against the United States."). The government needs these alleged "job well done" statements for their truth to support that allegation.

Further, the government's citation to *United States v. Jordan*, 810 F.2d 262, 264 (1987), omits a critical part of that holding. The government points to *Jordan* for the proposition that statements offered to put a defendant's words and actions into context are not hearsay. ECF No. 491 at 5. But, what the government left out was the *Jordan* court's finding that there was no "danger that the jury would misuse Washington's statements for their truth". 810 F.2d at 264. That is not the case here. Given the government's stated intentions, for example, of arguing that Qaddafi had a quest for vengeance against the United States, there is great risk that a jury would assess and apply the alleged "job well done" statements for their truth.

Thus, the Court should sustain the defense's hearsay objections to the alleged confession.

6

II.    **The Court should reject the government's attempts[2] to argue that it is not intending to use the challenged statements for the truth of the matter asserted.**

a.  Challenged statements regarding the La Belle discotheque bombing:

|  | Statement | Government's Rule 801(c) Argument | Reason(s) Why the Government Is Using Challenged Statements for Truth of the Matter Asserted |
|---|---|---|---|
| 1. | [Saʿīd Rāshid] asked me to travel to East Germany and meet the Security Officer at the Libyan Embassy, a man named ʿAlī Ibrāhīm Kashlāf | --Non-assertive order/direction<br>--Kashlaf's position is not offered for truth: government will not argue that Kashlaf was in fact the security officer at the embassy based on this statement<br>--Places defendant's actions in context | In support of its Rule 404(b) motion regarding the La Belle incident, the government specifically identified this alleged statement as evidence that Mr. Al-Marimi is guilty of the La Belle bombing and described such evidence as routinely admitted to "explain the background, formation, and development of the illegal relationship". ECF No. 147 at 4, 9-10. The matter asserted is that Rashid—a senior Qaddafi advisor—told Mr. Al-Marimi to travel to East Germany and ultimately meet with the man the government alleges ordered Mr. Al-Marimi to make the bomb for the La Belle explosion. The probative value of this statement depends on its asserted truthfulness. |

---

[2] Because the Court's June 17, 2026, Minute Order directed the defense to respond to why the government is using the challenged statements for the truth of the matter asserted, the defense does not herein respond to the "other provisions admissible under" column in ECF No. 491 at 6-13. In so doing, Mr. Al-Marimi is not waiving his objections to the government's proffered alternatives.

| | | | |
|---|---|---|---|
| 2. | [Kashlāf] told me that I was required to prepare an "explosive package" to be used against an American target. | --Non-assertive order/direction<br>--Shows defendant's knowledge that his bomb was to be used against American target<br>--Establishes why the defendant made a bomb | Again, in support of its Rule 404(b) motion regarding the La Belle incident, the government specifically identified this alleged statement as evidence that Mr. Al-Marimi is guilty of the La Belle bombing and described such evidence as routinely admitted to "explain the background, formation, and development of the illegal relationship". ECF No. 147 at 4, 9-10. The matter asserted is that Kashlaf—a security officer at the Libyan embassy—told Mr. Al-Marimi to make a bomb that would be used against an American target. The probative value—the mens rea and the motive as the government points out—of this statement depends on its asserted truthfulness. |
| 3. | and I knew since Saʿīd Rāshid had informed me that I was to go to East Germany on a work assignment | --Defendant is using Rashid's order to explain his own state of mind – it is required for context and is admissible under Rule 801(d)(2)(A)<br>--Non-assertive order/direction from Rashid to go to E. Germany | The matter asserted is that Rashid—the senior Qaddafi advisor alleged to have directed the La Belle bombing—allegedly told Mr. Al-Marimi to travel to East Germany on a work assignment. Because the government alleges that Mr. Al-Marimi worked in the Libyan security apparatus and that Qaddafi used the Libyan security apparatus to carry out "vengeance" against the United States, *see* ECF No. 387 at 6, the probative value of this statement—the mens rea and the conspiracy—depends on its truthfulness that Rashid |

8

| | | | |
|---|---|---|---|
| | | | ordered Mr. Al-Marimi to travel for a work assignment. |
| 4. | On the evening of the same day a short while after sunset, [Kashlāf] informed me he had handed the matter of interest to the person who would carry out the task | --This demonstrates the defendant's knowledge that his bomb had been handed off and would be used.<br>--Does not matter if it is true that Kashlaf in fact handed it off to someone else; will not argue that Kashlaf in fact handed it off.<br>--It goes to the effect on the defendant and his state of mind, in that he believed his bomb to have been used. | The matter asserted is that Kashlaf allegedly told Mr. Al-Marimi that the bomb that he allegedly built that same day was given to the person who would ultimately carry out the bombing. Because the government is not alleging that Mr. Al-Marimi planted a bomb in the discotheque, the probative value of this statement—the mens rea and the conspiracy—necessarily depends on the truth of the coordination of others involved to carry out the task and Mr. Al-Marimi's knowledge of that coordination. |
| 5. | German broadcasters started broadcasting news of it on television, and ʿAlī Kashlāf nodded his head, and I understood that this was the target for which the explosive charge had been prepared [xxx]. He didn't explicitly say this because ʿAbdulḥakīm was with us. The explosion was in a | --Kashlaf nodding in context of the broadcast demonstrates why the defendant believes it was his bomb that was used in a night club frequented by U.S. servicemembers | Again, in support of its Rule 404(b) motion regarding the La Belle incident, the government specifically identified these alleged statements as evidence that Mr. Al-Marimi is guilty of the La Belle bombing and described such evidence as routinely admitted to "explain the background, formation, and development of the illegal relationship". ECF No. 147 at 4, 9-10. The matter asserted is that when Germany |

9

| | | | |
|---|---|---|---|
| | night-club frequented by individuals and officers of the American army | --This knowledge demonstrates that, at the time of Lockerbie, he was aware that his bombs would be used against U.S. civilians; It does not matter if news report is true and we will not argue as much to jury. It is enough that the defendant heard the exchange, and believed his bomb was used in that way. --"He didn't explicitly say this because . . ." is the defendant's interpretation and admissible under Rule 801(d)(2)(A) | broadcasted news of the explosion, Kashlaf—the security officer at the Libyan embassy who allegedly ordered Mr. Al-Marimi to make the bomb—allegedly indicated through an intentional nod, in response to the substance of the broadcast, to Mr. Al-Marimi that this was how the bomb had been used and that it had been used against Americans. The probative value of this statement—the mens rea and the conspiracy— depends on its asserted truthfulness. |
| 6. | Q. What was the result of the explosion in the club?  A. What I recall is that four American officers were killed and a number were wounded. | --Defendant does not identify what the "statement" is he objects to here. This is defendant's statement of his own recollection, admissible under Rule 801(d)(2)(A). It | The matter asserted is that Mr. Al-Marimi is repeating an out-of-court statement that he allegedly recalls learning from an unknown source that American officers were killed and a number were wounded. The probative value of the information—the mens rea and knowledge of the target of the alleged conspiracy—depends on its asserted truthfulness. |

10

| | | |
|---|---|---|
| | is his burden to make a prima facie hearsay showing. <br>--Nothing offered for its truth because the number is incorrect: two American officers were killed, not four. <br>--Demonstrates defendant's knowledge that his bomb was used to kill U.S. servicemembers, which in turn demonstrates that at the time of Lockerbie, he knew his bombs were directed at U.S. targets. | |

b. Challenged statements regarding the bombing of Pan Am flight 103:

| | Statement | Government's Rule 801(c) Argument | Reason(s) Why the Government Is Using Challenged Statements for Truth of the Matter Asserted |
|---|---|---|---|
| 7. | I was informed of this [summoning to Sanūsī's office] by the Head of the Section, Muftāḥ ʿAbdulkarīm | --This statement only shows who directed the defendant to respond to Senussi's office. <br>--A direction to | The matter asserted is that Senussi summoned Mr. Al-Marimi, was higher ranked in the alleged organization and able to do so, and that Muftah Abdulkarim was another alleged coconspirator and the Head of the Section. The government's own |

| | | | |
|---|---|---|---|
| | | report to an office is a directive that does not assert any fact. --Defendant's memory of who ordered him to Senussi's office is the defendant's own memory and admissible under Rule 801(d)(2)(A). | argument asserts that the statement reports who directed Mr. Al-Marimi, not a simple direction. The probative value of this statement depends on its asserted truthfulness. |
| 8. | that [Sanūsī] personally had previously requested be prepared by the Technical Operations Section | --Non-assertive as it is part of a question --Utterance was meant to orient the defendant to the suitcases he was talking about and puts Senussi's order to travel to Malta with a suitcase in context. --Does not matter whether Senussi in fact previously requested suitcases prepared by Technical Operations Section. What matters is that | The matter asserted is that Sanussi, a higher ranked member of the organization, had previously requested the preparation of booby-trapped suitcases by the section. The form of the supposed question is ambiguous; Sanussi may have said, for example, that (1) he previously requested such suitcases be prepared, then (2) asked whether Mr. Al-Marimi knew about them. The probative value of this statement depends on its asserted truthfulness; if Sanussi had not in fact previously requested such suitcases be prepared, then Mr. Al-Marimi could not have retrieved any such suitcase as the government seeks to prove later. |

12

| | | | |
|---|---|---|---|
| | | he told defendant that he had so the defendant could retrieve the proper suitcase. | |
| 9. | and [Sanūsī] ordered me to take one of these cases and travel with it to Malta. | --Non-assertive order/directive<br>--Establishes why the defendant went to Malta and does not assert a separately existing fact<br>--Establishes defendant's knowledge of contours of operation: he was ordered to go to Malta with a booby-trapped suitcase. | The matter asserted is that Sanussi, a senior Qaddafi advisor, allegedly ordered Mr. Al-Marimi to take one of the booby-trapped suitcases and travel to Malta in the context of the alleged bombing operation. Because the government alleges that Mr. Al-Marimi worked in the Libyan security apparatus and that Qaddafi used the Libyan security apparatus to harm the United States, the probative value of this statement—the mens rea and the conspiracy—depends on its truthfulness that there was such an operation and that Sanussi ordered Mr. Al-Marimi to travel with the suitcase. |
| 10. | And, according to what ʿAbdullah Al-Sanūsī told me, ʿAbdulbāṣit Al-Magraḥī and Al-ʾAmīn Fḥīma [xxx] would meet me in Malta | --Non-assertive order/directive<br>--Statement to orient defendant to what would be coming next.<br>--Does not assert a separately existing fact | The matter asserted is that Sanussi allegedly told Mr. Al-Marimi that Megrahi and Fhimah, other participants in the alleged scheme, would meet him in Malta as part of the alleged operation. There is no directive; the statement asserts a fact about an operational expectation that participants would be in a particular location for a particular reason. The |

13

| | | | probative value of this statement depends on its asserted truthfulness. |
|---|---|---|---|
| 11. | where I was asked to get up the following morning at seven o'clock in order to set the timer of the explosion inside the suitcase in such a way that the explosion would occur exactly eleven hours later. He handed me the sum of 500 American dollars to buy some clothes to put in the suitcase instead of my own clothes, which I did | --Non-assertive order/directive that does not assert any separately existing fact --Shows why the defendant took actions he did --Context for defendant's statement in the next sentence that he "carried out what had been asked." | The matter asserted is that Megrahi and/or Fhimah, alleged participants in the operation, explained to Mr. Al-Marimi that his role was to set the timer to a particular time and purchase clothes to fill the suitcase using funds they provided to him. Again, it is not clear whether the underlying assertions simply reported the steps of the operation followed by an order ("do that"); either way, the probative value of this statement—that Mr. Al-Marimi carried out these tasks—depends on its asserted truthfulness. |
| 12. | and one day after that I heard that there was an American airliner that had exploded | --Puts the next sentence, in which he states that he knew for sure that this was the plane in which the suitcase he prepared and delivered to Malta had been used, in context. --Establishes that defendant connected, in his own mind, the news of an American | The matter asserted is that an American plane had exploded and that the explosion had been reported on two days afterwards. The probative value of this statement—the mens rea and knowledge of the target of the alleged conspiracy—depends on its asserted truthfulness. |

| | | | |
|---|---|---|---|
| | | airliner having exploded with the bomb he had built- shows the defendant's guilty state of mind | |
| 13. | but I did know that Americans would be targeted with this explosive device. | --Defendant does not identify what the "statement" is that he objects to here. It is his burden to make a prima facie hearsay showing. --This is defendant's statement reflecting his own knowledge, which is admissible under Rule 801(d)(2)(A). | The matter asserted by the alleged statement identifying the target of the alleged operation is that Americans were the target of the explosive device. The context of the surrounding statements and the grammar used indicate that Mr. Al-Marimi heard this information from others, meaning it is hearsay; he knew (from others) that the target was Americans. The probative value of this statement—mens rea— depends on its asserted truthfulness. |
| 14. | Q. What was the destination of the plane that was blown up?<br><br>A. I got to know of that after the explosion -- that the plane was from Malta to Frankfurt to America. | --First part is non-assertive question, so it is not hearsay --Government does not offer what the unidentified speaker said for the truth. We will prove through the route of the | The matter asserted is that Mr. Al-Marimi learned after the explosion that the suitcase's route was Malta to Frankfurt to a plane bound for America. Because the government is not alleging that Mr. Al-Marimi placed the suitcase on the plane, the probative value of this statement—the mens rea and the conspiracy—necessarily depends on truth of the |

15

| | | bomb through other evidence and will not argue that this unsourced statement should be considered for its truth. --The government is offering this as evidence of the defendant's guilty state of mind: the defendant made the connection in his own mind between the bomb that he built and handed to Fhimah and reports that he heard afterward that the plane had gone from Malta to Frankfurt to America. | coordination of others involved to carry out the task and Mr. Al-Marimi's knowledge of that coordination. And despite the government's disclaimer, the statement's alignment with the government's case theory will be impossible to ignore and depends on the statement's truthfulness. |
| 15. | and that was never mentioned on the news afterwards. There were about 260 passengers on board as well as the crew. | --The lack of mention of something on the news is not hearsay: there is no statement, but instead evidence that | The matter asserted is that Mr. Al-Marimi heard after the fact that there were about 260 passengers and crew aboard the plane. The probative value of this statement—the mens rea and the target of the alleged conspiracy being civilians— |

|  |  | the defendant did not hear a statement; he has personal knowledge of what he did and did not hear, which is admissible under Rule 801(d)(2)(A). --The defendant's recitation of the approximate number of victims is relevant to his guilty knowledge: both the fact that he watched such reports and that he connected those reports to the bomb he built. --The government does not care whether the news report was accurate and will not argue that the jury should believe that there were 260 people on the | depends on its asserted truthfulness. Knowledge that something happened is premised on that something having happened. |

17

| | | | |
|---|---|---|---|
| | | plane because the defendant heard that on the news; the relevance is in demonstrating the defendant's knowledge that his bomb was used to kill those approximately 260 people. | |
| 16. | Q. Where did each of ʿAbdulbāṣit Al-Magraḥī and Al-ʾAmīn Fḥīma work?<br><br>A. ʿAbdulbāṣit Al-Magraḥī worked in the External Security Organisation and was responsible for the security of planes and Al-ʾAmīn Fḥīma, what I knew was that he worked for the Libyan Airlines Company. | --Defendant has not carried his burden of identifying an out-of-court statement by someone other than him. Defendant had personal knowledge of Megrahi from before the Lockerbie operation and from Fhimah during it. See ECF 232-2 at 9.<br>--Accordingly, the defendant had personal knowledge of their roles and positions and his statement relating that knowledge to Jamal is | The matter asserted is that Megrahi worked for the security apparatus and was responsible for the security of planes, and that Fhimah worked for the airline. The context and phrasing of the surrounding statements indicate that Mr. Al-Marimi allegedly heard the information from other sources, possibly Megrahi and Fhimah, meaning it is hearsay; the jobs described are not ones that would be obvious from a glance, like a judge or soldier. The probative value of the statements turns on the men in fact holding those positions, which enabled them to fulfill their alleged roles in the alleged conspiracy. |

18

| | | | |
|---|---|---|---|
| | | admissible under Rule 801(d)(2)(A). --The question posed by Jamal is not hearsay. | |
| 17. | and [Sanūsī] thanked us for the success of the operation. | --An expression of gratitude is not an assertion of fact. --The government does not offer the "success" of the operation for its truth. It does not matter whether Senussi believed the operation to be successful. | The matter asserted is that Sanussi thanked them for the success of the operation, and that the operation in fact achieved its objectives. The probative value of the statement depends on the truthfulness of the operation's objectives and Sanussi's knowledge of them via his alleged role. |
| 18. | [Al-Magraḥī] contacted my office at work, he asked them to inform me to prepare to travel to Benghazi the following day. | --This is an order or directive --Does not assert any fact --Shows why the defendant went to Benghazi --Shows ongoing connection between co-conspirators | The matter asserted is that Megrahi contacted Mr. Al-Marimi's office at the security apparatus and informed them to tell Mr. Al-Marimi about his travel to Benghazi the next day, where they allegedly met with higher ranking persons. The probative value of the statement—the existence and extent of the alleged conspiracy and the relationship between the alleged coconspirators— depends on the truthfulness. Megrahi's alleged statement is only probative of why Mr. |

19

| | | | |
|---|---|---|---|
| | | | Al-Marimi allegedly travelled if the statement is true. |
| 19. | and after greeting us, [Qaddafi] praised and thanked us for performing a great patriotic act against the Americans and said that the operation had been carried out with precision. | --Expression of gratitude is not an assertion of fact. --The government is not seeking to prove whether the operation was carried out with precision, so it is not offering statement for its truth. | The matter asserted is that Qaddafi expressed his gratitude to Mr. Al-Marimi, Megrahi, and Sanussi for a successful alleged attack against Americans. The government has indicated that it intends to portray Qaddafi as the hub of an alleged conspiracy to commit terrorist acts against Americans in this case. *See, e.g.*, ECF No. 387 at 6 ("Here, the government alleges that the defendant was led to act by orders from his ESO superiors as part of Qaddafi's quest for vengeance against the United States."). The government needs these alleged "job well done" statements for their truth to support that allegation. |
| 20. | We left about a quarter of an hour later after ʿAbdullah Al-Sanūsī had been tasked with looking after us and granting all our requests. | --The government is not looking to prove that the Libyan government in fact granted his request. --Goes to show that the defendant believed he was being taken care of, regardless of whether that is true. | The matter asserted is that after being thanked and congratulated by Qaddafi, Sanussi was tasked with taking care of Megrahi and Mr. Al-Marimi and granting their requests. The probative value of this statement depends on the statement's truth—that Sanussi was told to take care of Mr. Al-Marimi and Megrahi, implying gratitude and benefits for their alleged participation in the Pan Am explosion. |

| | | | |
|---|---|---|---|
| 21. | Also, since 1988 I had been verbally banned by ʿAbdullah Al-Sanūsī from travelling abroad. | --Non-assertive directive or order<br>--Does not assert a fact. | The matter asserted is that since 1988, Sanussi had verbally banned Mr. Al-Marimi from travelling abroad. The probative value of the statement necessarily depends on the statement's truth. |
| 22. | so ʿAbdullah Al-Sanūsī asked to see me and permanently withdrew my passport in order to avoid (the risk of) my falling into the hands of a foreign power. | --Senussi withdrawing passport is an action, not a statement or assertion. Defendant has firsthand knowledge of that action.<br>--Shows defendant's guilty knowledge and guilty state of mind – he would have no reason to believe he would fall into hands of a foreign power unless he had committed a crime for which a foreign power would want him. | The government's argument makes the matter asserted clear. This statement's probative value depends on Sanussi's decision to allegedly withdraw Mr. Al-Marimi's passport—i.e., the statement's truth. If true, then, as the government argues, this statement indicates that Mr. Al-Marimi was guilty of the criminal activities alleged in the broader statement. |

## CONCLUSION

The government's arguments under Rule 801(c) generally prove Mr. Al-Marimi's point: the reason that the government seeks admission of the challenged

statements is to argue to the truth of the statements' contents. For the foregoing reasons and those discussed in ECF No. 231, the Court should exclude the challenged portions of the alleged confession.

Respectfully submitted
**ABU AGILA MOHAMMAD
MAS'UD KHEIR AL-MARIMI**

By: _____/s/_____
Whitney E.C. Minter
Va. Bar # 47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorneys for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia    22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
laura_koenig@fd.org (email)
