**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cr-392 (DLF)** |
| | ) | |
| **ABU AGILA MOHAMMAD** | ) | |
| **MAS'UD KHEIR AL-MARIMI,** | ) | |
| **Defendant.** | ) | |

## MR. AL-MARIMI'S MOTION *IN LIMINE* REGARDING FORMER TESTIMONY BY UNAVAILABLE WITNESSES

Abu Agila Mohammad Mas'ud Kheir Al-Marimi respectfully submits this motion *in limine* for a ruling on the admissibility under Federal Rule of Evidence 804 of former testimony elicited at the Camp Zeist trial from declarants who are not available as witnesses in this proceeding. Assuming Mr. Al-Marimi can show that a particular witness who testified at the prior trial is not available as a witness under Rule 804(a), Mr. Al-Marimi submits that the witness's former testimony meets the requirements to be admissible against the government under Rule 804(b)(1). Further, the rule applies only one way in this case: because only the government had an opportunity and a similar motive to develop the witnesses' testimony at the prior trial, Mr. Al-Marimi may offer the statements against the government, but the government may not offer the statements as former testimony against Mr. Al-Marimi.

Mr. Al-Marimi does not intend to introduce former testimony in bulk or present his case through transcripts alone. Where the defense seeks to admit former testimony, it will be narrowly tailored and relevant, and not unfairly prejudicial.

**BACKGROUND**

The government alleges that Mr. Al-Marimi participated in the destruction of Pan Am Flight 103, which tragically exploded over the town of Lockerbie, Scotland. Two alleged coconspirators, Abdelbaset al-Megrahi and Lamin Khalifah Fhimah, were tried before a specially convened Scottish court in May 2000 at Camp Zeist, a United States Air Force base in the Netherlands. Ultimately, Fhimah was acquitted and Megrahi was convicted.

The investigation of Pan Am 103 involved a high degree of international cooperation between the United States and Scotland. *See, e.g.*, HS-USAO-119979 ("The documents had been requested by Mr. Brian Murtagh, Department of Justice, Washington DC, who was undertaking precognition on behalf of Crown Office, Edinburgh."); HS-USAO-00130005 (describing FBI and DOJ as "assisting the Scottish Crown Office (prosecution service) in pre-trial preparations for the February, 2000 trial of two Libyan defendants charged with the bombing"); USAO-00022151 (noting a U.S. prosecutor precognosed "on behalf of the crown"). Megrahi and Fhimah were tried under Scots law, but the United States was represented at the Camp Zeist trial by Brian Murtagh and Dana Biehl, two U.S. Department of Justice attorneys who were seated alongside the Scottish advocates. *See, e.g.*, USAO-000000575 (Camp Zeist trial transcript referring to "Brian Murtagh, who for some considerable weeks has been sitting in Your Lordships' court"); Sensitive-USAO-000123660 (noting Mr. Murtagh and Mr. Biehl sat with the Scottish advocates despite objections from the defense in the context of accusations that the two were coaching witnesses).

Numerous witnesses testified at the Camp Zeist trial, and their testimony is recorded in transcripts that the government has produced to Mr. Al-Marimi in discovery.

## LEGAL STANDARD

Rule 804(b)(1) provides that testimony is not excluded by the rule against hearsay when the declarant is unavailable and the testimony

> **(A)** was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>
> **(B)** is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1). Rule 804(a) lists criteria to determine whether a declarant is unavailable for purposes of the rule. The D.C. Circuit has observed that this hearsay exception "is firmly rooted in our jurisprudence." *Untied States v. Miller*, 904 F.2d 65, 67 (D.C. Cir. 1990) (citing *United States v. Kelly*, 892 F.2d 255, 262 (3d Cir. 1989)).

"To determine whether a party had the requisite opportunity and similar motive to develop given testimony, courts apply a 'fact-specific inquiry.'" *United States v. Ausby*, 436 F. Supp. 3d 134, 146 (D.D.C. 2019) (quoting *United States v. Carson*, 455 F.3d 336, 379 (D.C. Cir. 2006)).

"In evaluating 'opportunity,' the proper focus is whether the party's ability to examine the testimony in question was impeded or otherwise limited at the prior proceeding." *Id.* at 148. "The issue is not whether [] counsel might have advanced an additional line of questioning had the trial occurred later in time, but rather whether the trial court at the time prevented" counsel from examining the witnesses. *Id.* at 149 (collecting cases). The word "opportunity" focuses the inquiry on what could have

been asked, not what was asked. *See id.*; Fed. R. Evid. 804, Advisory Committee Notes (finding it appropriate to require a party "to accept his own prior conduct of cross-examination or decision not to cross-examine").

Regarding a party's motive to develop testimony at a prior proceeding, the key question is whether the party's "position in the second proceeding would differ from the first." *Miller*, 904 F.2d at 68 & n.3 (noting "the government had the same motive and opportunity to question [the witness] when it brought him before the grand jury as it does at trial" because the "testimony was to be directed to the same issue—the guilt or innocence" of the accused). Thus, the D.C. Circuit refused to admit grand jury testimony when the purpose of the grand jury proceeding was not to "prove any side of any issue" but rather "to develop the facts to determine if an indictment is warranted." *Carson*, 455 F.3d at 379–80; *but see Miller*, 904 F.2d at 68 n.3 (examining grand jury testimony at issue and finding identical motive). But when "both proceedings are trials and the same matter is seriously disputed at both trials, it will normally be the case that the side opposing [or endorsing] the version of a witness at the first trial had a motive to develop that witness's testimony similar to the motive at the second trial." *Ausby*, 346 F. Supp. 3d at 150 (quoting *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993)). So, the requirement is best understood "in terms of the position and ultimate interests of the parties, not . . . in terms of competing trial strategies." *Id.*; *see United States v. McFall*, 558 F.3d 951, 963 (9th Cir. 2009) (focusing on the "fundamental objective" of the questioning).

## ARGUMENT

The Court should rule that the former testimony of witnesses at the Camp Zeist trial is admissible against the government under Rule 804(b)(1). As an initial matter, the Court need not determine at this juncture whether any witness in unavailable under Rule 804(a). That issue must be adjudicated on a witness-by-witness basis, and the defense will make the necessary showing of unavailability at the appropriate time at trial (or as otherwise ordered by the Court). Additionally, the rule's requirement that the testimony in question be given at "a trial, hearing, or lawful deposition" plainly is met when the testimony in question was elicited at a prior criminal trial for the same event.[1] *See United States v. Brooks*, 966 F.2d 1500, 1505 (D.C. Cir. 1992) (admitting witness's testimony at earlier trial in same case); *United States v. Bowman*, 609 F.2d 12, 19 (D.C. Cir. 1979) (same).

Two questions remain, both of which the Court should answer in the affirmative. First, did the government have an opportunity, through the substantial and direct involvement of Department of Justice representatives in the earlier prosecution, to develop the testimony of witnesses who testified at the Camp Zeist trial? Second, did the government have a similar motive to do so, given the nature of the two prosecutions?

The government had an opportunity to examine witnesses at the Camp Zeist

---

[1] Nothing in the rule or its notes and commentary indicates that testimony elicited at a foreign trial would not qualify. *See* McCormick on Evidence § 305 (9th ed.), *available on* Westlaw (stating "the character of the tribunal and form of the proceedings are immaterial" when the other requirements are satisfied); *see, e.g.*, *United States v. Salim*, 855 F.2d 944, 954 (2d Cir. 1988) (admitting transcript of deposition taken in France under French law). The defense has not located authority to the contrary.

proceedings because the examination was not impeded or otherwise limited at that trial. The prosecution was permitted to question witnesses extensively, including on topics that might have been deemed impermissible under the Federal Rules of Evidence. And the examination of witnesses proceeded as it would have in the United States, with direct examination followed by cross-examination, contemporaneous objections, and oversight by a judicial authority. Such an approach "substantially jibes with our practice" and satisfies the "opportunity" requirement. *United States v. McKeeve*, 131 F.3d 1, 9–10 (1st Cir. 1997) (admitting foreign deposition testimony under Rule 804 even though it "did not comport in all respects with American practice" because the British proceeding involved the administration of an oath, unlimited direct and cross-examination by all parties, the ability to lodge objections, judicial oversight, and the preparation of a transcript); *see also Salim*, 855 F.2d at 954 (holding "that despite the obstacles imposed by the French court and despite the need to conduct the deposition in a disadvantageous manner, counsel was accorded what was essentially a full and fair opportunity to cross-examine the witness to ensure that she was telling the truth").

For sure, it was a Scottish trial, and the Scottish advocates elicited the testimony. But exact identity between the party against whom the former testimony is being offered and the party involved in the prior proceeding is not necessary. In *Carson*, the D.C. Circuit analyzed whether the defense could submit a state grand jury transcript of a witness found to be unavailable at trial. 455 F.3d at 376–77. The court first determined that the grand jury proceeding was investigative in nature. *Id.*

at 378–80. Because the prosecutors' motive at trial was adjudicative in nature, the prosecutors' motives to develop evidence in the two proceedings were not "similar" as Rule 804(b)(1) requires. *Id.* at 378.

Alternatively, the court reasoned that "Maryland and the United States are separate sovereigns and, in the absence of evidence that the United States controlled the Maryland investigation, they should not be treated as the same party for purposes of Rule 804(b)(1)." *Id.* But it noted that even "separate sovereigns may be treated as one for purposes of the Rule 804(b)(1) exception" when there is sufficient evidence of control.[2] Here, two U.S. prosecutors from the Department of Justice sat with the Scottish advocates at the Camp Zeist trial; this was far more than simply "providing information" to the Scottish authorities. *See Carson*, 455 F.3d at 381. Mr. Murtagh had been instrumental in conducting grand jury proceedings and crafting the indictment, and there can be little doubt that he and Mr. Biehl substantially contributed to the prosecution's strategy and its approach to the examination of witnesses.

Finally, the government's motive and fundamental objective at each

[2] This alternative reasoning in *Carson* arguably is *dicta*, as the court affirmed the district court's conclusion that the motive at the prior grand jury proceeding differed from a criminal trial. 455 F.3d at 379. The court also did not root its reasoning in the rule itself but rather borrowed a standard from the Double Jeopardy context that was designed to serve different ends than determining whether a party had an opportunity to develop testimony. *See United States v. Rashed*, 234 F.3d 1280, 1282–83 (D.C. Cir. 2000) (adhering to Supreme Court's "sham" test for claim preclusion but endorsing an alternative "privity or control test" that asks whether "the nonparty has the actual measure of control or opportunity to control that might reasonably be expected between two formal coparties"). Mr. Al-Marimi maintains that the substantial cooperation between the United States and Scotland during and before the Camp Zeist trial satisfy any standard, but the Court should not feel bound to determine whether the Camp Zeist trial was, for example, a "sham and a cover for federal prosecution." *Carson*, 455 F.3d at 381 (quoting *Rashed*, 234 F.3d at 1282).

proceeding was the same: proving the existence of a Libyan conspiracy to destroy Pan Am 103 and the guilt of the alleged conspirators. Indeed, with respect to the alleged involvement of Megrahi, Fhimah, and others and the essential factual allegations relating to the transportation of the explosive device, the government's allegations against Mr. Al-Marimi are substantively identical to the case presented at the Camp Zeist trial. The government's endorsement or opposition to any witness's testimony is unchanged, satisfying the rule. *See Ausby*, 436 F. Supp. 3d at 150–51.

## CONCLUSION

A straightforward application of Rule 804(b)(1) permits Mr. Al-Marimi to offer against the government the former testimony of unavailable witnesses who testified at the Camp Zeist trial. The Court should issue an order confirming that understanding and permitting the admission of this former testimony, contingent on a witness-by-witness showing of unavailability and subject to any other meritorious objections by the government.

Respectfully submitted,

**ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI**

By: ________/s/______________________
Whitney E.C. Minter
Va. Bar #47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)

Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
Laura_Koenig@fd.org (email)