**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cr-392 (DLF)** |
| | ) | |
| **ABU AGILA MOHAMMAD** | ) | |
| **MAS'UD KHEIR AL-MARIMI,** | ) | |
| **Defendant.** | ) | |

**MR. AL-MARIMI'S MOTION IN LIMINE TO LIMIT THE TRIAL**
**TESTIMONY OF KEN DORNSTEIN**

Abu Agila Mohammad Mas'ud Kheir Al-Marimi moves *in limine* for an order: (1) limiting the trial testimony of government witness Ken Dornstein to matters within his personal knowledge, as required by Federal Rule of Evidence 602; (2) excluding hearsay testimony by Mr. Dornstein that does not fall within a recognized exception under the Federal Rules of Evidence; (3) precluding Mr. Dornstein from offering lay opinion testimony that in substance constitutes expert or specialized opinion, under Federal Rules of Evidence 701 and 702; and (4) requiring the government to establish a proper foundation and authentication for any photograph, still image, or video Mr. Dornstein will discuss, under Federal Rule of Evidence 901, before such evidence is presented to the jury.

**BACKGROUND**

The government has identified Ken Dornstein as a potential witness at trial. It has noted that Mr. Dornstein will testify as a "life witness" and provide background information about one of the decedents, his brother. Mr. Dornstein may also be called

1

to introduce or help authenticate a still image from a video that the government alleges depicts Mr. Al-Marimi.

Independent of his relationship to one of the decedents, Mr. Dornstein is a journalist who conducted an extensive independent investigation into the bombing of Pan Am Flight 103 that culminated in a three-part documentary series on PBS. That investigation and series included: interviews with several fact witnesses; interviews with law enforcement agents; travel to and commentary about Libya, where Mr. Al-Marimi and his alleged co-defendants resided and whose government is alleged to have orchestrated the bombing; travel to Switzerland; travel to Germany to interview witnesses and examine archival materials; and review of documents obtained in the course of that reporting, among other investigative steps.

As a result of this dual role — life witness on the one hand and investigative journalist on the other — there is a substantial risk that Mr. Dornstein's testimony will exceed the bounds of what he personally witnessed and will instead convey to the jury out-of-court statements by third parties (witnesses, law enforcement officers, and others he interviewed during his reporting) and his own synthesis or conclusions drawn from that reporting. Each of these categories of potential testimony is independently objectionable under the Federal Rules of Evidence, and the risk of prejudice is heightened by Mr. Dornstein's dual status as a grieving family member and a journalist who has already publicly reported a narrative of these events. In short, the jury might regard Mr. Dornstein as a "Lockerbie expert" depending on the

2

nature and subjects of his testimony, when his testimony is necessarily derived from information beyond what will be presented at trial.

Mr. Al-Marimi does not seek to preclude Mr. Dornstein from testifying altogether. Mr. Al-Marimi seeks only to confine that testimony to its proper, admissible scope and to require the government to satisfy its evidentiary burdens before certain evidence is placed before the jury.

## ARGUMENT

### I.    Mr. Dornstein's testimony must be limited to matters within his personal knowledge.

Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. This foundational requirement applies with equal force to lay witnesses regardless of their occupation or the depth of their independent research. *See United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990) (witness may not testify to matters or events that he does not have the ability or opportunity to perceive); *United States v. Philip Morris USA, Inc.*, 2004 WL 5916877, at *2 (D.D.C. Aug. 17, 2004) (when a lay witness's testimony is not founded on particularized knowledge, it is inadmissible expert testimony) (citing *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113–14 (1st Cir. 2003); *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013) (lay witness testimony must draw upon "the witness's sensory and experiential observations that were made as a first-hand witness to a particular event"); *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir.

3

2005) (holding that "a lay opinion must be the product of reasoning processes familiar to the average person in everyday life"); *United States v. Vega*, 813 F.3d 386, 395 (1st Cir. 2016) (finding that witness testimony about Medicare law learned through an occupation does not qualify as personal knowledge).

Mr. Dornstein's proposed testimony implicates two distinct sources of "knowledge": (1) what he personally observed or experienced as a relative of the decedent and (2) what he learned through his journalistic investigation — i.e., secondhand accounts from interview subjects, documents he reviewed, and information gathered during his travel. Only the former satisfies Rule 602.

Because Mr. Dornstein's investigative work necessarily involved absorbing information from others, which is precisely the kind of "knowledge" Rule 602 does not permit a witness to relay as though it were his own firsthand account, the Court should limit Mr. Dornstein's testimony to topics and information grounded in his direct sensory perception, and it should instruct government counsel and Mr. Dornstein accordingly outside the presence of the jury before he takes the stand.

## II.    Mr. Dornstein may not relay out-of-court statements offered for their truth.

Hearsay, an out-of-court statement offered to prove the truth of the matter asserted, is inadmissible unless it falls within a recognized exception. Fed. R. Evid. 802. Mr. Dornstein's journalistic investigation was, by its nature, an exercise in gathering out-of-court statements: he interviewed witnesses, law enforcement agents, and others and reviewed documents containing out-of-court assertions.

4

Any recounting of what those out-of-court statements said — whether to establish facts about the crime, Mr. Al-Marimi's whereabouts, identity, employment, or alleged involvement in other crimes, information about the timer purportedly used in the bombing, or any other contested issue — would be inadmissible hearsay unless a specific exception applies. This concern is particularly acute here because many of the individuals Mr. Dornstein interviewed, including foreign fact witnesses and domestic and foreign law enforcement agents, are unlikely to appear at trial or otherwise be made available for cross-examination. Permitting Mr. Dornstein to relay the substance of what these individuals told him during his investigation would allow the government to place before the jury the functional equivalent of their testimony without ever subjecting them to cross-examination, in contravention of both the hearsay rules and potentially Mr. Al-Marimi's confrontation rights. *See Crawford v. Washington*, 541 U.S. 36, 68–69 (2004) (testimonial hearsay is inadmissible absent an opportunity for cross-examination).

### III.    Mr. Dornstein should not be permitted to offer lay opinion testimony that is in substance expert or specialized opinion.

Federal Rule of Evidence 701 permits lay opinion testimony only where it is (a) rationally based on the witness's own perception, (b) helpful to determining a fact in issue, and (c) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Mr. Dornstein's investigation, including his travel to Libya, interviews with law enforcement, and review of documentary evidence, constitutes exactly the kind

of specialized, investigation-based analysis that risks producing opinion testimony (e.g., conclusions about the political climate in Libya, the credibility of particular sources, or the meaning of documents reviewed) that has not been subjected to the reliability screening required by Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The government has not noticed Mr. Dornstein as an expert witness, and Mr. Al-Marimi would be prejudiced by the belated introduction of expert-type conclusions through a witness presented to the jury as a grieving family member.

Mr. Al-Marimi requests that the Court preclude the government from eliciting any opinion, conclusion, inference, or characterization from Mr. Dornstein that is derived from his investigative process rather than his direct personal observations, and that the Court require any such proffered testimony to be raised outside the presence of the jury.

**IV.    The government must lay a proper foundation and authenticate any photograph, still image, or video before it is shown to the jury, and Mr. Dornstein may not permissibly identify Mr. Al-Marimi as the person depicted.**

The government may seek to use Mr. Dornstein to introduce a still image that he extracted from video footage and a separate video he obtained and reviewed in the course of his investigation. *See* Gov. Exs. 507 and 508.   Before the still image or video may be admitted, the proponent must produce evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

For Government Exhibit 507, Mr. Dornstein did not take the still image

himself, and he was not present while the underlying footage was recorded. By his own account, the footage originated from media coverage of the post-incarceration release of Mr. Al-Marimi's alleged co-defendant, Abdelbaset al-Megrahi, which Mr. Dornstein reviewed as part of his investigation. Mr. Dornstein reviewed that coverage with the specific aim of identifying individuals present to greet Mr. al-Megrahi and determining whether those individuals had any involvement in the offense. From that footage, Mr. Dornstein purportedly extracted the still image at issue. Similarly, for Government Exhibit 508, a video, Mr. Dornstein was not responsible for its creation. The defense anticipates objecting to the admission of these exhibits if the only authentication offered is Mr. Dornstein's testimony.

Separately, authentication of the still image does not resolve the more serious problem raised by the manner in which Mr. Dornstein came to associate the person depicted in the image with Mr. Al-Marimi. Mr. Dornstein did not recognize the person in the footage as Mr. Al-Marimi based on any preexisting personal familiarity with Mr. Al-Marimi. Rather, by his own account, he set out to identify an unknown individual appearing in the footage, used the still image as an investigative tool for that purpose, and ultimately concluded that the person depicted was Mr. Al-Marimi based on conversations he had with other individuals during his investigation. That conclusion is not personal knowledge within the meaning of Rule 602 — it is an identification manufactured entirely from hearsay. *See* Fed. R. Evid. 602; Fed. R. Evid. 801(c). Mr. Dornstein has no independent basis, apart from what others told

7

him, for associating the person in the still image with Mr. Al-Marimi, and any testimony in which he communicates that association to the jury, whether framed as his "conclusion," his "understanding," or his "belief," would do nothing more than impermissibly relay to the jury the out-of-court identifications of the unnamed individuals with whom he spoke.

Nor could Mr. Dornstein's identification be salvaged as lay opinion under Rule 701. An identification derived from piecing together information obtained from third parties over the course of an investigation is not "rationally based on the witness's perception." It is the product of an investigative process, and offering it to the jury as though it were the witness's own perception would improperly invite the jury to credit an untested, out-of-court identification without any opportunity to assess the reliability of its actual source. *See United States v. Moore*, 651 F.3d 30, 57 (D.C. Cir. 2011) (agreeing "the foundation requirements of Rule 701 do not permit" opinion testimony based on investigative work) (citing *United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2005)).

Even if Mr. Dornstein can authenticate the still image as an accurate, unaltered extraction from the underlying footage, the government must still independently establish, through competent and admissible evidence, that the person depicted is in fact Mr. Al-Marimi. Mr. Al-Marimi does not concede that the still image depicts him, and he reserves all objections to any other means by which the government may seek to establish that identification at trial.

8

**V.      Any probative value of the challenged testimony is substantially outweighed by the danger of unfair prejudice, confusion, and undue waste of time.**

Independent of the foregoing rules, the Court retains authority under Federal Rule of Evidence 403 to exclude otherwise relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Permitting Mr. Dornstein, a bereaved relative, to testify expansively about the results of a multi-country journalistic investigation risks converting his testimony into an unauthorized narrative overview of the government's theory of the case, cloaked in the credibility and sympathy attendant to his status as a family member, without the checks that would ordinarily apply to summary or expert witnesses (e.g., notice, disclosure of methodology, and cross-examination on reliability). This risk is compounded by the fact that Mr. Dornstein has already published publicly available reporting that reflects his own conclusions about this case, creating a danger that the jury might seek out his reporting or that his trial testimony will be shaped by, or perceived by the jury as corroborated by, his prior public reporting rather than by properly admitted trial evidence.

Mr. Al-Marimi accordingly requests that, in addition to the specific relief sought above, the Court exercise its Rule 403 authority to exclude testimony from Mr. Dornstein regarding the scope, conclusions, or "findings" of his investigation, and to confine his testimony to discrete, admissible facts within his personal knowledge.

9

## CONCLUSION

For the foregoing reasons, Mr. Al-Marimi respectfully requests that this Court grant his Motion in Limine and (1) limit the trial testimony of government witness Ken Dornstein to matters within his personal knowledge, as required by Federal Rule of Evidence 602; (2) exclude hearsay testimony that does not fall within a recognized exception; (3) preclude Mr. Dornstein from offering lay opinion testimony that in substance constitutes expert or specialized opinion, under Federal Rules of Evidence 701 and 702; and (4) require the government to establish a proper foundation and authentication for any photograph, still image, or video Mr. Dornstein is expected to introduce, under Federal Rule of Evidence 901, before such evidence is presented to the jury.

Respectfully submitted,

**ABU AGILA MOHAMMAD**
**MAS'UD KHEIR AL-MARIMI**

By: _____/s/_____
Whitney E.C. Minter
Va. Bar # 47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorneys for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

10

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
laura_koenig@fd.org (email)