**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD** | : | |
| **MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE REFERENCES TO TERRORISTS OR TERRORISM**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits this Response to the defendant's Motion *In Limine*

to Exclude References to Terrorists or Terrorism. For the following reasons the motion should be

denied.

**ARGUMENT**

The defendant is charged with building the bomb used to blow up a civilian airplane that

killed 270 people. Pan Am Flight 103 exploded into pieces almost instantaneously when the bomb

in the forward cargo area exploded over Lockerbie, Scotland on December 21, 1988, at an altitude

of 31,000 feet after 38 minutes of flight. Of the 270 individuals killed, 259 were passengers and

crew, including 189 American citizens. Eleven residents of Lockerbie were killed on the ground

in a fiery inferno from falling airplane debris that destroyed an entire city block. The government

intends to show that the defendant and his co-conspirators acted at the direction of Muammar

Qaddafi, the Libyan leader who was to direct acts of state sponsored terrorism. The government

anticipates that the term "terrorist" or "terrorism" will be used at trial. For example, it is expected

that these terms may be used when the government describes the overall conspiracy in its opening

statement, when Scottish crime scene officers testify that they believed they were investigating a

1

terrorist attack and how that influenced their investigation, when FBI agents testify about their background in the Counterterrorism Division of the Bureau, and when expert witnesses describe their analysis of the physical evidence and the historical background describing Libya under Qaddifi's leadership. Given the facts of the case and the charged offenses, this anticipated testimony is entirely appropriate.

The defendant argues that because the defendant is not charged pursuant to a statute that includes the words "terrorist" or "terrorism" or requires a finding of fact as to a state sponsor of terror or proof of acts called "terrorism," the words terrorist and terrorism are not relevant pursuant to Federal Rule of Evidence 401. *See* ECF 527 at 1. They are unable to cite a single case to support this limiting proposition. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence. Federal Rule of Evidence 401. Evidence that references terrorism may be relevant for a variety of reasons, for example to prove motive or identify. *See, e.g., United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996) (evidence of racist views properly admitted to demonstrate "context, motive, and setup of the crime [and to] complete the story"); *United States v. McInnis*, 976 F.2d 1226, 1232 (9th Cir. 1992) (evidence of Nazism properly admitted, despite inflammatory potential, in light of value in establishing racial animus and identifying defendant as shooter). For example, the fact that Gaddafi sponsored acts of terrorism makes it more likely that the defendant knew that the bomb he made would be used to commit an act of terror. Whether a fact is relevant is not determined solely by words of the statute alone but is based on an analysis of the facts of the specific case and charged offenses.

The defendant concedes the words terrorism and terrorist may be relevant and argues that they should be excluded under Federal Rule of Evidence 403 because their prejudicial effect outweighs their probative value. *See* ECF 527 at 2. This is not the standard. As the defense

concedes in the next sentence, the probative value must be *substantially* outweighed by the danger of, among other things, *unfair* prejudice. Fed. R. Evid. 403 (emphasis added). The cases that the defendant relies on to support this argument are factually dissimilar and thus distinguishable from the case at bar. The D.C. Circuit has very recently reaffirmed that "the term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Zobel*, __ F. 4th ____, No. 25-3035, Slip Op. at 22 (D.C. Cir. July 17, 2026) (quoting *Old Chief*, 519 U.S. at 172, 180 (1997)). Here, where the defendant will be prosecuted using evidence that establishes that the charges meet every definition of terrorism, there is no danger of unfair prejudice.

This is not an instance of first impression in the District of Columbia. This precise issue was presented in *United States v. Whitehorn,* 710 F. Supp. 803, 826 (D.C. Cir. 1989), *rev'd on other grounds sub. nom., United States v. Rosenberg*, 888 F.2d 1406 (D.C. Cir. 1989), and the court determined that the use of the words terrorist or terrorism could not have been characterized as improperly prejudicial in reference to the facts of the case. The court used dictionary definitions of "terrorist" in justifying the word's use outside of a charge including the word terrorism. *Id.* ("Defendants next assert that references to terrorism, including FBI agents' statements that they are members of the Joint Terrorist Task Force, could have prejudiced the jury. Use of the word "terrorism" or "terrorist" in reference to the bombings that the task force was investigating, and to the acts of which these defendants stand accused, is appropriate and cannot properly characterized as improperly prejudicial. A "terrorist" is defined as one who administers or coerces a government or community by intimidation. Webster's New International Dictionary, Unabridged, 2nd ed. A

person who blows up government buildings for purposes of political intimidation snugly fits within that definition.")

The acts with which the defendant is charged also meet the U.S. Code definition of international terrorism. Congress has defined international terrorism as acts that:

(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

(B) appear to be intended—
   (i)   to intimidate or coerce a civilian population;
   (ii)  to influence the policy of a government by intimidation or coercion; or
   (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18 U.S.C. § 2331(1). The crimes with which the defendant is charged unquestionably meet that definition.

The D.C. Circuit, albeit in an unpublished opinion, has held that the use of the word "terrorism" is proper when used in a context that calls for it and in a non-inflammatory way. *See United States v. Shirosaki*, 1999 WL 187760 (D.C. Cir. 1999) (unpub.) ("The district court properly permitted witnesses to use the word "terrorism" on limited occasions and to link the term to the Japanese Red Army. The references to the term were neither inflammatory nor gratuitous; rather, they were brief, contextual and explanatory.").

Other courts have found that the impact from the word "terrorism" has been considered to have a similar impact as the word "bombing" in considering whether to grant a mistrial, and it is inconceivable that this attack could be described as anything but a bombing (or terrorism, for that matter). *See United States v. Solis-Jordan*, No. 97 CR 814, 1999 WL 410038, at *7 (N.D. Ill. June

2, 1999), *aff'd sub nom., United States v. Jordan*, 223 F.3d 676 (7th Cir. 2000) ("[T] comments can hardly be called unfair given the nature of the charged offense. Without mincing words, there was absolutely no way that this or any other court could avoid either implicit or explicit references to terrorism. Terror is defined as "violence (as bombing) committed by groups in order to intimidate a population or government into granting their demands <insurrection and revolutionary>." Webster's Collegiate Dictionary, 1217 (10th ed.). Clearly [Defendant]'s charges squarely fit the definition of terrorism, having been charged with conspiring to bomb a military recruiting station in order to persuade the United States to free Puerto Ricans convicted of crimes purportedly in furtherance of the Puerto Rican independence.).

The defendant relies on *United States v Al-Moayad*, 545 F.3d 139, 166 (2d Cir. 2008), for the proposition that the word terrorism by its nature is overly prejudicial. The court explained, "[i]n this case, the defendants were charged with conspiring to, attempting to, and providing material support to Hamas and Al-Qaeda, *but not with violent terrorist acts like the deadly bus bombing* about which Black testified" (emphasis added). The court determined that there was a significant danger of undue prejudice was due to the fact that the factfinder could declare guilt on a ground different than the offense charged. *Id.* Here, the facts of the case will show the defendant was a participant in the bombing of Pan Am Flight 103, an event that killed 270 people and that meets both the dictionary and statutory definition of terrorism. The defendant is charged with two counts of 18 U.S.C. § 32(a)(1) and (2) (destruction of aircraft facilities), the elements of which include "willfully set[ting] fire to, damage[ing], disable[ing] or wreck[ing] any aircraft" and "causes to be placed a destructive device … in, upon, or in proximity to" and aircraft. *Id.* The charges and facts of this case revolve around an act of violence: building the bomb that was used

to blow up a commercial airplane and kill 270 innocent civilians. This information is integral to the analysis of whether terrorism is relevant and is not overly prejudicial.

The defendant's reliance on *United States v. Odeh*, No. 13-CR-20772, 2014 WL 5473042 is inapposite as well. In *Odeh* the defendant was charged with unlawful procurement of nationalization in violation of 18 U.S.C. § 1425(a). The defendant was charged with failure to answer a question on her visa application, in 1994, about her criminal history with a terrorist organization, the PFLP, from 1969. The court reasoned that "[t]o rely on the 1997 designation of the PFLP as a "terrorist" organization when there is no evidence in the record to suggest that Defendant was a member of that organization when she applied for her immigrant visa is highly prejudicial and will have an undue tendency to improperly influence the jury's verdict by appealing to its fears of terrorists and terrorist activities." *Id.* Further the court held that "[w]hile the Court agrees that past membership in an organization presently designated a terrorist organization would have been material to USCIS, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice to the Defendant." *Id.* The court found the specific references to the word terrorism was not necessary to prove that the defendant failed to provide truthful information on her visa application. Again, the analysis is directly tied to the facts and charges in a specific case. Here, the words terrorist and terrorism are directly relevant when viewed in context of the facts of the case and the charged offenses.

The defendant identified additional cases and argued that "[o]ther courts have recognized that these words matter under Rule 403, particularly in high profile cases that involve associations with perceived terrorists." What is clear from these cases is that whether evidence of terrorism or terrorists is relevant depends on an analysis of the facts of the case and the charged offenses, and there is no general prohibition on the use of these words.

In *United States v. Elfgeeh*, 515 F.3d 100 (2d Cir. 2008), the defendants were charged with offenses related to the operation of an unlicensed money-transmitting business. Prior to trial, the defense objected to testimony related to terrorism and the government agreed not to introduce the subject, however, during cross-examination of the government's witness the word terrorism was used twice. *Id.* at 113-14. Upon review, court found that two mentions of terrorism did not deny defendants a fair trial. *Id.* at 127.

In *United States v. Amawi*, 541 F. Supp. 2d 945 (N.D. Oh. 2008), the defendants were charged with conspiring to kill and maim members of the United States military in Iraq and provide material support to terrorism, however, the court excluded references to terrorism because "[t]he government has not alleged that any of the defendants had or has a connection with any specific foreign or domestic terrorist groups…there is no indication that any of the defendants has had any contact with any of those groups. There is equally no indication that those groups have had any contact with defendants." *Id.* at 949. At trial, the court allowed the government's expert to testify regarding terrorism and terrorists in rebuttal. See *United States v. Amawi*, 695 F.3d 457, 478-79, (6th Cir. 2012).

The defendant references *United States v. Mostafa*, 16 F. Supp. 3d 236 (S.D.N.Y. 2014), for "excluding various evidence related to terroristic acts." *See* ECF 527 at 5. The defendant's reliance on *Mostafa* is misplaced. In *Mostafa* the defendant was charged with conspiring to provide material support to terrorists and terrorist organizations and providing such support. The court analyzed the evidence related to various terrorist acts and made specific finding of relevance. The court found some evidence related to terrorism was admissible at trial, including evidence that defendant (1) "made statements approving of and in support of Osama bin Laden," (2) "stated that a non-Muslim was 'booty' and that it was acceptable to sell him in the market," (3) "made

statement approving of the attack on the U.S.S. Cole in Yemen and of using airplanes to kill" and (4) "stating that the targeting of the World Trade Center was justified, not unfairly prejudicial." *Id*. at 237. After analysis the court that found that some of the evidence was not relevant for various reasons including that the statements predated the charged offenses, they were undated or they would be marginally probative. *Id.* at 264-67.

In *United States v. Benkahla*, 530 F.3d 300, 310 (4th Cir. 2008), the defendant was charged with making false statements to a grand jury. The court found that the testimony related to jihadist camps abroad, the people who facilitate training at them, and the militants associated with Dar al-Arqam were relevant to the defendant's false statements. *Id*.at 309-10. The Court found it was not an abuse of discretion to admit that testimony. "[T]he relevance of the challenged evidence cannot be doubted, and the same qualities that made it relevant gave it a probative value that the trial judge could fairly think outweighed its prejudicial risk. To reverse that judge for an abuse of discretion would betray too much distrust of the ability of the adversary process to reach just results when the evidence on both sides is in…we see no abuse of discretion in the testimony and exhibits admitted." *Id.* at 310-11.

In *United States v. Felton*, 417 F.3d 97 (1st Cir. 2005), the defendant was charged with of a number of offenses centering around a bank robbery, counterfeiting, and the planned construction of an explosive device. On appeal the defendant claimed it was improper to use the word "terrorist" throughout trial to describe the defendants and their actions *Id.* at 103. The court noted "[i]t is hard to lay down a general rule as to epithet and rhetoric because the considerations are matters of degree: these include accuracy in description, threat of unfair prejudice, frequency of use, and alternative means of description." *Id.* But given the facts of the case, the court found no abuse of discretion in the use of the term:

Here, 'terrorist' is obviously a provocative term, freighted with images of terrible events. The defendants were not charged with offenses so labeled, but the jury – ignorant of the contents of such section and instructed on the elements of the crimes here charged – could not have thought otherwise. The jurors surely understood the references in their lay sense as summarizing the central conduct with which the defendants were charged: a conspiracy to build a bomb to attack civilian targets to advance an ideological cause. To describe such plans and the individuals who pursued them as 'terrorist' was certainly an accurate lay use of the term 'terrorist,' and it is not easy to think of some softer description to summarize the gist of what the government's evidence suggested. That the term is highly pejorative is true – but this is a function of the acts that the defendants engaged in, not the government's inaccurate description of those acts[.]

*Id.* That reasoning applies fully here. "[R]ealistically, the terrorism label" poses "little prejudice compared to the evidence of the bomb building itself." *Id.* Its use should be permitted.

*      *      *

9

## CONCLUSION

For the above reasons, the defendant's motion should be denied.


Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Kathleen Campbell*
        KATHLEEN CAMPBELL (MD Bar No. 9812170031)
        JENNIFER BURKE (MD Bar No. 9706250061)
        Trial Attorneys, Counter Terrorism Section
        National Security Division
        950 Pennsylvania Avenue NW, Washington, D.C. 20530
        Kathleen.Campbell@usdoj.gov


        CONOR MULROE (NY Bar No. 5289640)
        ERIK M. KENERSON (OH Bar No. 82960)
        BRITTANY KEIL (D.C. Bar No. 500054)
        Assistant United States Attorneys
        JEROME J. TERESINSKI (PA Bar No. 66235)
        Special Assistant United States Attorney
        601 D Street NW, Washington, D.C. 20530
        (202) 740-4595 // Conor.Mulroe@usdoj.gov