**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

## RESPONSE TO DEFENDANT'S MOTION TO LIMIT THE TRIAL TESTIMONY OF KEN DORNSTEIN

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the defendant's motion to limit the trial testimony of Ken Dornstein, ECF 529. The government does not intend to elicit testimony from Mr. Dornstein on any matter that is outside his personal knowledge, constitutes impermissible hearsay, or offers opinion testimony of the type described in Federal Rule of Evidence 702. Accordingly, the Court should deny the defendant's motion as moot and rule on any objections as they come up at trial.

## FACTS

Ken Dornstein lost his brother David, who was returning home from studying abroad in the United Kingdom, in the attack on Pan Am Flight 103. Mr. Dornstein would go on to become a documentary filmmaker and, in 2015, he released a three-part documentary on the PBS series Frontline, entitled *My Brother's Bomber*. The documentary included multiple interviews and analysis of documents, and it also featured television footage recovered from within Libya that depicts, among other things, (1) the defendant's presence in a car with Abdullah Senussi, upon co-conspirator Abdel Baset Ali Al-Megrahi's return to Libya after his release from Scottish prison;

and (2) footage from the defendant's trial within Libya in approximately 2015, in which he self-identifies by name.

The government has not yet decided whether it will call Mr. Dornstein. If he is called to testify, Mr. Dornstein would testify, in sum and substance, that he traveled to Libya following the fall of Qaddafi, and (among other places), he went to the Libyan state-run television station, and inquired about footage of Megrahi's return to Libya. He observed as employees consulted a ledger, went to storage shelves within the station's offices, and returned with footage. He watched as employees played that footage for him, and it depicted the scenes that ultimately aired in the documentary.

The footage the government may seek to admit spans time stamps 18:26-18:53; 35:29-35:34; and 38:49-39:12 of Part I of *My Brother's Bomber*, which is available at https://www.pbs.org/wgbh/frontline/documentary/my-brothers-bomber/#video-1, as well as some still shots.[1] That footage shows Megrahi's return to Libya, and his exit from the plane. It depicts him being escorted down the stairs from the aircraft by Said Rashid (who was involved in the purchase of MST-13 timers and who ordered the defendant to travel to East Germany for the La Belle attack) and Saif al-Islam, Qaddafi's son. After Megrahi reaches the tarmac, the video depicts him entering a car, and embracing Abdullah Senussi, who ordered the defendant to go to Malta with a booby-trapped suitcase and meet with Megrahi and Fhimah. Megrahi then turns to the back seat, and he embraces the defendant.

If the government calls Mr. Dornstein at trial for any reason other than providing background about his brother, that testimony will focus on the footage described above. Absent

[1] The government inadvertently left these portions off of its preliminary exhibit list prior to defense filing its motion. Government counsel has notified defense of the error and does not oppose defense responding to arguments about these portions in its reply.

the defense opening the door, the government does not intend to elicit information from Mr. Dornstein about other specific parts of his documentary (aside from a general description of it), and it does not expect to ask Mr. Dornstein to identify anyone in the video other than possibly Megrahi.

**ARGUMENT**

In the event it calls Mr. Dornstein, the government intends to limit its examination to matters he personally observed and experienced, both as a victim who lost his brother, which the defense concedes is proper, and through his journalistic investigation, which the defense claims is improper. *See* ECF 529 at 4. Although portions of Mr. Dornstein's reporting are certainly based on interviews and analysis of documents that the government does not intend to elicit, others Mr. Dornstein did personally observe and are not based on hearsay.

For example, Mr. Dornstein personally traveled to the Libyan state television offices in the aftermath of the fall of Qaddafi. He observed as the employees there brought up footage from Megrahi's release, and the government expects to elicit that fact from Mr. Dornstein to authenticate the video of Megrahi's return from Scottish custody. The government does not anticipate eliciting from Mr. Dornstein any identifications of individuals depicted in that video of anyone other than Megrahi, whom Mr. Dornstien personally met in the course of his journalistic investigation. The government also anticipates redacting the audio from the version played at trial, so that Mr. Dornstein's commentary will not be played for the jury.

Mr. Dornstein's testimony about his recovery of the footage, which he personally witnessed and participated in, will form part of the government's basis to authenticate that footage. *See United States v. Rembert,* 863 F.2d 1023, 1026 (D.C. Cir. 1988) "Even if direct testimony as to foundation matters is absent . . . the contents of a photograph itself, together with such other

circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." To authenticate the footage, the government must only introduce sufficient evidence to allow a rational juror to conclude that the footage is what the government claims it is. *See* Fed. R. Evid. 901(a). Mr. Dornstein's testimony about what he witnessed at the television station will be enough to authenticate the footage the government seeks to play for the jury, but the government notes that the authenticity of the footage Mr. Dornstein recovered is corroborated by contemporaneous news reports published at the time of Megrahi's release.

The first photograph below is a still shot from a portion of the *My Brother's Bomber* footage the government seeks to play. The second is a photograph from a news article that ran on August 21, 2009, one of many that ran similar photographs.[2]




[2] *Lockerbie Bomber Return Unsettles US, UK*, AUSTRALIAN BROADCASTING CORPORATION, *available at* https://www.abc.net.au/news/2009-08-22/lockerbie-bomber-return-unsettles-us-uk/1400170 (last visited July 18, 2026); *see also* Cochrane, Alan, Lockerbie Bomber: Blame Megrahi's Release on London, not Edinburgh, The Telegraph, August 22, 2009, *available at*: https://www.telegraph.co.uk/comment/columnists/alancochrane/6073739/Lockerbie-bomber-Blame-Megrahis-release-on-London-not-Edinburgh.html (last visited July 18, 2026).




The government expects that its Libyan history expert, Alison Pargeter, can identify Senussi, Megrahi, Rashid, and Saif al-Islam (Qaddafi's son) in these clips. The jury will have sufficient basis to conclude that the person the government contends is the defendant is in fact him, including by a comparison of the man depicted embracing Qaddafi to the defendant himself, who will be present in court.

## CONCLUSION

For the above reasons, the Court should deny the defendant's motion as moot and allow Mr. Dornstein to testify as outlined above.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: ***/s/ Erik Kenerson***
ERIK M. KENERSON (OH Bar No. 82960)
CONOR MULROE (NY Bar No. 5289640)
BRITTANY KEIL (D.C. Bar No. 500054)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
601 D Street NW, Washington, D.C. 20530
(202) 252-7201 // Erik.Kenerson@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys, Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW, Washington, D.C. 20530