UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:22-cr-392 (DLF) |
| | ) | |
| ABU AGILA MOHAMMAD | ) | |
| MAS'UD KHEIR AL-MARIMI, | ) | |
| Defendant. | ) | |

**MR. AL-MARIMI'S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE THE [redacted] THAT SCOTTISH AUTHORITIES PROVIDED [redacted]**

Mr. Al-Marimi moves the Court to order that the government produce a copy of the [redacted] that Scottish law enforcement officials provided [redacted] Discovery indicates that on [redacted]

## BACKGROUND

As the Court will recall, Jamal testified that he questioned Mr. Al-Marimi shortly after September 12, 2012. Second Day 2:00 P.M. Tr. at 18-19. Jamal further testified that despite obtaining purportedly precise, concise, and highly inculpatory statements from Mr. Al-Marimi and others suspected to have been part of Qaddafi's regime, Jamal did not tell anyone else about these statements for more than three years. *Id.* at 19. Instead, he kept them tucked away in a private safe he kept at home (which he says is the same safe where he kept the Nokia cell phone with the purported recordings of his interrogation of Mr. Al-Marimi, which has now simply vanished). *Id.* at 8-9, 38. While Jamal testified that he gave his reports to Al-Sor in either late 2014 or early 2015, *see, e.g.*, *id.* at 26, [redacted]

It was not until January 2017 that Al-Sor, still the Head of the Investigative Section of the Libyan Attorney General's Office in Tripoli, indicated to anyone outside of Libya that a purported confession from Mr. Al-Marimi existed. *See* Suppression Hr'g Ex. 502-tr at 3–4 (referring to the Adobe PDF pagination). Al-Sor wrote a cover letter dated January 10, 2017, and attached several materials to that cover letter, including Mr. Al-Marimi's alleged confession. *Id.* One of the materials attached to the cover letter was "minutes of proceedings" dated November 23, 2015. *Id.* at 1. The "minutes" indicate that the evidence of Mr. Al-Marimi appears at pages 27–42 of

Jamal's report. *Id.* Another attachment is labeled "Record of Collection of Evidence", also dated November 23, 2015, that reports "that pursuant to instructions received from" Al-Sor, the investigation unit was to "***instigate*** an investigation and report facts surrounding two incidents"—the Pan Am 103 explosion and a French UTA airplane that crashed in Nigeria. *Id.* at 5 (emphasis added).

If the Court admits evidence of the alleged confession, its reliability and authenticity will be of critical importance to Mr. Al-Marimi's defense. The government has argued that the alleged confession must be true because of the level of detail present that the government believes corroborates other aspects of its case. *See* 2/12/26 Tr. at 58-70. The defense must have access to and be able to question government witnesses about the [redacted] to demonstrate other sources of some of these purportedly corroborative details in the alleged confession in order to be able to effectively defend Mr. Al-Marimi and effectuate his rights to due process, to present a defense, and to confront and cross-examine the witnesses against him.

The defense requested, in writing, that the government produce this [redacted] in discovery on February 24, 2026; May 7, 2026; and again on July 21, 2026. On July 21, 2026, the government informed the defense that Scotland will not [redacted]

## LEGAL STANDARD

Federal Rule of Criminal Procedure 16(a)(1)(E)[1] requires that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control" and, as relevant here, "the item is material to preparing the defense" or "the government intends to use the item in its case-in-chief at trial".

Evidence is material to preparing a defense "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted)). "It matters not whether such evidence is inculpatory or exculpatory." *United States v. Slough*, 22 F. Supp. 3d 1, 4 (D.D.C. 2014) (citing *Marshall*, 132 F.3d at 67–68); *see also United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005) (stating material evidence "is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence from disclosure"). In short, materiality

[1] This rule "is intended to prescribe the minimum amount of discovery to which the parties are entitled" and "is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. GossJankowski*, 669 F. Supp. 3d 1, 5 (D.D.C. 2023) (quoting *United States v. Anderson*, 416 F. Supp. 2d 110, 113 n.2 (D.D.C. 2006)).

"is not a heavy burden[.]" *Lloyd*, 992 F.2d at 351.

This Court has recognized that the government's Rule 16 disclosure obligations extend to evidence possessed by law enforcement agents and persons acting on their behalf. *Safavian*, 233 F.R.D. at 14 (relying on *United States v. Griggs*, 111 F. Supp. 2d 551, 554 (M.D. Pa. 2000) (observing that Rule 16 applies to any person "allied with the prosecution once a federal investigation or prosecution commences, such as a state officer working on a joint task force or with the U.S. Attorney's office" who "interrogates" the defendant)).

Under the Due Process Clause, the government "has a duty to learn of any favorable evidence known to the others *acting on the government's behalf* in the case. . . ." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (emphasis added). Likewise, the government's obligations under Rule 16 do not stop at documents in its direct possession. *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003) ("[C]ourts have found that the 'possession, custody, or control of the government' requirement includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor."); Fed. R. Crim. P. 16(a)(1)(E). These obligations are critical to ensuring a fair trial. "Criminal discovery is not a game. It is integral to the quest for truth and the fair adjudication of guilt or innocence." *Taylor v. Illinois,* 484 U.S. 400, 419 (1988) (Brennan, J., dissenting).

Like the D.C. Circuit in *United States v. Brooks*, 966 F.2d 1500, 1502 (D.C. Cir. 1992), other circuits have ruled that a federal prosecutor's disclosure obligations may

extend to evidence possessed by another jurisdiction's agents. *See, e.g.*, *United States v Risha*, 445 F.3d 298, 303–306 (3rd Cir. 2006) (recognizing "cross-jurisdictional constructive knowledge" in the presence of a "close working relationship" between state agents and federal prosecution and remanding for factual determination on constructive possession); *United States v. Moussaoui*, 382 F.3d 453, 462 n.14 (4th Cir. 2004) (noting a "due process problem" could arise depending on what information was and was not passed on to the government by classified entities responsible for witnesses); *United States v. Perdomo*, 929 F.2d 967, 971 (3d Cir. 1991) (holding information in "local Virgin Islands records" was "readily available" to the government; explaining availability "is not measured in terms of whether the information is easy or difficult to obtain but by whether the information is in the possession of some arm of the state"); *United States v. Mitchell*, 613 F.2d 779, 781 (10th Cir. 1980) (finding Rule 16 violation and stating the "fact that [a] statement was made to a state probation officer does not make [Rule 16] inapplicable"); *United States v Antone*, 603 F.2d 566, 569–570 (5th Cir. 1979) ("Imposing a rigid distinction between federal and state agencies which have cooperated intimately from the outset of an investigation would artificially contort the determination of what is mandated by due process. Rather than endorse a [p]er se rule, we prefer a case-by-case analysis of the extent of the interaction and cooperation between the two governments.").

Independent of Rule 16, due process additionally requires that the government turn over material, favorable information. *See, e.g.*, *Brady v. Maryland*, 373 U.S. 83,

87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). "*Brady* always trumps both Jencks and Rule 16." *Safavian*, 233 F.R.D. at 16 (citing *United States v. Tarantino*, 846 F.2d 1384, 1414 n.11 (D.C. Cir. 1988)). Due process requires the prosecution to produce both exculpatory and impeachment evidence. *See, e.g.*, *United States v. Bagley*, 473 U.S. 667, 676–77 (1985).

So, under both due process and Rule 16, the government must turn over "any written or recorded statements in its possession or custody or control regardless of the origin of the statements, so long as the government knows or through due diligence could know of their existence". *Safavian*, 233 F.R.D. at 14-15. This obligation to discover and produce information encompasses a duty to learn of favorable evidence known to others acting on behalf of the prosecution and those closely aligned with the prosecution. *See, e.g., Kyles*, 514 U.S. at 437 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); *Brooks*, 966 F.2d at 1503 (finding a duty to obtain and disclose materials from government agencies who have a "close working relationship" with the prosecution in the case).

**ARGUMENT**

The [redacted] is plainly material to Mr. Al-Marimi's defense and, by all appearances, at least potentially exculpatory in nature. The Court should

require the government to produce it for examination by the defense.

In *Brooks*, the D.C. Circuit addressed whether the U.S. Attorney's Office's duty under *Brady* to search for possible sources of exculpatory information extended "to files in the possession of agencies other than the prosecutor's office (conceived here as simply the U.S. Attorney's office)". 966 F.2d at 1502. In answering that question in the affirmative, the court relied on *United States ex rel. Smith v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985), in which the Seventh Circuit found that the prosecutor had an obligation to discover, obtain, and disclose an exculpatory worksheet in the hands of a state police officer. The *Fairman* court observed that imposing a *Brady* obligation on the prosecution to search for evidence was especially appropriate "when the withheld evidence is under the control of a state instrumentality closely aligned with the prosecution, such as the police." *Id.*

Here, much like the police officer worksheet at issue in *Fairman* and the state police homicide and Internal Affairs Division files at issue in *Brooks*, the [redacted] is material to Mr. Al-Marimi's defense, and it is in the hands of the Scottish police that the government has chosen to closely align itself with in this prosecution. Whether the [redacted] contains the details the government points to in the alleged confession as corroborative of other aspects of the government's case, testing to confirm one way or the other is material to the preparation of Mr. Al-Marimi's defense. "[I]t is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths." *Marshall*, 132

F.3d at 67.

That the Scottish police are not employed by the U.S. government is irrelevant. Here, there is no question the United States and Scotland are cooperating such that the actions of Scottish authorities are equally constrained by the U.S. Constitution. The American prosecution relies heavily on the evidence that was collected, presented, and preserved by Scottish authorities for the Scottish trial. *See* ECF 242-1, at 2, 8–10 (describing Scottish activities and noting materials were provided to the U.S. Department of Justice pursuant to a Mutual Legal Assistance Request for Mr. Al-Marimi's prosecution). The U.S. government will be calling Scottish investigators as witnesses as part of its case in chief and has consistently obtained evidence it needs from Scotland throughout this case. The two countries have worked together at every step, pooling resources, sharing leads, and synthesizing information. Indeed, investigators often refer to the joint nature of this long-running investigation. *See, e.g.*, ECF No. 1, ¶ 6 [redacted] The extent of cooperation between the Scottish police and the government and the demonstrated ability of the government to successfully request specific information and assistance from Scotland places this case solidly within the purview of *Brooks* and *Fairman*.

**CONCLUSION**

To date, the government has not yet produced the [redacted]

despite multiple defense requests. It now claims it cannot do so due to Scottish [redacted] Thus, Mr. Al-Marimi asks the Court—pursuant to Rule 16 and his right to due process—to order the government to obtain and produce the [redacted] for defense examination and to impose appropriate sanctions should the government fail to do so.

Respectfully submitted,

**ABU AGILA MOHAMMAD**
**MAS'UD KHEIR AL-MARIMI**

By: ________/s/________________________

Whitney E.C. Minter
Va. Bar # 47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
laura_koenig@fd.org (email)