**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cr-392 (DLF)** |
| | ) | |
| **ABU AGILA MOHAMMAD** | ) | |
| **MAS'UD KHEIR AL-MARIMI,** | ) | |
| **Defendant.** | ) | |

**MR. AL-MARIMI'S REPLY TO THE GOVERNMENT'S RESPONSE**
**TO HIS MOTION IN LIMINE TO EXCLUDE**
**REFERENCES TO TERRORISTS OR TERRORISM**

Abu Agila Mohammad Mas'ud Kheir Al-Marimi replies to the government's response, ECF No. 541, to his motion *in limine* to exclude references to terrorism and terrorists, ECF No. 527. The core problem with the government's position is that it seeks to introduce inflammatory labels that do not concern the actual elements of 18 U.S.C. §§ 32 and 34. While the government has cited reasons of convenience for using the word terrorism, there is nothing in the government's proffer that cannot be addressed by using a less inflammatory word such as "bombing" or "attack".

I.    **The government's argument confirms the challenged words are unnecessary.**

The government does not dispute that it can prove every element of the charged offenses—willfully damaging or destroying an aircraft—without ever using the words "terrorist" or "terrorism." Instead, the government argues only that these terms may come up incidentally: in an opening statement characterizing a conspiracy it has not charged, in testimony from Scottish investigators describing their state of

1

mind, from FBI witnesses describing which division they worked in, and from experts describing physical evidence and historical context regarding Libya. ECF No. 541, at 1–2.

That the words might arise incidentally is precisely why a limiting order is appropriate—not why one should be denied. In *United States v. Odeh*, 2014 WL 5473042, at *8-10 (E.D. Mich. 2014), the court determined that Rule 403 does not stand for the proposition that the government must be prevented from ever proving the facts underlying a terrorism designation. Rather, when the specific words "terrorist" and "terrorism" are not required to prove the elements of the offense, and add only prejudicial coloring, they should be excluded. *Id*. Here, the government can describe the bombing, the deaths, the mechanism, Mr. Al-Marimi's alleged role, and Libya's alleged sponsorship using neutral, accurate, factual language. The government does not need a label to do so. *See, e.g., id.* at *8 ("It goes without saying that the American public is particularly emotional when it comes to terrorism and the threat of terrorism, not only due to the attacks on the World Trade Center in 2001, but also due to the public's present awareness and fears stemming from the activities of a certain group, which in recent months has inflicted brutal violence upon Americans and others overseas.").

The government nonetheless argues that evidence of terrorism is relevant to motive and identity, citing *United States v. Beasley*, 72 F.3d 1518 (11th Cir. 1996), and *United States v. McInnis*, 976 F.2d 1226 (9th Cir. 1992)—cases involving evidence

of racist views and Nazism admitted to establish a defendant's animus and identify him as the shooter. ECF No. 541 at 2. Those cases are inapposite. In *Beasley*, the defendant's racist ideology was itself probative of who committed the crime and why. 72 F.3d at 1528. In *McInnis*, the court found Nazi ideology evidence probative of proving racial animus, which was an element of the crime. 976 F.2d at 1231–32.

Here, the government does not contend that the word "terrorism" itself proves that Mr. Al-Marimi built the device, or that his understanding of Qaddafi's alleged aims requires the jury to hear the specific word "terrorist" repeated throughout trial. The underlying facts—that Qaddafi allegedly supported or directed the bombing of civilian aircraft—can be presented in full without an inflammatory label.

## II.     Rule 403 does not permit labels where facts suffice.

The government suggests that because "the charges meet every definition of terrorism," there can be no unfair prejudice in using the term. ECF No. 527, at 3. This inverts the Rule 403 analysis. The question is not whether the label is accurate. The defense does not dispute that the bombing of Pan Am 103 was a horrific act of violence. The question is whether the word, as opposed to the facts, adds anything beyond an appeal to the jury's fear and revulsion. As the D.C. Circuit reaffirmed in a case that the government cites, unfair prejudice is measured by "'the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *United States v. Zobel*, No. 25-3035, --- F.4th ----, 2026 WL 2065959, at *10 (D.C. Cir. July 17, 2026) (quoting *Old*

3

*Chief v. United States*, 519 U.S. 172, 180 (1997)). Repeated invocation of "terrorist" and "terrorism"—a "provocative term, freighted with images of terrible events," *United States v. Felton*, 417 F.3d 97, 103 (1st Cir. 2005)—risks precisely that: inviting the jury to convict based on the specter of terrorism generally, rather than on whether the government has proven, element by element, that Mr. Al-Marimi built and placed the specific device that destroyed Pan Am 103.

Notably, even the government's own authority illustrates the line the defense asks this Court to draw. In *United States v. Amawi*, 541 F. Supp. 2d 945, 950–51 (N.D. Oh. 2008), the district court excluded terrorism references and observed that even if the use of the word "terrorism" "had some probative value, the risk of very unfair prejudice substantially outweighs any such probative value" because "[f]ew terms have a greater inherent risk of prejudgment than terrorism, terrorist, jihad, and Al-Quaeda". And in *United States v. Shirosaki*, 194 F.3d 175, at *2 (D.C. Cir. 1999) (unpublished table decision), the D.C. Circuit approved only "brief, contextual and explanatory" uses of the word "terrorism" on "limited occasions"—not open-ended use throughout trial. If the government wishes to elicit the underlying facts, it may do so, but it should not be permitted to use an inflammatory shorthand.

### III.    *Whitehorn* and *Solis-Jordan* do not support the government's use of the word "terrorism" in this case.

The government's reliance on *United States v. Whitehorn*, 710 F. Supp. 803, 826 (D.D.C. 1989), is likewise misplaced. That decision allowed references to the word "terrorist" in the context of statements about the specific task force that FBI agents

4

worked for in a case where the defendants were charged with bombing government buildings for political intimidation, squarely lining up with the dictionary definition of terrorism. *Id.* at 826. It did not hold that the government may freely use "terrorist" and "terrorism" as a descriptor throughout a multi-week trial on charges that do not include those elements. Similarly, *United States v. Solis-Jordan*, No. 97-cr-814, 1999 WL 410038, at *7 (N.D. Ill. 1999), addressed a posttrial challenge to unobjected-to references to terrorism in a bombing case under the plain error standard, not a pretrial request to preclude the term's repeated, deliberate use during opening statement, direct examination, and closing argument.

## CONCLUSION

For the foregoing reasons and those set forth in ECF No. 527, the Court should grant Mr. Al-Marimi's motion in limine and preclude the government and its witnesses from using the words "terrorism" and "terrorist" at trial.

Respectfully submitted,
**ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI**

By: _____/s/_____

Whitney E.C. Minter
Va. Bar # 47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia    22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
laura_koenig@fd.org (email)