**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 22-cr-392 (DLF)** |
| | ) | |
| **ABU AGILA MOHAMMAD** | ) | |
| **MAS'UD KHEIR AL-MARIMI,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION IN LIMINE TO LIMIT THE TESTIMONY OF GOVERNMENT WITNESS KEN DORNSTEIN**

Defendant Abu Agila Mohammad Mas'ud Kheir Al-Marimi respectfully submits this reply in support of his motion *in limine* regarding the testimony of Ken Dornstein. The government's response narrows several of the issues, and Mr. Al-Marimi addresses the remaining disputes below.[1]

## I. The Government Should be held to the Concessions Made in Its Response.

The government represents that it does not intend to elicit from Mr. Dornstein: (1) the substance of his interviews with witnesses, law enforcement, or other sources; (2) the contents of documents he reviewed during his investigation; (3) any identification of individuals depicted in the footage other than "possibly" Megrahi; or

[1] The government's response notes that it inadvertently omitted from its preliminary exhibit list, prior to Mr. Al-Marimi's filing of the instant motion, the footage depicting Megrahi's exit from the plane and his escort down the stairs by Said Rashid and Saif al-Islam. Mr. Al-Marimi's original motion focused on the footage of the car scene, as that was the footage identified to Mr. Al-Marimi at the time. The government has represented that it does not oppose Mr. Al-Marimi addressing this additional footage in this reply, and he does so on that basis. To be clear, Mr. Al-Marimi's authentication arguments — including those raised in Section IV of his original motion and in Section II above, regarding the chain of custody of the footage within the television station prior to Mr. Dornstein's visit — apply with equal force to all clips.

(4) any audio commentary accompanying the footage, which the government represents it will redact before publication to the jury. Mr. Al-Marimi welcomes these representations, which resolve much of the dispute raised in Sections II and III of his motion. *See* ECF 529.

Mr. Al-Marimi respectfully requests that the Court hold the Government to its word and adopt these commitments as express terms of any order on this motion, so that they are binding at trial and enforceable by objection rather than dependent on the government's continued exercise of discretion.

## II. Mr. Dornstein's Proposed Foundation Testimony Should be Limited to What He Actually Observed, and Does Not By Itself Establish that the Footage is Unaltered or Accurately Depicts the Events it Purports to Show.

The government's response confirms that Mr. Dornstein's personal knowledge extends only to the process by which he obtained the footage: he traveled to the Libyan state television station, observed employees consult a ledger and retrieve footage from storage, and watched that footage played for him. Mr. Al-Marimi does not dispute that Mr. Dornstein may testify to these observations, which are properly within his personal knowledge under Rule 602.

Mr. Al-Marimi disputes, however, the government's suggestion that this testimony, standing alone, is sufficient to authenticate the footage as an accurate and unaltered depiction of the events it purports to show—namely, Megrahi's return to Libya, his exit from the plane, and the embrace with an unidentified person. Mr. Dornstein's testimony establishes, at most, that the television station retrieved and played footage from its archives for him during his visit. It does not, without more,

establish: (a) when the underlying footage was originally recorded; (b) whether it had been edited, spliced, or altered between its original recording and Mr. Dornstein's viewing, or between his viewing of it and its use in the documentary; or (c) the chain of custody for the footage within the television station prior to Mr. Dornstein's visit.

That evidence proffered by the government, including a higher resolution photograph purportedly from Reuters that depicts a substantially similar event (Megrahi's arrival on the tarmac in Libya after his compassionate release),[2] at most supports that an event matching this general description took place and was captured contemporaneously by more than one source. It does not, standing alone, establish (a) that the specific footage the government intends to play at trial—as retrieved by Mr. Dornstein, incorporated into the documentary, and now offered for publication to the jury—is an unaltered, unedited version of what was originally recorded; (b) the chain of custody of that footage within the television station before Mr. Dornstein's visit; or (c) the identity of the individuals depicted in the footage, which the government acknowledges it intends to establish through Ms. Pargeter's separate testimony rather than through the news photograph or Mr. Dornstein.

Mr. Al-Marimi accordingly does not ask the Court to disregard the news

[2] The government does not express any intention to offer the news photograph into evidence, but Mr. Al-Marimi does not dispute that the Court may consider it when ruling on the admissibility of evidence, or that the photograph may provide limited corroborative authentication to the extent the underlying logic is consistent with *United States v. Rembert*, 863 F.2d 1023 (D.C. Cir. 1988). That case involved more robust circumstantial evidence, of course: the court relied on testimony "by the victim witnesses as to the occurrences at the ATM machines, together with the testimony of Wohlfarth as to the loading of the cameras and the security of the film, coupled with the internal indicia of date, place, and event depicted in the evidence itself . . . ." *Id.* at 1028.

photograph as corroborating evidence of the scene depicted. But even assuming the news photograph provides circumstantial evidence that supports foundation as to the footage of Megrahi disembarking the plane, there is no similar circumstantial support for other parts of the footage that do not have such independent corroboration. The government does not identify any separate photograph of Megrahi's embrace of the unknown individual, for example. While the original footage may consist of one unbroken recording, that is not how it was presented in Mr. Dornstein's documentary, and without similar circumstantial support of the kind discussed in *Rembert*, there is insufficient foundation for the other clips.

Mr. Al-Marimi asks that the Court require the government to identify, prior to trial, the complete evidentiary basis—including Mr. Dornstein's testimony, the news photograph, and any other evidence—on which it intends to rely for each element of authentication, so that Mr. Al-Marimi may raise any remaining, more targeted authentication objections (for example, as to editing of the specific clip or chain of custody preceding Mr. Dornstein's visit) before the footage is published to the jury. As it stands, the government's proffer is insufficient in the ways identified.

## III. The "General Description" of the Documentary Should be Defined in Advance to Prevent the Reintroduction of the Concerns Raised in Mr. Al-Marimi's Original Motion.

The government states that, "[a]bsent the defense opening the door," it does not intend to elicit testimony about specific parts of Mr. Dornstein's documentary "aside from a general description of it." Mr. Al-Marimi is concerned that an undefined "general description" could reintroduce the very risks addressed in Sections III and V of his original motion—namely, that Mr. Dornstein's dual role as journalist and

bereaved family member will allow the jury to receive, in substance, his investigative conclusions or the documentary's narrative framing, dressed as innocuous background.

Mr. Al-Marimi requests that any "general description" of the documentary be limited strictly to neutral, non-substantive facts—for example, that Mr. Dornstein produced a three-part documentary that aired on PBS in 2015—and that the Court preclude any testimony regarding the documentary's thesis, conclusions, reception, or the results of Mr. Dornstein's broader investigation, consistent with the relief requested in Mr. Al-Marimi's original motion.

**IV. The Court Should Confirm that Mr. Dornstein Will Not be Asked, Directly or Indirectly, to Suggest that the Man Depicted in the Footage is Mr. Al-Marimi.**

The government's response states that it "expects that its Libyan history expert, Alison Pargeter," will identify Senussi, Megrahi, Rashid, and Saif al-Islam in the footage, and that the jury will have "sufficient basis to conclude that the person the government contends is the defendant is in fact him" through comparison with Mr. Al-Marimi in the courtroom. *See* ECF 543.

Mr. Al-Marimi is concerned that the government's response does not foreclose the possibility that Mr. Dornstein's testimony—through sequencing, emphasis, or the framing of questions about the footage—could effectively communicate to the jury an identification that the government represents it does not intend to elicit. Mr. Al-Marimi requests that the Court's ruling make explicit that Mr. Dornstein may not be asked to identify, characterize, or otherwise comment on the identity of the individual the government contends is Mr. Al-Marimi, whether directly or through testimony

designed to invite that inference, consistent with the government's own representation that it does not intend to elicit such testimony.

## CONCLUSION

For the foregoing reasons and those set forth in his original motion, Mr. Al-Marimi respectfully requests that the Court grant the motion *in limine*, incorporate the government's representations as binding order terms, and grant the additional relief requested herein.

Respectfully submitted,

**ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI**

By: ________/s/______________________

Whitney E.C. Minter
Va. Bar # 47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
Laura_Koenig@fd.org (email)