**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD** | : | |
| **MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**SUPPLEMENTAL PLEADING REGARDING CHALLENGE TO DEFENDANT'S
STATEMENT UNDER THE FEDERAL RULES OF EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this further Supplement regarding the defendant's challenge to portions of his statement under the Federal Rules of Evidence [ECF 231].

By this pleading, the government (1) submits annotated versions of the diagrams that were shown during the hearing on July 30, 2026, and (2) provides further argument responsive to the Court's questions at that hearing about portions of the defendant's statement describing congratulatory remarks by former Libyan leader Muammar Qaddafi.

**A. Conspiracy diagrams.**

The attached diagrams are a summary of the government's evidence supporting each of the three discrete conspiracies that the government has identified as bases for the admission of co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). They have been updated from the versions shown during the hearing on July 30, 2026, to add citations to any exhibits or testimony that have already come before the Court. In the case of witnesses whose testimony has not yet been taken, the diagrams reflect the witness's anticipated trial testimony based on their prior statements and testimony. The citations to "Tunstall Tr." refer to the testimony of Special Agent Tunstall at the suppression hearing, 2/11/26 a.m. Tr.

**B. Qaddafi's statements.**

According to the defendant's statement, about three months after the bombing of Pan Am Flight 103, Qaddafi "praised and thanked us for performing a great patriotic act against the Americans and said that the operation had been carried out with precision." The defense has challenged Qaddafi's statement as hearsay. The government offers the following further articulation of its arguments for admission of Qaddafi's congratulatory remarks.

First, the challenged statements are not hearsay because they are offered for the non-truth purposes of (a) showing the defendant's state of mind; (b) providing context to make intelligible Qaddafi's expression of gratitude; and (c) showing the defendant's status within the ESO, as relevant to his role in the conspiracy. Second, if the challenged statements are construed as assertions being offered for their truth, they are assertions only of Qaddafi's relevant state of mind and therefore admissible under Rule 803(3).

1. <u>The statements have multiple non-truth uses.</u>

The defense appears to have conceded that the implications of Qaddafi's statement, and not its literal assertions, are what make the statement relevant. *See* 6/1/26 Tr. at 116 (defense counsel: "[I]t is not just 'thank you.' There is a whole lot of more detail that requires inferences, and ***those inferences are what matters***." (emphasis added)). When a statement is offered for what it implies rather than what it explicitly asserts, it is not hearsay, because it is not being offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). *See also* Fed. R. Evid 801, Advisory Committee Note (explaining that "verbal conduct which is assertive but offered as a basis for inferring something other than the matter asserted" is "excluded from the definition of hearsay by the language of subsection (c)"); 30 Fed. Prac. & Proc. Evid. § 6572 (2d ed.) ("The dominant position is that statements used to prove implicit (implied) assertions are not hearsay[.]"

(citing Advisory Committee Note and various cases including *United States v. Long*, 905 F.2d 1572, 1579 (D.C. Cir. 1990))).

Qaddafi's statements to the defendant – and, in particular, the way the defendant reacted to and later recounted those statements – are relevant to the defendant's state of mind, particularly his understanding of the operation he was tasked to carry out.

*Intent* – As the Court has previously ruled in the context of the La Belle Rule 404(b) evidence, the government must prove that the defendant acted "willfully," and to do so it must establish that he had some understanding of what his bomb would be used for. *See* 6/8/26, 1:32pm Tr., at 29-31. Qaddafi's statements confirmed for the defendant that the intended purpose of the bomb was to do exactly what it did: destroy a U.S. civil aircraft and its passengers. Granted, these statements came after the fact. But in recounting the conversation to Jamal, the defendant expressed no surprise or disappointment at being told that his operation was considered a success. The defendant could have told Jamal, "I was upset to learn that the ESO had targeted civilians on purpose," or "I was surprised to hear Qaddafi describe the operation that way," but he did not, and that silence is evidence of his preexisting understanding.[1] This omission is especially significant because, elsewhere in the defendant's statement, he revealed to Jamal his willingness to disagree with his superiors, even at some risk to himself. *See* Ex. 501 at 20-22 (describing operation in Pakistan that defendant, without authorization, aborted).  In contrast, when talking to Jamal years later, the defendant would have risked nothing by distancing himself from Qaddafi's description of Pan Am Flight 103 as a "patriotic act." But instead, he only noted the benefits conferred upon

---

[1] Notably, this basis of admission does not depend on whether the conspiracy's authors *actually* planned for the bomb to destroy an American aircraft. Hypothetically, if Senussi had intended that the bomb detonate on the ground without hurting anyone, the defendant's lack of surprise when being told "the operation was carried out with precision" would still be evidence of his own intent.

him as a result of Qaddafi's appreciation. *See* Ex. 501 at 19 ("We left about an hour later after Abdullah Al-Sanusi had been tasked with looking after us and granting all our requests.").

*Context* – At the July 30 hearing, the Court appeared to agree that "he praised and thanked us" is not hearsay being offered for the truth of any matter asserted. The Court then openly contemplated whether the remaining portions of the statement could be redacted. They should not be redacted because those portions of Qaddafi's statement are necessary to make Qaddafi's expression of praise and thanks intelligible by showing what he was thankful for. Portions of statements like these are not hearsay when they provide context necessary for neighboring non-hearsay statements that would otherwise be unintelligible. *See, e.g.*, *United States v. Gaytan*, 649 F.3d 573, 580 (7th Cir. 2011); *United States v. Thomas*, 370 Fed. Appx. 8, 14 (11th Cir. 2010). Expressions of thanks and praise are meaningless unless it is known what the recipient is being thanked and praised for.

*Defendant's Position of Trust* - Qaddafi's statements to the defendant are circumstantial evidence of the position of trust the defendant held within Qaddafi's ESO. It stands to reason that an operation like the bombing of Pan Am 103 would only be assigned to personnel who were regarded by their superiors as loyal, reliable, and trustworthy. Otherwise, the potential for the operation to fail, or for Libya's responsibility to afterward become public, would be too great a risk to bear. For Qaddafi to meet with the defendant personally – and more than that, for Qaddafi to reveal to the defendant that he knew about and endorsed the operation – is circumstantially indicative of the trusted position that the defendant held within the ESO. It tends to prove his status as a suitable candidate to carry out a mission like the bombing of Pan Am Flight 103. Courts have affirmed the non-truth use of statements to circumstantially establish the relationship between participants in a conversation. *See, e.g.*, *United States v. Mazyak*, 650 F.2d 788, 792 (5th Cir. 1981).

In one such case, the Tenth Circuit identified the same error that the defense has often made in this case, conflating what a statement is being offered to *prove* with what the statement *asserts*: "This argument misconceives what it means to say that a statement is 'offered in evidence to prove the truth of the matter asserted.' It appears to say that if a statement is used as evidence of a proposition, the declarant has "asserted" that proposition and the statement is therefore hearsay. But that is not correct." *United States v. Cesareo-Ayala*, 576 F.3d 1120, 1129 (10th Cir. 2009).

The relevance of relationships is why, even if the Court rejects the government's arguments about a broader conspiracy to attack westerners or to operate the "joint enterprise" of the ESO, it is still significant that the defendant, his ESO colleagues, and Qaddafi were all bound together by an ongoing organizational structure. This is not a case where the conspirators joined together solely to accomplish a discrete unlawful objective and then went their separate ways, reuniting later by happenstance to reminisce about their shared criminal history. Instead, the offense conduct is inseparable from the broader command-and-control relationships that motivated and facilitated it. Qaddafi's words of congratulations to the defendant are highly probative evidence of the existence and nature of their structural relationship, and their relevance for that purpose does not depend on the objective truth of the assertions that the bombing was "a great patriotic act" or that it was "carried out with precision." The statements are therefore not hearsay if offered for this purpose.

On that same note, Qaddafi's congratulatory remarks are an example of the "interdependence" supporting the government's argument that the La Belle bombing, the Pan Am 103 bombing, and other terrorist acts by the ESO were part of a broader conspiracy, and not just discrete separate conspiracies. When describing the aborted Pakistan operation later in his statement, the defendant explained why he was not suspected of sabotaging the mission:

> A committee was formed in the Directorate to examine the materials, the explosive device and the detonator. They found that the equipment was working perfectly but

they never investigated me. I believe the reason was that my bosses were totally convinced that there could be no doubts to suggest that I would (deliberately) not carry out the operation. That was because of my previous work, and also because I had carried a suitcase containing explosives and taken responsibility for it in a foreign state.

Ex. 501 at 22. This part of the statement makes explicit what would otherwise be a strong inference: that a person's successful participation in one episode of an ongoing conspiracy makes them a more trusted and proven candidate to participate in the next episode. That is true in the more familiar context of drug crews engaged in ongoing trafficking activities – the apt analogy cited by the government during the July 30 hearing – and it is true here as well. If the Court accepts that there was an ongoing Libyan conspiracy to commit terrorist acts against the West, then Qaddafi's congratulatory remarks were plainly in furtherance of that conspiracy. But if the Court rejects that theory, all the arguments above and below still hold.

2. Qaddafi's state of mind is relevant for multiple reasons.

When addressing any hearsay objection, it is necessary first to determine whether the challenged statements are "assertions" and, if so, what they are asserting. Here, Qaddafi's remarks are at most assertions of pure opinion that convey nothing more than his own subjective view of events. Describing the bombing of Pan Am 103 as "a great patriotic act," or as an "operation [that] had been carried out with precision," are not assertions of fact. If they are asserting anything, they are asserting Qaddafi's then-existing mental state, specifically, his satisfaction with the result of his subordinates' conduct.

The D.C. Circuit has explained the distinction between statements that circumstantially show a person's state of mind versus statements that directly assert that state of mind:

In showing the declarant's state of mind the statements may either consist of direct or circumstantial evidence. Thus the statement 'X is no good' circumstantially indicates the declarant's state of mind toward X and, where that mental state is a material issue in the case, such statement would be admissible with a limiting

instruction. Technically it is not even hearsay since it is not being admitted for the truth of the matter alleged. We do not care whether X is in fact 'no good' but only whether the declarant disliked him. However direct statements are also admitted. Thus the statement 'I hate X' is direct evidence of the declarant's state of mind and, since it is being introduced for the truth of the matter alleged, must be within some exception to the hearsay rule in order to be admissible.

*United States v. Brown*, 490 F.2d 758, 762–63 (D.C. Cir. 1973). Ultimately, the distinction "is not very important" because the state-of-mind exception would permit "I hate X" to be introduced for its truth. *Id.* at 195; *see also* Fed. R. Evid. 803(3) (hearsay exception for "a declarant's then-existing state of mind").

Here, Qaddafi's then-existing state of mind is relevant for at least two reasons, both of which must be evaluated under the exceedingly generous standard for relevance in the Federal Rules: whether the evidence has "*any* tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also United States v. Green*, 149 F.4th 733, 755 (D.C. Cir. 2025) ("Ultimately, the bar for relevance is low[.]").

***Motive***: The government's theory of the case is that the bombing of Pan Am 103 was motivated by Qaddafi's desire for revenge against the United States after the U.S. bombing of Tripoli in 1986. For this theory, it matters little whether Qaddafi explicitly became a member of the conspiracy by ordering the bombing of Pan Am 103, or whether he just implicitly signaled his desire that something like the bombing of Pan Am 103 be committed, or whether his subordinates mistakenly believed that he wanted something like the bombing to happen. Regardless, Qaddafi's perceived desire for violent revenge is a critical part of the government's case, because the more likely it was that the participants believed Qaddafi approved of what they were doing, the more likely they had a motive to commit the offense. *See* 6/8/26, 1:32pm Tr., at 31-32 (Court explaining that motive to kill Americans is relevant because "probative of the incentives and priorities of the defendant and, thus, will have a tendency to make it more or less probable that the defendant

7

committed the charged offense" (citing *United States v. Sanford Limited*, 878 F.Supp.2d 137, 145 (D.D.C. 2012)). Fundamentally, the perpetrators committed the bombing because they thought it was consistent with Qaddafi's wishes, and the government expects that the ESO Witness will testify that an operation like the Pan Am Flight 103 bombing would not have been carried out except with Qaddafi's express or tacit approval.

Qaddafi's after-the-fact satisfaction with the result is supportive of an inference that, at the very least, he conducted the ESO's affairs in a way that caused his subordinates to perceive that he would approve of their bombing a U.S. civil aircraft. A person's satisfaction with an outcome is strongly suggestive that it was an outcome they desired. And Qaddafi's subjective opinion that the operation was achieved "with precision" implies knowledge of the operation's objective, plausibly supporting an inference that he discussed the operation with Senussi or others beforehand. Although Qaddafi's after-the-fact statements are theoretically consistent with a scenario where he was taken completely by surprise by the actions of his subordinates, the more plausible inference is that he made his wishes known ahead of time. This meets the low bar of relevance.

*Lack of cooperation in the investigation:* Qaddafi's state of mind with respect to the Pan Am 103 bombing is also relevant to help explain the long delay before charges in this case and the lack of inculpatory evidence originating from Qaddafi-era Libya, relative to what one might expect from a normal government. When a mass-casualty terrorist attack is committed, sovereign nations usually share an interest in identifying the perpetrators and bringing them to justice. That was decidedly not the posture of the Libyan government under Qaddafi, and the reason is because he approved of what his subordinates had done. Qaddafi's express endorsement of the bombing of Pan Am 103 is relevant to support inference that his government declined to cooperate in good faith with the investigation of the bombing, which would refute any juror's inaccurate belief that,

if the ESO really perpetrated the crime, the prosecution should possess documents provided by the Libyan government substantiating that allegation. By the same token, Qaddafi's satisfaction with the bombing is evidence that makes more likely the existence of an after-the-fact conspiracy to impede the investigation and apprehension of the perpetrators.

      3.  <u>If necessary, a limiting instruction can be given.</u>

As noted previously, the government does not seek to offer Qaddafi's remarks for the truth of what is literally being asserted: that the bombing was a "patriotic act" that was "carried out with precision." The government would not object to a limiting instruction telling the jury not to use the statement as proof that the bombing was patriotic or precise.

And there is scant risk the jury would use Qaddafi's words as direct evidence of the defendant's guilt, particularly in the context of the statement as a whole. Qaddafi's congratulatory remarks are established by the defendant's statement, which also includes the defendant's detailed admissions of his own role in the bombing. It would be a very different matter if the Qaddafi statement came from a different source: for example, a cooperating witness testifying about a conversation outside the defendant's presence where Qaddafi said he was grateful for the defendant's good work on the Pan Am 103 operation. There, the defendant might reasonably be prejudiced by the implied assertion of his involvement. But the situation here is different: before the jury could even begin to consider Qaddafi's remarks as implicitly asserting the defendant's participation in the operation, the jury would already necessarily have credited the defendant's own explicit admissions. *Cf.* 6/8/26, 1:32pm Tr., at 49 (Court's La Belle ruling: "The jury is likely to believe that the defendant's entire confession is genuine, voluntary, and reliable or that it is not.").

## CONCLUSION

For the above reasons, the Court should admit all of the challenged portions of the defendant's statement.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:     */s/ Conor Mulroe*
        CONOR MULROE (NY Bar No. 5289640)
        ERIK M. KENERSON (OH Bar No. 82960)
        BRITTANY KEIL (D.C. Bar No. 500054)
        Assistant United States Attorneys
        JEROME J. TERESINSKI (PA Bar No. 66235)
        Special Assistant United States Attorney
        601 D Street NW, Washington, D.C. 20530
        (202) 740-4595 // Conor.Mulroe@usdoj.gov

        KATHLEEN CAMPBELL (MD Bar No. 9812170031)
        JENNIFER BURKE (MD Bar No. 9706250061)
        Trial Attorneys, Counter Terrorism Section
        National Security Division
        950 Pennsylvania Avenue NW, Washington, D.C. 20530