**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD** | : | |
| **MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**SUPPLEMENT REGARDING EVIDENCE LABELS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Supplement regarding Scottish Evidence Labels that are attached to some of the government's proposed trial exhibits. This pleading addresses the application of the Confrontation Clause to the content of the labels. For the following reasons, the Confrontation Clause does not preclude admission of the labels for the truth of matters asserted on them.

**FACTS**

The investigation of the bombing of Pan Am 103 was conducted through the cooperation of U.S. and Scottish law enforcement. The recovery of evidence from the large area where debris from the explosion was scattered was led by the Scottish authorities in whose territorial jurisdiction that location fell.

As discussed in a Declaration previously submitted by the government, each piece of evidence collected during the investigation was "immediately" given an Evidence Label that contained the following information: (1) the name of the police agency; (2) a unique "label number"; (3) a description of the item; (4) a description of where the item was found; (5) the date of its collection; and (6) signatures of the officer who obtained the item and others who identified, examined, or handled the item. *See* ECF 242-1 at 2-3 [the "Scottish Declaration"].

The Scottish police also generated other records relating to items of evidence including, as relevant here, "Witness Statements" that "reflect verbatim statements provided by persons with knowledge about relevant facts and evidence" and that are "sign[ed] and adopt[ed] as [the witness's] formal statement." *Id.* at 4.

In preparing this pleading, the government conferred with the Scottish authorities to better understand what if any judicial function the Evidence Labels might have been expected to perform at the time of their creation. Based on that discussion, the government can proffer that, in the Scottish system, Evidence Labels are used in much the same fashion contemplated by the Court when describing the use of evidence labels in U.S. court proceedings: law enforcement officers often consult the label to verify that an item of evidence is the same item collected by the officer. The government inquired what would happen if no officer was available to testify about the provenance: in those circumstances, could the label be used to establish where the item came from? The answer is no: if no witness were available, the provenance of the item could be established through the use of the Witness Statement(s) that documented the original collection of the item. As noted above, these Witness Statements are formal verbatim narratives that are signed and adopted by the witness (who, in this scenario, would be the police officer who collected the item). It is required that a Witness Statement exist to document the collection of each piece of evidence, and under the applicable hearsay exceptions in Scottish law, these Witness Statements – and not the Evidence Labels – would be relied upon in the absence of a live witness.

The Scottish authorities also provided further context about the role of investigators in response to incidents like the explosion of Pan Am Flight 103. Scotland's prosecuting authority, the Crown Office and Procurator Fiscal Service ("COPFS," or the "Crown Office") is "Scotland's public prosecution service and death investigation authority." *See* https://www.copfs.gov.uk/. As that description reveals, the Crown Office's role is not limited to prosecuting criminal offenses. It also

investigates "sudden, unexplained[,] or suspicious death[s]" through a process known as "Fatal Accident Inquiry," the purpose of which is "to establish what happened and prevent future deaths from happening in similar circumstances." COPFS, "Guide to Fatal Accident Inquiries" (09 July 2023)[1] During a Fatal Accident Inquiry, evidence is provided through live testimony, or "[s]tatements given by the witnesses to police officers may be read out as all or part of their evidence." *Id.*

In this case, a Fatal Accident Inquiry was held from October of 1990 to February of 1991, resulting in the release of a 99-page report.[2]

## ARGUMENT

### A. The content of the labels is not testimonial.

The Confrontation Clause does not preclude the jury from receiving the Evidence Labels and making any relevant inferences based on what is written on the labels, because the labels are not testimonial. Under any version of the Supreme Court's primary purpose test, the labels were not created for the primary purpose of acting like testimony in a future criminal proceeding.

1. Evidence labels serve multiple non-criminal purposes.

To start, the labels had substantial purposes that had nothing to do with any future criminal trial. In particular:

a. Tracking the evidence was necessary for the non-criminal Fatal Accident Inquiry

As noted in the Facts section above, the Scottish authority overseeing the investigation – the Crown Office – has concurrent jurisdiction over both criminal investigations and non-criminal inquiries into suspicious, sudden, or unexplained deaths. When investigating the destruction of Pan Am Flight 103 under the direction of the Crown Office, the Scottish police were therefore pursuing

---

[1]  *Available at*  https://www.copfs.gov.uk/services/bereavement-support/guide-to-fatal-accident-inquiries/.

[2]  Available in discovery at HS-USAO-000172859, along with other records from the proceeding.

parallel criminal and non-criminal purposes. The evidence they collected and tagged was just as relevant to the Fatal Accident Inquiry as to any future criminal trial. If anything, the Fatal Accident Inquiry was the *more* likely proceeding in which the evidence would be used, since that would take place regardless of who or what caused the crash, while a criminal trial would only occur if any suspects were ultimately identified, charged, and apprehended.

On a previous Confrontation Clause issue, the government argued that a certain statement was non-testimonial in part because it was made before the investigators determined for sure that the destruction of Pan Am Flight 103 was a crime rather than an accident. The Court adopted this reasoning, basing its ruling in part on the fact that, at the time of the statement in question, "the cause of the Pan Am Flight 103 crash was not yet known," making it "difficult to characterize the early investigators' 'primary purpose' as being related to a criminal proceeding." Mem. Op. at 7.

On the current issue, the government expects that some of the Evidence Labels will have been created after it had become known that the crash was likely caused by a criminal act. However, that chronology is not controlling given the above-summarized facts about Crown Office's concurrent jurisdiction over criminal and non-criminal inquiries. As noted above, the Fatal Accident Inquiry concluded in February of 1991. Until that time, the investigation of the crash was not exclusively a criminal inquiry from the perspective of the Scottish authorities.

This analysis is not inconsistent with the line in *Davis v. Washington* that statements "are testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). *Davis* was addressing the special case of police interrogations which generally "fall squarely within the class of testimonial hearsay." *Davis*, 547 U.S. at 826 (quoting *Crawford v. Washington*, 541 U.S. 36, 36 (2004) (cleaned up)). When a witness is making a statement to an officer, the confrontation analysis turns on why the

police are asking the questions: whether to "establish[] the facts of a past crime" or for another purpose like responding to an ongoing emergency. *Id.* But outside the context of police interrogations, there is no such presumption that a statement is automatically testimonial once the purpose shifts to proving past events. That is true even when the statement is made in a context entirely oriented toward the prosecution of a crime, as the result in *Smith* illustrates. If "prov[ing] past events potentially relevant to later criminal prosecution" were sufficient to make the Confrontation Clause attach, there would have been no need to remand in *Smith.* Accordingly, when the challenged statement was made in circumstances other than during a police interrogation, it is not necessary that the government establish that there was an ongoing emergency.

      b.   <u>Tracking the evidence was necessary for the police's internal administration.</u>

The Scottish investigation of the bombing of Pan Am Flight 103 resulted in the collection of tens of thousands of items of physical and documentary evidence, and it was necessary to have a means of cataloguing and tracking these items.

As its name suggests, the primary-purpose test requires identifying the *primary* purpose of a document, as distinct from any "incidental or secondary use" *United States v. Caraballo*, 595 F.3d 1214, 1229 (11th Cir. 2010). Accordingly, immigration forms that generated in the "normal course of administrative processing" are non-testimonial, even if it is a foreseeable use that they may sometimes be used in court for the prosecution of immigration offenses. *Id.*; *see also United States v. Torralba-Mendia*, 784 F.3d 652, 666 (9th Cir. 2015) ("As with other evidence in an alien's A-file, the [I-213] documents are prepared for administrative purposes, not as evidence in a later trial. Accordingly, because the documents are not testimonial, their admission did not run afoul of the Confrontation Clause.").

Here, the clear purpose of the Evidence Labels was to assist the Scottish police in the administration of the extremely large investigation that was then underway. The explosion of the plane

resulted in a debris field consisting of countless pieces of potential evidence spread across hundreds of square miles; all of this (and, later, other evidence from other locations) had to be collected and catalogued in a way that would allow the investigators to know what all they had and where it could be found when needed.

The evidence was constantly needed for numerous purposes preliminary to any in-court presentation. As the Court has already seen, much of the evidence was sent to a forensic laboratory to be scientifically analyzed. Many other pieces of evidence were needed to be shown to potential witnesses (e.g., employees of clothing companies viewing clothing scraps to see whether they recognized it as one of their products). Various pieces of evidence needed to be compared alongside other pieces of evidence to find similarities or differences. The Evidence Labels helped to facilitate all of these tasks, and they all took place during a period of time when criminal charges were still an uncertain prospect. Any possible criminal trial was still years in the future, if it would happen at all.

Moreover, given the vast quantity of evidence collected, the likelihood that any particular label would ever make its way into court was miniscule. When any given officer completed any given Evidence Label, they would have foreseen that someone would need to refer back to it at some point for any of the reasons discussed just above. If asked, the officer would likely acknowledge the possibility that they might someday be called to testify about their discovery of the evidence and that the label might be useful in that scenario. But given the sheer improbability, by the numbers, that a given evidence label would ever see the inside of a courtroom, it is difficult to say that use in court was contemplated as the "primary purpose," rather than a purpose that is "incident or secondary" to the "normal… administrative processing" that was their main function. *Caraballo*, 595 F.3d at 1229.

c.  <u>Tracking the evidence was necessary to facilitate the return of property.</u>

One more important use of the labels bears mentioning. A great deal of the items recovered from the crash site were the belongings of the victims: suitcases, clothing, photographs, and all of the

countless personal effects that would be found in passengers' luggage on a large commercial flight. Although some such items eventually proved to have evidentiary value, most did not, and the investigating authorities consequently made efforts to return personal property to the victims' next-of-kin. This important task could not have been accomplished without a rigorous means of tracking what items had been recovered and where they could be found, and hundreds (if not thousands) of items were labeled when collected and returned to victims' families. For example, passports, driver's licenses, clothes, suitcases, photographs, undeveloped film, and other personal effects were labeled when collected and later returned if found to have no evidentiary value to the investigation.

      2.  <u>When used in court, evidence labels are never a "substitute" for live testimony.</u>

"Whether an out-of-court statement is testimonial turns on whether the statement was 'procured with a primary purpose of creating an out-of-court substitute for trial testimony.'" Dkt. 567 (sealed) at 4 (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)).

The Supreme Court's most recent opinion on the primary purpose test, *Smith v. Arizona*, instructed that the test requires an analysis of how the challenged documents compare, in terms of court-focus, with other types of documents generated by the same authors: "In… addressing the statements' primary purpose—why [the analyst] created the report or notes—the court should consider the range of recordkeeping activities that lab analysts engage in." *Smith v. Arizona*, 602 U.S. 779, 802 (2024).

This Court correctly applied that mode of analysis in its recent Confrontation Clause ruling. There the Court contrasted (on the one hand) preliminary lab notes with (on the other) the formal report that ultimately resulted from the lab's work. *See* Memorandum Opinion of 7/30/26 ("Mem. Op.") at 11. The "formal qualities" of the latter document, along with its "SUB-JUDICE" label and the fact that portions were read into the record at the Scottish trial, all served to clarify the distinction

between the Report (which is concededly testimonial) from the notes (which the Court rightly found were not).

The same contrast exists here between the Evidence Labels and the Witness Statements. The former consist of bare-bones data handwritten in the moment, approximately contemporaneously with the matter being observed (i.e., the collection of the item). The latter consist of detailed narrative statements given after the fact in a formalized style reminiscent of an affidavit. As an example, compare the exhibit label below:



*Ex. 211-03*

…With the corresponding Witness Statements, from two of the officers present, documenting the item's recovery:

**OFFICIAL**

Statement Number: S459H
Page 2 of 3

SECTION 3   [Free Text]

I am 30 years of age and have completed 11 years Police Service.

I am presently engaged on duties in connection with the Lockerbie
Air Disaster enquiry, emanating from the crash of Pan American
Flight No 103 over Lockerbie on 21st December 1988.

Part of my duties during this time has been the recovery and
seizure of a number of items including aircraft and other debris.
In this respect, on 25th December, 1988 I was part of a team of
Officers searching D Sector - in a field West of Carruthers
Farm.   I was present when witness DC Barclay found the
following item:

Prod No.       Piece of Metal with Black marks
        (Label No. PS14, PF547, AG152).

A Production Label was attached thereto.  I have signed this
label.

I thereafter accompanied witness DC Barclay when he conveyed this
item to the Property Store Dexstar where it was handed to an
Officer performing duty there.

*Available in discovery at HS-USAO-00054374*

**OFFICIAL**

Statement Number: S453P
Page 2 of 3

SECTION 3   [Free Text]

I am 36 years of age and have completed 9 years Police Service.

I am presently engaged on duties in connection with the Lockerbie Air Disaster enquiry, emanating from the crash of Pan American Flight No 103 over Lockerbie on 21st December 1988.

Part of my duties during this time has been the recovery and seizure of a number of items including aircraft and other debris.

In this respect on 25th December, 1988 I was part of a team of Officers searching D Sector - in a field West of Carruthers Farm when I recovered:

Prod No.       Piece of Metal with black marks
              (Label No's. PSI4, PF547, AG152).

I ensured that a label was attached to this item at the first available opportunity.

I have signed this label.

I thereafter conveyed this item to the Property Store Dexstar where it was handed over to a Police Officer performing duty there.

*Available in discovery at HS-USAO-00055793*

10

The language, appearance, and level of detail in the Witness Statements make clear they are "focus[ed] on court" in a way the Evidence Labels are not. *Smith*, 602 U.S. at 802. *See also* ECF 242-1 at 4 (Scottish Declaration, describing how Witness Statements are "sign[ed] and adopt[ed] as [the witness's] *formal statement*" (emphasis added)).

That conclusion is redoubled by the Scottish practice of using Witness Statements — and not Evidence Labels — to establish the provenance of items in the event all percipient witnesses become unavailable. When conducting the required consideration of the "range of recordkeeping activities" performed by the Scottish authorities, the Court should therefore find that the Evidence Labels were not made for the primary purpose "to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. The Witness Statements existed for that purpose instead.

3.   Any foreseeable "use" of the labels in a criminal trial was non-testimonial.

As established above, the labels were never intended to "substitute" for live testimony, meaning they are non-testimonial under the primary purpose test as articulated in *Bryant*. The government recognizes that, in the earlier case *Melendez-Diaz*, the Court indicated that the class of testimonial statements included those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be *available for use* at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004)). This is, at least superficially, a broader standard. *See Franklin v. New York*, 145 S. Ct. 831, 835 (2025) (Alito, J., respecting denial of certiorari). But *Melendez-Diaz*'s "available for use at a later trial" should not be read too broadly, because documents can be "used" in countless ways, and not all "uses" of a document in court are testimonial.

The Supreme Court's most recent Confrontation Clause case, *Smith*, confirms the above analysis. Although the Court did not resolve the testimonial issue in *Smith*, it provided clear guidance

11

on how the seven-Justice majority viewed the primary-purpose test, and for now it stands as the Court's latest word on the issue. In *Smith*'s remand instructions, the Court explained that if "analysts' notes" were "written simply as reminders to self," they "would not count as testimonial." *Smith*, 602 U.S. at 802. The implications of that statement are significant: The analyst in question was testing suspected narcotics seized from an identified suspect, who was already formally charged and at whose trial the analyst was expected to testify. *Id.* at 779-80. There is only reason an analyst would generate notes "as reminders to self" in these circumstances: to ensure that she could later recall the details of her work with sufficient clarity to give testimony against the defendant, including (if necessary) by viewing them in court to refresh recollection. Despite this clear expectation that the notes would in this way be "available for use at a later trial," the Supreme Court nonetheless considered them to non-testimonial. Thus "use at a later trial," in the *Melendez-Diaz* formulation, does not mean *any* use, but rather use as substantive evidence akin to an affidavit or live testimony. Indeed, that is the only way to harmonize the *Melendez-Diaz*'s "use at a later trial" language with *Bryant*'s "substitute for trial testimony" language.

Under the "use at a later trial" standard correctly understood, the Evidence Labels were not "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." At most, an objective witness would foresee that the labels could if necessary be used as a memory aid to assist a live witness. Accordingly, just like the *Smith* analyst's "reminders to self," the labels are not testimonial.

**B. The government's use of the labels is not to "evade" live testimony.**

Finally, it bears emphasizing that the informal nature of the labels was not a ploy to take them outside the ambit of the Confrontation Clause. The Supreme Court's Confrontation Clause cases have rightly recognized that the government cannot game the system by generating statements in a way designed to evade the Constitution's requirements. *See, e.g.*, *Davis v. Washington*, 547 U.S. 813, 826

(2006); *id.* at 838 (Thomas, J., concurring in the judgment in part and dissenting in part); *Bullcoming*, 564 U.S. at 671 (Sotomayor, J., concurring). That is not a concern here. The labels, by and large, were created almost 38 years ago, long before the development of modern Confrontation Clause jurisprudence, and in a foreign country with its own legal system. Moreover, the government's use of the labels in lieu of live testimony is not motivated by a desire to shield witnesses from cross-examination, but rather by the practical realities of this case. Accordingly, the Court should have no concerns about the constitutionality of admitting the labels for the limited purposes described above.

### C.  The presence of the labels, and not their content, are what really matters.

Even if the Court rejects the arguments above, the government should still be allowed to use the labels as non-hearsay. As explained below, these uses do not depend on the truth of any specific matter asserted by the labels' contents.

First, the Scottish police's *general practice* of using Evidence Labels supports an inference that the evidence in this case — both physical and documentary — was handled according to rigorous procedures. As suggested by the Court, the government plans to call a Scottish police witness to describe those procedures, with the anticipated testimony substantially mirroring the contents of the Scottish Declaration. *See* 11/12/25 Tr. at 29-30 (Court asking whether the intends to offer "testimony at trial regarding how the [Scots] kept the documents" and stating "I need a little more about what will come out at trial from the Scottish representatives or whoever is going to talk about the ways in which those documents were gathered and stored"). The use of labels will be part of that testimony.

During the July 30 hearing, the Court pressed the government on whether this use of the labels was hearsay, because if the contents of the labels were not "true," then they would support any inference of reliability. We submit, however, that the inference of reliability that comes from the labels' routine use does not depend on the truth or accuracy of *any particular* label. The presence of the labels shows that each piece of evidence was, from the moment of its discovery, handled carefully

and according to a well-established standard procedure. Those same inferences would flow even if the contents of the label were redacted so that the jury could not see the details of who purportedly found the item, where, and when. Accordingly, the labels when offered for this theory are not being offered for the truth of matters asserted on them, and no redaction is necessary.

Second, the presence of a label on a particular item of evidence serves to establish that the item was collected as part of this investigation, even without reference to any "statements" written on the label. During the July 30 hearing, the Court ruled that the government could use testimony about the Scots' general evidence-handling procedures to support inferences about the general origin of specific pieces of evidence. In the example cited by the Court,[3] if (1) testimony established that debris from the crash site was brought to a certain warehouse, (2) testimony established that a certain piece of evidence was stored at that warehouse; and (3) the evidence was consistent in appearance with what would be expected to have come from the crash site (e.g., a damaged piece of aircraft), that combination of factors would provide sufficient foundation for the jury to find that the evidence did, in fact, come from the crash site. This is a correct application of Federal Rule of Evidence 406 ("Evidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . .or routine practice."). The same reasoning applies to the evidence labels. The government's witnesses will establish that it was the routine practice of the investigators to apply evidence labels to the items collected during the search of the crash site. Accordingly, the presence of a label on an item is akin to that item's being stored at the warehouse in the Court's example.

The relevance of any label for this purpose does not depend on the accuracy of what is written on the label. The specific location and date of the items' recovery are, generally speaking, not facts

---

[3] The government does not yet have a transcript of the July 30 hearing. The summary above is based on undersigned counsel's recollection and notes.

of any importance to the government (although the government does plan to call one or more witnesses for specific testimony about their recovery of certain items of special significance). Accordingly, the same reasoning as above holds here: the labels are not being offered for the truth of a matter being asserted by their substantive content. They are not hearsay for this purpose, and the Confrontation Clause does not apply.

## CONCLUSION

For the above reasons, the Court should reject the defendant's Confrontation Clause arguments and allow the government to use the Evidence Labels in unredacted form at trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Conor Mulroe*
CONOR MULROE (NY Bar No. 5289640)
ERIK M. KENERSON (OH Bar No. 82960)
BRITTANY KEIL (D.C. Bar No. 500054)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
601 D Street NW, Washington, D.C. 20530
(202) 740-4595 // Conor.Mulroe@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys, Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW, Washington, D.C. 20530