**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cr-392 (DLF)** |
| | ) | |
| **ABU AGILA MOHAMMAD** | ) | |
| **MAS'UD KHEIR AL-MARIMI,** | ) | |
| **Defendant.** | ) | |

## MR. AL-MARIMI'S FURTHER MOTIONS *IN LIMINE* REGARDING GOVERNMENT TRIAL EXHIBITS

Mr. Al-Marimi respectfully submits these additional motions *in limine*, which address the government's proposed trial exhibits that the government has identified or updated since the previous round of exhibit litigation (ECF 483, 495, 507). Mr. Al-Marimi incorporates prior discussion of the rules of evidence from those pleadings.

## LAW AND ARGUMENT

### I. Family visa applications

The government previously moved *in limine* regarding its ability to use Mr. Al-Marimi's calls with his family and his family's applications for U.S. visas to corroborate minutiae in the alleged confession. ECF 525, at 3–5. The government recently provided the defense with copies of the visa applications, identified as exhibits 519.001–519.006.

Mr. Al-Marimi maintains his objections to this category of evidence for the reasons previously stated. *See* ECF 545, at 5–8. Separately, Mr. Al-Marimi objects to some of the contents in the visa applications under Rules 402 and 403 as irrelevant and unfairly prejudicial. Fed. R. Evid. 402, 403.

Each visa application exhibit includes a consular certification; a series of internal-facing data entries about the applicant, including biographical information taken from the underlying application, narrative case notes authored by a U.S. official, and the outcome of application; and a digitized copy of the application itself.

The government has argued that the only relevant information in all of this are the names, appearances, and reported ages of each family member. Even assuming such information is relevant, Mr. Al-Marimi objects to the inclusion of the narrative case notes and adjudication histories as irrelevant and likely to distract, confuse, and enflame the jury.

In addition to discussing other extraneous details like the family's living situation and the occupations of Mr. Al-Marimi's children, the notes offer the opinions of the unidentified U.S. officials who reviewed the applications and met with the family. For example, each exhibit states "Conoff has too many doubts about adult children, weak ties to Libya, wife is ok[,]" suggesting the family might seek to overstay their visas and that this was merely a ruse to enter the United States.

Worse, each exhibit also includes case notes about an event involving one family member allegedly possessing a cellphone despite instructions not to, an event that purportedly caused all the applications to be denied *on suspicions of terrorism*:

**Adjudication History**

| Adjud Date | Status | Refusal | Section of Law | O/W? | Approval Date |
|---|---|---|---|---|---|
| | | G | 221(G) | | |
| 30-JAN (January)-2023 | Refused | P3B | 212(A)(3)(B) | | |
| | | R | 214(B) | | |

| | | |
|---|---|---|
| 30-JAN (January)-2023 | [redacted] | Applicant pulled out his mobile phone- which applicants are not allowed to have and must put into lockers during security checkin prior to interview- in order to find his email as ConOff asked for a good email for the DS-5535, the phone was turned off, but as the interview was over, he was told to leave, [redacted] will follow-up on incident if it was intentional or not. |
| 30-JAN (January)-2023 | [redacted] | Applicant accompanying her (family member) [redacted] reviewed security cameras of Consular waiting room and entrance/ security checkpoint. The applicant was seen on video hiding a phone in one pocket and told the LGF that he did bring in two phones, one which he have to the guards to be in the locker and the other he kept in his pocket to intentionally conceal it. He put his hand in his pocket with the phone and showed his watch to deceive LGF. |
| 30-JAN (January)-2023 | [redacted] | That family member who was travelling with her did not mention a motive but given family connections and purpose of travel to U.S., ConOff, in concurrence with Con Chief, now finds him 214b and P3B. |
| 30-JAN (January)-2023 | [redacted] | Applicant's intentions are now in doubt due to how the security incident with her family member played out, they arrived together and conoff cannot confirm that she was not involved in the plot. conoff finds applicant 214b and p3b, [redacted] |

The notes reflect that the applications were denied based on this incident, which resulted in each family member being classified "P3B"—"indicating that the individual might be refused a visa for terrorist activities."[1] Mr. Al-Marimi takes issue with the unidentified officials' characterization of the event and related findings, but in any event, the notes invite the jury to conclude the family had nefarious intentions and to associate those intentions with Mr. Al-Marimi.

The government has not acknowledged these portions of the visa applications in its briefing or put forward any relevance argument. Notably, other portions of the visa application exhibits already are redacted, but not these notes. If the Court admits the visa application exhibits, Mr. Al-Marimi requests that the exhibits be redacted further or limited only to the certification and the underlying applications.

---

[1] U.S. General Accounting Office, *Border Security: New Policies and Procedures Are Needed to Fill Gaps in the Visa Revocation Process* (June 2003), at 21 n.21, https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-03-798/pdf/GAOREPORTS-GAO-03-798.pdf. *See also* 8 U.S.C. § 1182(a)(3)(B) (declaring inadmissible applicants who a consular official has reasonable ground to believe is likely to engage in terrorist activity).

## II. U.S.–Libya exhibits

The government has identified an additional series of images and videos relating to the opinions of its U.S.–Libya expert, Alyson Pargeter. Mr. Al-Marimi objects to the following exhibits under Rules 402, 403, and 801.

| | |
|---|---|
| <br><br>Exh. 404 – Reagan speech | The Court has excluded reference to this address, per its 8/21/2026 Minute Order.<br><br>Depicts a 4/14/86 address by President Reagan regarding the retaliatory bombing of Libya following the La Belle incident. The 7-minute address refers to Libya's "terrorist facilities" and its "terrorist attacks launched against American citizens." Describes the La Belle attack as "monstrous brutality." States "the evidence is now conclusive that the terrorist bombing of La Belle Discotheque was planned and executed under the direct orders of the Libyan regime." Refers to "orders" sent from Tripoli on 3/25 to "conduct a terrorist attack against Americans to cause maximum and indiscriminate casualties" and confirmations sent by the attackers on 4/5 and 4/6. States "our evidence is direct, it is precise, it is irrefutable. We have solid evidence about other attacks Qaddafi has planned" against other civilian targets. These statements all occur within the first few minutes.<br><br>Hearsay. Blame-laying statements by a U.S. President, designed to win support for military action by arousing nationalist sentiments through the use of impactful and emotional language, are highly prejudicial. Arouses fear and anger towards Libya. References to "conclusive" and "irrefutable" proof that will not be presented to the jury risks inviting a verdict based on the unseen proof. As one of the only video exhibits, will attract the jury's full attention. |

| | |
|---|---|
| <br><br>Exh. 405 – Fist monument | Depicts monument at the site of Qaddafi's former residence in Tripoli, which was destroyed by the 1986 U.S. bombing. It is a fist clenching a U.S. military aircraft, commemorating an F-111 that was shot down by a Libyan SAM missile. In this image, the fist is coated in a reddish substance and appears bloody.<br><br>The image of a bloody fist clutching a destroyed U.S. aircraft is highly likely to enflame the jury's passions, as Mr. Al-Marimi is charged with destruction of an aircraft resulting in death. Even without the apparent blood, the fist impermissibly risks enflaming national sentiments, as the jury is American and Mr. Al-Marimi is Libyan. There is no evidence Mr. Al-Marimi ever visited the monument or endorsed its message. |
| <br><br>Exh. 406 – Qaddafi with fist monument | Depicts Qaddafi in non-military garb speaking in front of the fist monument, which does not have the red coating visible in Exh. 405.<br><br>Same objections as Exh. 405. The fist remains prejudicial even when not bloodied, though the blood heightens the prejudice significantly. |
| <br>Exh. 407 – Revolution crowd | Depicts a crowd in Tobruk during Libyan revolution. The shot is angled and low, looking up past a sea of raised hands and fists at people standing on the roof of a singed and graffitied building.<br><br>The framing of this picture risks inciting emotions, as the viewer is situated inside an angry crowd in a setting unfamiliar to U.S. civilians outside of war movies. Irrelevant, and prejudice outweighs any probative value. |

| | |
|---|---|
| <br>Exh. 408 – Revolution crowd | Depicts a crowd during the Libyan revolution. People are holding signs and waving flags, and a giant Libyan flag is carried by the group.<br><br>Irrelevant. Unconnected to Mr. Al-Marimi.<br><br>Otherwise, this image is a useful contrast to Exh. 407, as it is distant rather than proximate and the framing is otherwise less likely to enflame emotions (protest versus riot or warzone). |
| <br>Exh. 409 – Rebels on tank | Depicts rebels standing triumphant on a tank during the Libyan revolution. The tank is damaged and graffitied. Some rebels and onlookers wear military outfits.<br><br>Combat-adjacent footage risks enflaming passions, particularly in the context of a military fighting civilians. Further depicts Libya as lawless and chaotic, associated with violence. Irrelevant, and prejudice outweighs any probative value. Unconnected to Mr. Al-Marimi. |
| <br>Exh. 410 – Revolution burning tank | Depicts rebel standing on a still-burning tank, with bright orange fire and thick black smoke rising out of the destroyed treads.<br><br>Same objections as to Exh. 409, with heightened prejudice resulting from the more vivid depiction of a violent conflict between military and civilians. |
| <br>Exh. 411 – Rebels at fist monument | Video depicts revolutionaries toppling the fist. The fist and the residence have been ransacked and extensively graffitied. The rebels wear military outfits and carry firearms. Gunshots are heard throughout the video as guns fire into the air.<br><br>Irrelevant, and prejudice outweighs any probative value. Video draws jury's focus, and chaos and gunshots enflame fears and further "other" Libya and Libyans. |

## III. Investigative documents from Libya

| Exhibits | Description | Objections |
| --- | --- | --- |
| 500, 500-j, 500-t<br>501<br>502, 502-t, 502-tr | Copies and translations of alleged confession | Parties discussed issues on 8/19/2026 and are working towards resolution.<br>Mr. Al-Marimi maintains the objection he made on the record on 8/19/26 regarding the FRE 403 objection to the government's proposed redactions to the interviews of the other men Jamal allegedly interviewed. |
| 510 | Jamal CV (Arabic) | Presumably for identification only.<br>Hearsay. The witness can testify to his background. |
| 512 | Signed Jamal declaration | Hearsay. The witness can testify to the topics at issue. |
| 514, 514-t | 1/10/2017 Libyan cover letter accompanying alleged confession<br>The letter states "we submit to you true copies of the originals of all handwritten notes taken during the interrogation of some suspects in the Lockerbie bombing, and they are: [three names, including Mr. Al-Marimi]" | Relevance and unfair prejudice as to the names of the other two individuals interviewed. One of the individuals was not interviewed by Jamal. Request redaction. |
| 515, 515-t | 7/13/2026 Libyan cover letter accompanying confession-related documents<br>The letter identifies the production of two documents in addition to the "original" copy of the alleged confession, identified in paragraphs 2 | Hearsay implicating Confrontation Clause.<br>Unfair prejudice outweighs probative value as to paragraphs 2 and 3 that refer to the other documents. The paragraphs offer unsubstantiated conclusions and opinions about the documents, neither of which will be |

| | | |
|---|---|---|
| | and 3. | produced to the jury.<br><br>404(b) as to paragraph 2, which discusses uncharged accusations.<br><br>Request redaction. |
| 516 | Typed version of purported statements by other ESO members in Arabic | Unfair prejudice and nested hearsay. Requires redactions consistent with the Court's prior rulings.<br><br>Handwritten copy of one interview (S.I.A.S.) features conspicuously different handwriting, suggesting Jamal may not have been involved. |
| 517, 517-t | 7/20/2026 Libyan cover letter accompanying confession-related documents<br><br>Paragraph 2 refers to uncharged accusations. The final paragraph refers to Libyan documents witness by name | Relevance and unfair prejudice as to paragraph 2 and final paragraph. Paragraph 2 provides commentary on the contents of other evidence. The final paragraph offers an opinion about the propriety of a witness testifying. |

## IV. Non-Libyan foreign records

| Exhibits | Description | Objections |
|---|---|---|
| 871, 872, 873, 877 | The defense has not received copies of these exhibits and reserves objections. | |
| 874<br><br>875<br><br>876<br><br>878 | Holiday Inn invoices under the names Abdelbeset, Abdusalam, and Abdusamad | Hearsay.<br><br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents.<br><br>The defense maintains relevance objections to another party's alleged travel, particularly under supposedly false names. The defense acknowledges the Court's coconspirator |

| | | |
|---|---|---|
| | | rulings but maintains that the government must establish grounds to link these names with a person of relevance. |
| 912<br><br>913 | Hotel Intercontinental traveler cards for Megrahi | Hearsay.<br><br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents.<br><br>The defense maintains relevance objections to another party's alleged travel. |
| 914<br><br>915 | Hotel Intercontinental room-change notes | Hearsay.<br><br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents.<br><br>The defense maintains relevance objections to another party's alleged travel. |
| 1928-1, 1928-2 | Dutch documents relating to Megrahi and Fhimah that were created during extradition process for the Camp Zeist trial | The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents. |
| 1929<br><br>1930 | Passports | Mr. Al-Marimi maintains hearsay objections to passports consistent with prior briefing. *See United States v. Clarke*, 628 F. Supp. 2d 15, 22 & n.6 (D.D.C. 2009) (recognizing "hearsay status" or passports and approving admission for limited purpose); *United States v. Ullah*, 282 F. App'x 923 (2d Cir. July 2, 2008) (approving exclusion of |

| | | |
|---|---|---|
| | | foreign passport as hearsay based on purpose for which it was offered).<br><br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents. |

## V. Air traffic control records

| Exhibits | Description | Objections |
|---|---|---|
| 230, 321 | Recorded speech transcripts for air traffic control recordings | Hearsay. *See* ECF 625, 643.<br><br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents. The transcripts are disjointed and appear to cover portions of recorded audio rather than a comprehensive record.<br><br>Inadmissible under Rule 403 because risks confusion of the issues absent significant explanatory testimony and is cumulative of other evidence regarding the crash. |

## CONCLUSION

The Court should grant Mr. Al-Marimi's motions *in limine* and exclude the challenged exhibits and portions of exhibits.

Respectfully submitted,

**ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI**

By: ________/s/______________________
Whitney E.C. Minter
Va. Bar #47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
Laura_Koenig@fd.org (email)